**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
Andrew B. Clubok (*pro hac vice*)
Corey A. Calabrese (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
Email: andrew.clubok@lw.com
Email: corey.calabrese@lw.com

*Counsel for Hayward Defendants Hayward Holdings, Inc.,*
*Kevin Holleran, and Eifion Jones*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF SOUTHFIELD FIRE AND POLICE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, and MSD PARTNERS, L.P.,<br><br>Hayward Defendants. | Civil Action No. 2:23-cv-04146-WJM-SDA<br><br>Hon. William J. Martini<br>Magistrate Judge Stacey D. Adams<br><br>Document Electronically Filed<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**MOTION DAY:** August 19, 2024 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE HAYWARD DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

<u>**Page**</u>

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ........................................................................................................2

**I.**     PLAINTIFF'S FALSITY ARGUMENTS FAIL ...........................................2

    **A.**     Plaintiff Cannot Avoid Application Of The PSLRA Safe Harbor...........................................................................................2

    **B.**     Plaintiff's Cursory Puffery Argument Fails.........................................4

    **C.**     Plaintiff's Opinion Arguments Fail......................................................4

    **D.**     No Statement Was Materially Misleading When Made .......................5

**II.**     PLAINTIFF'S SCIENTER ARGUMENTS FAIL...........................................9

    **A.**     Plaintiff's Motive Argument Fails .......................................................9

    **B.**     Plaintiff's Knowledge And Recklessness Arguments Fail ................12

    **C.**     The Non-Fraudulent Inference Is More Compelling .........................15

CONCLUSION ...................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anderson v. StoneMor Partners, L.P.*,
   296 F. Supp. 3d 693 (E.D. Pa. 2017), *aff'd*, 927 F.3d 710 (3d Cir.
   2019) ...............................................................................................................9

*In re Canopy Grown Sec. Litig.*,
   2024 WL 3445436 (S.D.N.Y. July 17, 2024).............................................13, 14

*Corsale v. Sperian Energy Corp.*,
   819 F. App'x 127 (3d Cir. 2020) ...................................................................15

*Datascope Corp. v. SMEC*,
   1990 WL 10345 (D.N.J. Jan. 25, 1990)..........................................................10

*In re Newell Brands, Inc. Sec. Litig.*,
   837 F. App'x 869 (3d Cir. 2020) .....................................................................8

*In re Radian Sec. Litig.*,
   612 F. Supp. 2d 594 (E.D. Pa. 2009)..............................................................10

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
   2021 WL 4191467 (D.N.J. Sep. 15, 2021) .......................................................4

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007)...................................................................6

*Lewakowski v. Aquestive Therapeutics, Inc.*,
   2023 WL 2496504 (D.N.J. Mar. 14, 2023) .......................................................3

*Mallozzi v. Innovative Indus. Properties, Inc.*,
   2023 WL 6121499 (D.N.J. Sept. 19, 2023).......................................................12

*Odeh v. Immunomedics, Inc.*,
   2020 WL 4381924 (D.N.J. July 31, 2020) .......................................................3

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension
   Fund*,
   575 U.S. 175 (2015)...........................................................................*passim*

ii

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) ................................................................................14

*Silverstein v. Globus Med., Inc.*,
  2016 WL 4478826 (E.D. Pa. Aug. 25, 2016), *aff'd*, 869 F.3d (3d.
  Cir. 2017) ..........................................................................................................7, 8

*Watkins v. Protective Life Ins. Co.*,
  2017 WL 2426863 (D.N.J. June 5, 2017) (Martini, J.) ......................................15

*Wu v. GSX Techedu Inc.*,
  2023 WL 2207422 (D.N.J. Feb. 24, 2023) ...........................................................8

## PRELIMINARY STATEMENT

The Opposition ("Opp.") confirms that Plaintiff has no coherent theory of fraud. Indeed, Plaintiff does not dispute the following points (among others), which are fatal to its claims that the Hayward Defendants fraudulently misled investors about demand for Hayward's products and sales:

- Hayward met or exceeded its sales projections in every single quarter during the Class Period, *see* Mot. 5-11; Opp. 3-14;

- Notwithstanding that success, in July 2022, Hayward proactively warned investors about a softening in demand and disclosed revised projections for 2022, *see* Mot. 10-11, 20, 40; Opp. 12-14;

- No CW alleges the Hayward Defendants disbelieved their sales projections or statements about customer demand, *see* Mot. 27-29, 34-38; Opp. 36-39;

- Jones *increased* his Hayward stock ownership significantly over the Class Period, *see* Mot. 31-34; Opp. 30-35; and

- Hayward did not sell stock during the Class Period, but instead *repurchased* a massive amount of its own stock, *see* Mot. 34; Opp. 12, 34-35.

Unable to refute those points, Plaintiff uses the Opposition to embellish and distort the hindsight allegations in the Complaint in a cynical effort to transform industry-wide setbacks—which Hayward candidly disclosed—into fraud. But Plaintiff cannot manufacture fraud by dint of its own embellishments and distortions, or by grouping defendants together and conjuring up a multiparty securities fraud for which there is no factual support in the Complaint. Plaintiff must plead *particularized facts* supporting a coherent theory of fraud as to each defendant, and it has not remotely done so. Plaintiff thus tries to sidestep dismissal by asserting,

1

baselessly, that the Motion presents factual issues.  It does not; the Motion simply holds Plaintiff to the demanding standards for pleading fraud under the PSLRA, Rule 9(b), and controlling case law.  The Complaint does not come close to satisfying those standards, and it should be dismissed with prejudice.

**ARGUMENT[1]**

**I.   PLAINTIFF'S FALSITY ARGUMENTS FAIL**

    **A.   Plaintiff Cannot Avoid Application Of The PSLRA Safe Harbor**

The Motion identified more than 20 challenged statements that are forward-looking under the PSLRA.  Mot. at 15-16; App'x A; ¶¶ 107-109, 113, 115, 120-21, 125-29, 135-37, 141-44, 149-50, 169, 173.  Plaintiff admits that many of these statements "involve projections," Opp. at 29, which fall into the heartland of forward-looking statements.[2]  Plaintiff nonetheless argues, in the most conclusory fashion, that it has pleaded around the safe harbor.  Opp. at 29-30.  Plaintiff is wrong.

*First*, Plaintiff nowhere disputes that Hayward repeatedly cautioned investors about its forward-looking statements and accompanied them with robust warnings that went beyond what the PSLRA requires.  *Compare* Mot. at 17-19 (citing cases)

---

[1] Plaintiff is incorrect, Opp. at 28, that the long-accepted practice of providing to the Court full versions of the relevant statements, their source documents, and SEC filings transforms the Motion into a summary judgment motion, *see* Mot. at 2 n.2.

[2] Contrary to Plaintiff's argument, the context surrounding Holleran's statement in ¶¶ 137 & 169 about "inventory expectations" confirms the statement is forward-looking, and his comment about what "[o]ur *guidance assumes*" is forward-looking under blackletter law that Plaintiff *completely ignores*.  App'x A at 17 (full statement); Mot. at 15 ("assumptions underlying" guidance are forward-looking).

2

*with* Opp. at 29-30.  Moreover, Plaintiff identifies no particularized allegations of fact that the risks disclosed to investors had actually materialized prior to any—let alone all—of the challenged forward-looking statements.  *See generally* Opp.[3]

*Second*, in any event, Plaintiff does not point to a single particularized allegation that Holleran or Jones had "actual knowledge" that their forward-looking statements were false when made.  *See generally* Opp.; *Lewakowski v. Aquestive Therapeutics, Inc.*, 2023 WL 2496504, at *9 (D.N.J. Mar. 14, 2023).  Nor does Plaintiff even attempt to distinguish any of the actual knowledge or cautionary language cases cited in the Motion.  *Compare* Mot. at 19-21 *with* Opp. at 18-19, 29-30.  Further, Plaintiff does not dispute that Hayward met or exceeded its sales projections every single quarter during the Class Period, which contradicts Plaintiff's conclusory assertions that (1) Holleran and Jones had "actual knowledge" that their projections (which proved true) were false when made, and (2) Hayward's warned-of risks materialized as early as October 2021.  Mot. at 20-21; Opp. at 26, 29-30; *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 2021 WL 4191467, at *14-15 (D.N.J. Sep. 15, 2021).  Plaintiff has no answer to the PSLRA safe harbor; it applies here; and it immunizes the bulk of the challenged statements.

---

[3] Plaintiff's sole authority on this subject is not to the contrary.  *See Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at *6 (D.N.J. July 31, 2020) (risk disclosures warned of a potential data breach that had already occurred).

3

### B.    Plaintiff's Cursory Puffery Argument Fails

Plaintiff mounts no serious challenge to the argument that vague statements of optimism, such as that Hayward was "well positioned to deliver continued net sales and Adjusted EBITDA growth in 2022," ¶ 127, are inactionable puffery under settled law.  Mot. at 21-22.[4]  Indeed, Plaintiff does not cite a single case supporting its two-sentence puffery response and, once again, Plaintiff does not even attempt to distinguish the cases making clear that the Hayward Defendants' general statements of optimism are inactionable as a matter of law.  Mot. at 21-22; Opp. at 28.

### C.    Plaintiff's Opinion Arguments Fail

Plaintiff does not dispute that the vast bulk of the opinions it challenges are, indeed, opinions.  *See* Opp. at 26-27; Mot. 22-24; ¶¶ 107, 114, 118, 120-21, 123, 125-27, 135-37, 140, 149, 169, 171, 173.  Each of those opinions is inactionable under *Omnicare*, Mot. at 22-24, and Plaintiff does not contend otherwise, *see* Opp. at 26-28.  Plaintiff argues that the remaining opinion statements, ¶¶ 105-06, 119, 154, 163, are either not opinions or not protected under *Omnicare*.  They are wrong.

In each of the five statements, Holleran and Jones express what they "think." ¶¶ 105-06, 119, 154, 163.  Plaintiff's position that such statements are not opinions is unsupported by any law from this Circuit and flies in the face of the very meaning

---

[4] The Hayward Defendants do not argue that the statements in ¶ 138 are corporate puffery, as Plaintiff wrongly asserts.  Opp. at 28.

of "think," which is defined as "*believ[ing]* something or hav[ing] an *opinion* or idea." CAMBRIDGE DICT. (https://dictionary.cambridge.org/us/dictionary/english/think). Further, the statements' context reflects that Holleran and Jones were expressing subjective views, not facts. Accordingly, the *Omnicare* standard applies, and Plaintiff's allegations do not satisfy it. Plaintiff makes no effort to identify particularized allegations that the Hayward Defendants disbelieved their opinions, and there are none. Opp. at 27; *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86, 189 (2015). And for all but one of the challenged opinions (¶ 119), Plaintiff offers no argument under the other *Omnicare* prongs. Plaintiff argues the opinion in ¶ 119 included a false fact about "negligible cancellations" and omitted facts about inventory. Opp. at 27-28. But Plaintiff does not identify any cancellations that occurred before the March 2, 2022 statement, let alone facts indicating that any such cancellations were greater than negligible. *Id.* Nor does Plaintiff identify any undisclosed *facts* about inventory that were known as of March 2 and needed to be disclosed for ¶ 119 not to be misleading to a reasonable investor viewing the statement in context. *See Omnicare*, 575 U.S. at 194. Plaintiff thus has no viable falsity theory for ¶ 119 or any other opinions.

### D.    No Statement Was Materially Misleading When Made

Plaintiff next argues that eight statements about inventory and product demand—¶¶ 105-06, 119, 134, 137-38, 154 and 163—were materially misleading.

Opp. at 15-24.[5]  That effort also fails.[6]

*First*, Plaintiff characterizes Holleran's statement on an October 2021 earnings call as "downplay[ing]" the state of channel inventory, but Plaintiff fails to identify any alleged facts about inventory from a "days-on-hand standpoint" or Hayward's "backlog" that contradicted Holleran's statements at the time.  ¶¶ 105-06; Opp. at 16-18.  Moreover, Plaintiff's baseless characterization of Holleran's statements, which is insufficient to plead falsity, *Intelligroup*, 527 F. Supp. 2d 262, 325, 335 (D.N.J. 2007), is contradicted by Hayward's better-than-expected sales growth in Q4 2021 and Q1 2022, Ex. 13 at 1-3; *compare* ¶ 127 (9-12% full year growth projection) *with* Ex. 19 at 5 (23% reported growth in Q1 2022).

*Second*, Plaintiff's attack on Holleran's March 2, 2022 statement regarding "negligible cancellations" and "shortages of some particular SKUs" is similarly defective.  Opp. at 18; ¶¶ 119, 163; App'x A at 9.  Plaintiff points to CW3's allegation that CW3 "*believed* cancellations" "began" around March 2022, ¶ 87, but that is a far cry from alleging that any significant, unusual cancellations had occurred

---

[5] The Hayward Defendants did not "concede" the statements in ¶¶ 105-06, 119, 163, "are all statements of present fact."  Opp. 18.  It is the opposite.  App'x A at 5-6, 9.

[6] Plaintiff's inventory cases, Opp. at 15, are inapposite.  Unlike here, *Finisar* and *Lexmark* included particularized allegations that defendants had specific information contradicting their statements *before* making them; in *Urban Outfitters*, the plaintiff alleged the company failed to "disclose the financial performance" of one of its brands; and *Stumpf* included particularized allegations that defendants sent false numbers to a third-party in an effort to obfuscate the true level of demand.

prior to Holleran's March 2, 2022 statement about Hayward's 2021 performance. *See Silverstein v. Globus Med., Inc.*, 2016 WL 4478826, at *5-6 (E.D. Pa. Aug. 25, 2016), *aff'd*, 869 F.3d at 245 (3d. Cir. 2017) (no falsity where no allegations directly contradicting projections). Further, CW3 does not place in time the one cancellation he alleges (supposedly totaling $11 million), ¶ 87, which in the context of Hayward's $410 million in sales in Q1 2022 alone is *negligible* (or reasonably could be described as such). As to Holleran's statements in ¶ 163, the Complaint is devoid of factual allegations that he thought inventory was elevated as of March 2, 2022 or that there were not "shortages" in "particular SKUs" at that time. ¶¶ 87, 91, 199.[7]

*Third*, Plaintiff lumps together statements from March and April 2022 regarding bookings, inventory, demand, and the order file, and labels them misleading—based largely on an allegation invented out of thin air. Opp. at 20-23 (citing ¶¶ 119, 134, 137-38, 163). Indeed, nowhere in the Complaint does Plaintiff allege that "distributors . . . telling Hayward they had too much inventory . . . caused the Vice President of Sales to hold regular meetings." Opp. at 20 (citing ¶¶ 55, 57-58, 62, 196). Such an allegation hardly would establish falsity for any of the

---

[7] Plaintiff also confusingly claims Holleran's March 2, 2022 statements were false because "distributors then had $150 million of excess inventory." Opp. at 2, 19. As the Complaint alleges, Hayward flagged in Q3 2022—well after March 2022 and three months *after* the Class Period ended—that the potential inventory correction in the *future* could reach $150 million, ¶ 192. The Complaint nowhere alleges that distributors had $150 million in excess inventory in March 2022.

7

challenged statements, and moreover, Plaintiff cannot salvage its meritless falsity theory with nonexistent allegations. *See Wu v. GSX Techedu Inc.*, 2023 WL 2207422, at *7 (D.N.J. Feb. 24, 2023) (rejecting CW allegations that did not appear in the complaint). Further, the suggestion that certain sales team members may have missed unspecified internal sales targets in *mid-2021*, Opp. at 20, has no bearing whatsoever on the accuracy of the Hayward Defendants' statements about bookings and demand in *March and April 2022*. *See Globus*, 2016 WL 4478826, at *5-6.

*Fourth*, Plaintiff's theories of falsity regarding Jones's April 2022 statement about Hayward building its own inventory (¶ 137) and June 2022 statement about consumer demand (¶ 154) make no sense. Plaintiff does not allege facts contradicting the statement that Hayward had taken steps to build its own inventory, but rather admits Hayward *did exactly that*, ¶¶ 92, 192, and *disclosed* its rising levels of inventory on-hand in assertions that Plaintiff tellingly does not challenge, *see* Opp. at 11. That Plaintiff may disagree with the wisdom of Hayward's inventory build does not render Jones's statement misleading. *See Newell Brands, Inc.*, 837 F. App'x 869, 876 (3d Cir. 2020) ("Bad business decisions, without more, do not constitute federal securities fraud."). And Plaintiff badly misreads Jones's statement that "we haven't seen demand destruction *at the end of the channel*," which plainly refers to consumer, not channel (*e.g.*, distributor), demand. ¶ 154. Plaintiff makes *no* allegations about consumer demand, let alone as of June 2022. ¶¶ 153-56.

8

*Finally*, as the Motion notes, far from concealing the changing landscape as the pandemic and supply chain disruptions eased, the Hayward Defendants tempered expectations for 2022, disclosed in March 2022 that inventory was "getting back to more normal levels," Ex. 14 at 13, and noted a month later that they expected "greater sell *out* than sell *into* the channel" in 2022 (*i.e.*, that sales into the channel would be **less** than sales from distributors to consumers), Ex. 19 at 13.  There can be no misleading statements when the Hayward Defendants "disclosed the very information Plaintiffs allege was concealed." *Anderson v. StoneMor Partners, L.P.*, 296 F. Supp. 3d 693, 703 (E.D. Pa. 2017), *aff'd*, 927 F.3d 710 (3d Cir. 2019).[8]

## II.    PLAINTIFF'S SCIENTER ARGUMENTS FAIL

### A.    Plaintiff's Motive Argument Fails

Plaintiff's fatally flawed motive argument focuses not on sales of Hayward stock by the Hayward Defendants, but instead on Plaintiff's imaginary theory (unsupported by factual allegations) that Holleran and Jones would risk their reputations and the value of their Hayward stock to fraudulently inflate the Company's stock price for the partial benefit of CCMP affiliates (but not MSD). Neither the Hayward Defendants' transactions nor that baseless theory supports any inference of scienter, let alone a strong one.

---

[8] The challenged risk factor disclosures are not materially misleading for the reasons stated in the Motion, Mot. at 29-30, and in Section I.A. herein.

***Jones's Options Exercise***.    Plaintiff offers no rebuttal to the Hayward Defendants' authorities rejecting an inference of scienter based on an executive's exercise of stock options.  *See* Mot. at 31-35.  Plaintiff instead resorts to arguing when Jones exercised options to *acquire* Hayward stock, he *sold* 44.5% of his shares, Opp. at 32-33—an argument that calls to mind the well-known aphorism regarding "lies, damn lies, and statistics."[9]  It is undisputed that Jones owned *35,783* shares before his June 2022 options exercise, and *175,582* shares after the transaction.  *See* App'x B at 2.  Thus, the net result of the transaction was a *390% increase* in Jones's Hayward stockholdings.  *See id.*  Plaintiff does not cite any case holding that an officer's massive increase in stock ownership supports motive, and indeed, the Hayward Defendants' unrebutted cases hold that such behavior indicates the *very opposite* of motive to defraud investors.  Mot. at 32-33.[10]  Plaintiff's timing argument also fails, given that Jones' options exercise occurred after much of the alleged inflation in Hayward's stock price was removed by (according to Plaintiff) corrective statements from *Jones himself.*  Opp. at 34-35; ¶¶ 162-63, 167, 169-70.

***Hayward's Stock Repurchase***.    Plaintiff's attempt to twist Hayward's purchase of $450 million of its own stock into a motive to defraud is unaccompanied

---

[9] *See Datascope Corp. v. SMEC*, 1990 WL 10345, at *1 & n.3 (D.N.J. Jan. 25, 1990) (attributing aphorism to British Prime Minister Benjamin Disraeli).

[10] Not a single one of Plaintiff's stock sale cases involved an executive increasing his company stockholdings over the course of the class period.  *See* Opp. at 30-34.

10

by any supporting case law, Opp. at 33-34, and Plaintiff has no answer for the fact that "[c]ourts have repeatedly held that substantial share repurchases by a corporate defendant during a class period may negate a finding of scienter," Mot. at 34.

***Sales By Others***.   Moreover, Plaintiff's unsupported "conspiracy theory" cannot withstand the slightest of scrutiny.  According to Plaintiff's narrative, the Hayward Defendants fraudulently misled investors so that affiliates of a private equity firm (CCMP) and an investment manager for pensions (AIMCo) could sell some of their Hayward shares at supposedly inflated prices.  Opp. at 32-34.  Plaintiff does not cite a *single* case where a court inferred a strong inference of scienter on the part of company executives based on stock sales made by investment firms.  *See id.*  Moreover, accepting Plaintiff's deeply flawed theory would ignore that (i) MSD, whom Plaintiff alleges had influence over Holleran and Jones, did not sell any shares and *thus suffered losses as a result of the very same conduct that Plaintiff alleges was designed to benefit Hayward's largest investors*, *see generally* Compl.; (ii) CCMP's affiliates and AIMCo held a majority of their shares through the end of the Class Period, ¶¶ 34, 208, 211-14; (iii) Plaintiff does not allege any sales by Holleran, ¶¶ 204-16; and (iv) Jones increased his Hayward stockholdings, ¶ 215; App'x B.

If that were not enough, Plaintiff itself alleges that Holleran and Jones repeatedly disclosed "bad news" throughout the first half of 2022—culminating in the July 2022 downward revision to guidance—causing Hayward's stock price to go

11

down, not up.  ¶¶ 162-63, 167, 169-70.  Thus, according to Plaintiff, Holleran and Jones voluntarily made truthful statements resulting in financial *loss* to AIMCo, CCMP affiliates, MSD, and themselves.  *See id.*  That is the very opposite of hiding the truth to facilitate favorable outcomes for the entities to which Plaintiff baselessly claims Holleran and Jones were beholden.  And lastly, Plaintiff does not allege that Holleran or Jones received any concrete, personal benefit for allegedly facilitating sales by others.  *See Mallozzi v. Innovative Indus. Properties, Inc.*, 2023 WL 6121499, at *12 (D.N.J. Sept. 19, 2023) ("[D]esire to maintain or increase executive compensation . . . cannot support an inference of scienter. . . .").

> **B.      Plaintiff's Knowledge And Recklessness Arguments Fail**

Plaintiff's meritless knowledge and recklessness arguments likewise fail.

*First*, Plaintiff argues that Holleran made an admission in July 2022 when he said "[w]e expected to sell less into the channel versus sellout" and "some moderation" by the channel in 2022.  Opp. at 35 (emphases omitted).  Not so.  Holleran's July 2022 statement did not admit a previously known but undisclosed fact.  To the contrary, Holleran merely repeated what *Plaintiff admits* he already told investors *months earlier*: "[o]ur guidance assumes that there will be greater sell out than sell into the channel during the 2022 season."  ¶ 173.  Further, the so-called admissions about tracking channel inventory merely stand for the benign point that Hayward took measures to track the inventory levels at its channel partners.  Opp. at

12

36.  Plaintiff does not identify any admission by Holleran or Jones that they knew information contradicting their statements about channel inventory.  *See id*.  And Plaintiff acknowledges that the Hayward Defendants cautioned that inventories "are largely replenished and in a much better position starting the 2022 [pool] season than they were either in the last 2 years," which is precisely why Hayward told investors to expect "greater sell *out* than sell *into* the channel" in 2022.  ¶¶ 137, 173.  The Complaint itself defeats Plaintiff's admission theory.

*Second*, Plaintiff's CW allegations fall far short of pleading knowledge or recklessness (or falsity for that matter).  It is undisputed that CW1, CW2, CW4 & CW5 were far removed from Hayward's headquarters and do not allege a single interaction of any kind with Holleran or Jones.  Opp. at 36, 38-40.  Accordingly, those CWs do not support scienter because they cannot (and do not) allege facts about what Holleran and Jones knew when they made the challenged statements.  Mot. at 35; *Canopy Grown*, 2024 WL 3445436, at *13 (S.D.N.Y. July 17, 2024) (no scienter where CWs were not "executives or managers with direct knowledge of the company's financials, accounting, or the individual defendants' states of mind").

Further, it is undisputed that neither CW3 nor CW6 makes a single allegation that Holleran or Jones knew information contradicting their respective statements.  Opp. at 36-40; Mot. at 36-38; *Canopy*, 2024 WL 3445436, at *13 (scienter requires "'specific instances' in which the individual defendants 'received information . . .

13

contrary to their public declaration'"").   Plaintiff emphasizes CW3's cancellation report allegations, but does not dispute that CW3 fails to say these alleged reports contained information contradicting Jones's public statements or were shared with Jones before he made any of those statements.  Opp. at 36-37; Mot. at 37-38.  Those glaring defects render CW3's allegations insufficient to support a strong inference of scienter.  *See Rahman v. Kid Brands, Inc.*,736 F.3d 237, 245 (3d Cir. 2013).

*Third*, Plaintiff's remaining scienter arguments—regarding the size of Hayward's disclosed inventory and alleged efforts to increase sales—amount at most to speculation that the Hayward Defendants "must have known" that the channel was "stuffed" even though Hayward's distributor customers continued placing steady orders.  *See* Opp. at 36-39.  But a "strong" inference of scienter requires much more, *i.e.*, "allegations of specific information conveyed to management and related to fraud."  *Rahman*, 736 F.3d at 247; Mot. at 34-38.  Unable to meet that standard with their CW allegations, Plaintiff improperly revises them and even invents new ones.  For example, Plaintiff asserts that CW3 provided Jones with reports "showing that stock was ballooning."  Opp. at 36 (citing ¶ 91).  Yet there is nothing in ¶ 91 (or anywhere in the Complaint) about the content of the alleged reports, let alone that they showed "ballooning" stock.[11]  Similarly, the Complaint says nothing about "the

---

[11] Plaintiff's Cognos allegations, Opp. at 5, 28, similarly lack any details about what the data showed, when, and whether Holleran and Jones ever viewed it, ¶ 70.

14

channel's poor performance" being discussed at sales meetings, Opp. at 37; all that CW6 alleges about those meetings is that they included, unsurprisingly, discussion about "forecasting and sales, including 'what's selling good, what's not selling good.'" ¶ 99.  Plaintiff cannot revise its own allegations to establish scienter, and even those revised allegations fall short.  *See Watkins v. Protective Life Ins. Co.*, 2017 WL 2426863, at *2 (D.N.J. June 5, 2017) (Martini, J.).

### C.    The Non-Fraudulent Inference Is More Compelling

Stripped of rhetoric and mischaracterization, the story told in the Complaint is that the Hayward Defendants made good faith projections and disclosures about sales and inventory during unprecedented, pandemic-related market conditions; Hayward achieved its projections through Q2 2022, while also warning investors about emerging headwinds; and when those headwinds and other unforeseen factors began to impact Hayward's business, the Hayward Defendants proactively revised their 2022 outlook accordingly, even though doing so had a detrimental financial impact on Holleran, Jones, AIMCo, CCMP affiliates, and MSD (as holders of massive amounts of Hayward stock).  *See* Mot. at 39-40.  That is not securities fraud, and Plaintiff's fanciful and incoherent theory of fraud should be rejected.

### CONCLUSION

The Complaint should be dismissed with prejudice.  *See Corsale v. Sperian Energy Corp.*, 819 F. App'x 127, 131 (3d Cir. 2020) (affirming dismissal without leave where, as here, plaintiff did not request it).

Dated:  August 8, 2024

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ Kevin M. McDonough

Kevin M. McDonough (N.J. Bar No. 41892005)
Andrew B. Clubok (*pro hac vice*)
Corey A. Calabrese (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
Email: andrew.clubok@lw.com
Email: corey.calabrese@lw.com

*Counsel for Hayward Defendants Hayward Holdings, Inc., Kevin Holleran, and Eifion Jones*

16