**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FULTON COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 2:23-cv-04146 |
| Plaintiff, | Motion Day: August 19, 2024 |
| v. | Oral Argument Requested |
| HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, and MSD PARTNERS, L.P., | |
| Defendants. | |

**DEFENDANT CCMP CAPITAL ADVISORS, LP'S REPLY IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE
<u>CONSOLIDATED CLASS ACTION COMPLAINT</u>**

PARKER IBRAHIM & BERG LLP
Scott W. Parker
Marissa Edwards
270 Davidson Avenue, 5th Floor
Somerset, New Jersey 08873

WILLKIE FARR & GALLAGHER LLP
Tariq Mundiya (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000

*Attorneys for Defendant CCMP Capital
Advisors, LP*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT .......................................................................................................3

    I.    Plaintiff's Opposition Confirms That CCMP Must Be
        Dismissed Because It Is An Improper Party. ........................................3

    II.    Plaintiff's Opposition Confirms Its Failure To Adequately
        Plead A Section 10(b) Claim Against CCMP. .....................................4

    III.    Plaintiff's Opposition Confirms Its Failure To Adequately
        Plead Section 20(a) Control Person Liability Against CCMP.............7

CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                              *Page(s)*

*In re Am. Apparel, Inc. S'holder Litig.*,
    2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ...............................................9, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................7

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) .......................................................................14

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
    70 F.4th 668 (3d Cir. 2023) .......................................................................14

*Ellis v. Pub. Serv. Elec. & Gas*,
    2021 WL 2201967 (D.N.J. June 1, 2021)...........................................................10

*Fouad v. Isilon Sys., Inc.*,
    2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ...............................................10

*Imagine Lifestyles, LLC v. Perry*,
    2020 WL 113967 (D.N.J. Jan. 10, 2020)............................................................9

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)...............................................................................1, 4, 5

*Martin v. GNC Holdings, Inc.*,
    757 F. App'x 151 (3d Cir. 2018) .....................................................................6

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W.*
    *Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) .....................................................................9, 10

*Palladin Partners v. Gaon*,
    2006 WL 2460650 (D.N.J. Aug. 22, 2005) ....................................................6, 11

*SEC v. Gentile*,
   2020 WL 5793699 (D.N.J. Sept. 29, 2020) .......................................................10

*Skeway v. China Nat. Gas, Inc.*,
   2012 WL 2877645 (D. Del. July 6, 2012) ........................................................12

*Thomas v. Magnachip Semiconductor Corp.*,
   167 F. Supp. 3d 1029 (N.D. Cal. 2016) ..............................................................8

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009) .................................................................8

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020) .................................................................5

**Regulations**

17 C.F.R. § 230.405 ........................................................................................7

17 C.F.R. § 240.13d–5(b)(1) ...........................................................................9

Pursuant to this Court's January 8, 2024 Order (ECF No. 32) and Local Civil Rule 7.1(d)(3), Defendant CCMP respectfully submits this Reply to Plaintiff's Consolidated Opposition To CCMP's Motion To Dismiss And MSD's Motion To Dismiss ("Opposition" or "Opp."; ECF No. 81).[1]

## PRELIMINARY STATEMENT

Plaintiff's 80 pages of briefing confirm that its claims against CCMP (and the other Defendants) should be dismissed with prejudice.

*First*, Plaintiff admits that CCMP did not buy, sell, or own any Hayward stock. CCMP must therefore be dismissed because it is an improper party.

*Second*, Plaintiff fails to show that CCMP made any false or misleading statements, let alone with scienter, to support direct liability for securities fraud. Plaintiff does not dispute that CCMP did not "make" any challenged statements in oral statements or presentations by Hayward's management or in Hayward's press releases and therefore cannot be held liable for them under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). CCMP also did not "make" any challenged statements in Hayward's SEC filings under *Janus* because those

---

[1] All capitalized terms have the same meanings as in CCMP's Brief In Support Of Its Motion To Dismiss The Consolidated Class Action Complaint ("CCMP's Br."; ECF No. 67) and Plaintiff's Opposition; all emphasis is added; and all alterations, citations, and quotations are omitted, unless otherwise indicated.

filings were signed by individuals in their capacity as Hayward directors, not on behalf of CCMP.

Plaintiff likewise fails to show that CCMP acted with scienter. Plaintiff points to the fact that the CCMP-advised funds sold Hayward stock, but that cannot support an inference of scienter as a matter of law. Plaintiff also tries to impute the alleged knowledge of Hayward's executives to CCMP, but Plaintiff admits that it has no evidence whatsoever tying that alleged knowledge to CCMP. Plaintiff simply ignores the more plausible opposing inference of nonfraudulent intent that the CCMP-advised funds invested in Hayward and then sold that investment to realize a gain.

*Finally*, Plaintiff fails to show that CCMP is a "control person" subject to secondary liability for securities fraud. For starters, CCMP cannot be held secondarily liable because there is no primary liability for securities fraud. Even if there were such liability (there is not), Plaintiff admits that the CCMP-advised funds were minority shareholders of Hayward and appointed a minority of directors, which cannot support control person liability as a matter of law. To try to get around these undisputed facts and law, Plaintiff points to an Agreement between CCMP and MSD that discusses coordinating only with respect to selling Hayward stock, not with respect to voting or controlling Hayward. Plaintiff speculates that CCMP *could*

*have* coordinated with MSD to exert control, but such rank speculation, which is wholly unsupported by the Agreement itself, cannot survive a motion to dismiss.

Lacking any well-pled allegations, Plaintiff relies on allegations that appear nowhere in the Amended Complaint, which this Court should ignore. Even if this Court considers these arguments (which it should not), they are meritless. Plaintiff makes much of the unremarkable facts that individual Hayward directors who were appointed by the CCMP-advised funds served on Board committees and signed SEC filings in their capacities as directors. But none of these individuals did so on behalf of CCMP so this cannot establish that CCMP is a "control person." Plaintiff also contorts routine corporate governance and risk disclosures in SEC filings, which do not state that CCMP controlled Hayward.

Accordingly, all claims against CCMP should be dismissed with prejudice.

## ARGUMENT

### I.    Plaintiff's Opposition Confirms That CCMP Must Be Dismissed Because It Is An Improper Party.

Plaintiff admits that "CCMP Capital Advisors, LP" never bought, sold, or owned any Hayward stock, but instead advised affiliated Funds "that beneficially owned Hayward stock." (Opp. at 4 n.1.) The publicly available SEC filings Plaintiff cites and quotes in the Amended Complaint show that the Funds, not CCMP, owned Hayward stock. (*See* CCMP's Br. at 7–8.) For example, Plaintiff quotes Hayward's IPO Prospectus, which states that Hayward stock was owned by Funds "***affiliated***

*with* CCMP Capital Advisors, LP," not CCMP itself.  (Opp. at 4 n.1.)  Plaintiff

asserts without any authority that it can treat CCMP and the Funds "as a single

entity" such that "CCMP Advisors is a proper party to this Action."  (*Id.*)  But CCMP

is "a legally independent entity" from the Funds it advised, and Plaintiff cannot hold

CCMP liable under the securities laws when it never owned the securities at issue.

*Janus*, 564 U.S. at 147.  Accordingly, CCMP must be dismissed, and Plaintiff should

not be given leave to file a *third* complaint to fix its own mistakes, which would be

futile in any event.  (*See* CCMP's Br. at 8.)

## II.    Plaintiff's Opposition Confirms Its Failure To Adequately Plead A Section 10(b) Claim Against CCMP.

Plaintiff's Opposition confirms that its primary liability claims under Section

10(b) and Rule 10b–5 against CCMP must be dismissed for at least three reasons.

*First*, Plaintiff does not dispute that CCMP was not the "maker" of any oral

statements by Hayward management or any press releases, and therefore cannot be

held liable for them under *Janus*, 564 U.S. at 142.  (*See* CCMP's Br. at 9–10.)

*Second*, Plaintiff fails to show that CCMP was the "maker" of any challenged

statements in Hayward's SEC filings.  Plaintiff asserts that Hayward's "SEC filings

are directly attributable to CCMP" because three individuals affiliated with CCMP

signed Hayward's SEC filings in their individual capacity as Hayward directors.

(Opp. at 30 & n.14.)  But each individual "signed as a director of" Hayward, *not* on

behalf of CCMP, so CCMP "did not sign the offering documents and Plaintiff[]

- 4 -

fail[s] to plead that [CCMP] made any statements under *Janus*."  *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 263 (S.D.N.Y. 2020) (dismissing securities claims against investment company).  In Plaintiff's authority (*see* Opp. at 30 & n.14), by contrast, the defendants themselves signed the SEC filings at issue.  Here, nothing "on the face of the prospectuses indicate that any statements therein came from" CCMP rather than the individual directors, so CCMP "itself did not 'make' those statements for purposes of Rule 10b–5."  *Janus*, 564 U.S. at 147–48.  Plaintiff's attempt to conflate three separate individual directors with CCMP, without a single particularized allegation about anything those directors did, is a classic impermissible "group pleading."  (CCMP's Br. at 11; Opp. at 30 n.14.)

*Finally*, Plaintiff fails to show a "strong inference" of scienter.  (CCMP's Br. at 12.)  Plaintiff devotes five pages to CCMP's alleged "Motive and Opportunity" based on "stock sale[s]" (Opp. at 33–37), but not one word to Third Circuit precedent that "[t]he mere fact that" the Funds "sold stock" or had a "motive and opportunity" to defraud is "insufficient to establish scienter."  (CCMP's Br. at 12–13 (collecting cases).)  Plaintiff speculates that CCMP's stock sales were "opportunistically timed" (Opp. at 37), but cannot point to a single particularized factual allegation to support these assertions (*see* CCMP's Br. at 13).

Plaintiff also tries to "impute[]" Hayward executives' alleged knowledge to CCMP because it involved "Hayward's core business."  (Opp. at 38.)  But to invoke

- 5 -

the "'core operations' doctrine" of scienter, Plaintiff must provide "some additional allegation of specific information conveyed to" CCMP that "related to the fraud." *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018).  Plaintiff admits that it "has not provided any evidence from confidential witnesses" of CCMP's "involvement or identified any documents showing" CCMP's "knowledge or intent," and instead relies on vague allegations about CCMP-affiliated directors serving on "committee seats." (Opp. at 33 n.15, 39.)  Under Plaintiff's own authority (*see id.* at 38), such "routine tasks of outside directors," including "mere membership on a[] [Board] committee[,] is insufficient to establish a strong inference of scienter." *Palladin Partners v. Gaon*, 2006 WL 2460650, at *13 (D.N.J. Aug. 22, 2005) (Martini, J.).

Plaintiff ultimately has no answer to the natural "opposing inference of nonfraudulent intent" that the Funds invested in Hayward as a business opportunity in 2017; Hayward's revenue rose after the increase in demand in the pool industry during the COVID-19 pandemic in 2020; Hayward's investors, including the Funds, sought to realize these gains through an IPO in March 2021; and the Funds then sold their remaining investments in Hayward over time in an orderly manner, both during and after the Class Period.  (CCMP's Br. at 14.)

### III.   Plaintiff's Opposition Confirms Its Failure To Adequately Plead Section 20(a) Control Person Liability Against CCMP.

Plaintiff acknowledges that "[t]o state a claim under § 20(a), a plaintiff must allege [] a primary violation by a controlled person or entity." (Opp. at 14.)  Because Plaintiff fails to allege primary liability under Section 10(b) for the reasons stated in CCMP's opening brief and Hayward's motion to dismiss, Plaintiff's Section 20(a) claim must be dismissed.  (*See* CCMP's Br. at 14–15 (collecting cases).)

Plaintiff also acknowledges that to plead a Section 20(a) claim, it must allege that CCMP exercised a "significant level of control and involvement over Hayward's business and management," but is unable to do so.  (Opp. at 3); *see also* 17 C.F.R. § 230.405 (defining "control" as "the power to direct or cause the direction of the management and policies") (cited at Opp. at 18–19).[2]  Plaintiff claims that the Funds' minority "share ownership and membership on the Board" is "sufficient to plead control" against CCMP.  (Opp. at 18–19.)  But Plaintiff's own authority holds that control person liability requires that "defendant was [a] majority shareholder" that "owned over 50% of [the] corporation's common stock."  (*Id.* at 19 (collecting

---

[2] Plaintiff does not dispute that courts routinely dismiss control person claims at the pleading stage.  (*See* CCMP's Br. at 15–16 & n.6 (collecting cases).)  Plaintiff's assertion that such claims "cannot ordinarily be resolved at the pleading stage" (Opp. at 15 (quoting *In re Nat'l Media Sec. Litig.*, 1994 WL 397398, at \*5 (E.D. Pa. July 27, 1994))) relies on cases that predate the PSLRA, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and/or *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and are therefore no longer good law.

- 7 -

cases).)  Plaintiff admits that the Funds owned, at most, "a 31% interest in the company" and appointed 25% of the directors to Hayward's Board (*id.* at 6–7), which are insufficient to allege control person liability as a matter of law (*see* CCMP's Br. at 16 & n.6 (collecting cases)).[3]

To try to get around this settled law, Plaintiff asserts that the Funds and MSD should be "evaluated as one" majority shareholder because they purportedly agreed "to coordinate votes" through "the Stockholders' Agreement." (Opp. at 24–25.)  But Plaintiff does not—and cannot—dispute that the Agreement says nothing about coordinating ***voting***.  (*Id.* 25 n.11; CCMP's Br. at 6, 17.)  Rather, the Funds and MSD agreed only to "use commercially reasonable efforts to coordinate with respect to ***the timing and manner of disposition***" of their Hayward stock by providing "reasonable advance notice and consult" before any such sale to "facilitate an orderly process for" the Funds and MSD "to sell their shares."  (Agreement § 2.2(f).) Because the Funds and MSD agreed "to act together with respect to" the sale of

---

[3] Plaintiff's authority (*see* Opp. at 27) confirms that courts permit control person claims against minority shareholders only in highly unusual circumstances not present here.  *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 979 (N.D. Cal. 2009) (denying motion to dismiss control person claims against Softbank because "non-party Masayoshi Son was the President, CEO, Chairman and largest shareholder of Softbank" and "Son also co-founded UTSI and served as UTSI's Chairman of the Board"); *see also Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048–49 (N.D. Cal. 2016) (denying motion to dismiss control person claims because fund was the "majority shareholder" with the "corresponding power to appoint the majority of Magnachip's Board of Directors").

"their Stockholder Shares," they recognized that they "may be deemed to be a group for purposes of Section 13(d) of the Exchange Act." (*Id.* § 2.2(g)); *see also* 17 C.F.R. § 240.13d–5(b)(1)(i) (requiring disclosure when "two or more persons agree to act together" for "disposing of equity securities of an issuer"). When Sections 2.2(f) and 2.2(g) of the Agreement are read together "in context" with "every portion of the contract," it is clear that CCMP and MSD agreed to coordinate *only* regarding the sale of Hayward stock. *Imagine Lifestyles, LLC v. Perry*, 2020 WL 113967, at *4 (D.N.J. Jan. 10, 2020) (collecting cases). The Funds did *not* agree to coordinate voting under the Agreement.

Ignoring the plain language of the Agreement, Plaintiff asserts that "nothing in the Agreement restricts their coordination to the selling of shares." (Opp. at 25 n.11.) This is pure speculation. Under Plaintiff's own authority (*see* Opp. at 20, 22), the "mere fact that" CCMP was "a major shareholder and a party to the" Agreement is "insufficient to demonstrate control." *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *35 n.257 (C.D. Cal. Aug. 8, 2013). Plaintiff fails to point to any well-pled allegations that CCMP and MSD "ever acted under" the Agreement to coordinate how "to vote [their] shares." *Id.*

Plaintiff's heavy reliance on *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) (*see* Opp. at 19, 24, 40), is misplaced. There, the court considered the "two largest

- 9 -

shareholders" together because they "entered into a Stockholder's Agreement with [the company], which contained a 'lock-up' provision" ensuring that they maintained "de facto control" by "virtue of their ownership of the 'supervoting' Class A stock" and together "select[ed] nine out of the fifteen board directors." 320 F.3d at 924–25 & n.3; *see also id.* at 945–46. Here, there is no such language in the Agreement and Plaintiff admits that the Funds and MSD each appointed "their own" separate directors to "Hayward's Board of Directors." (Opp. at 6–7.) Thus, this action is similar to *Fouad v. Isilon Systems, Inc.*, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008), in which Plaintiff admits that "the court dismissed control person claims against three minority venture capital shareholders because plaintiff failed to plead that 'the venture capital firms acted together.'" (Opp. at 26 n.12.)

Plaintiff also raises three entirely new categories of allegations that appear nowhere in the Amended Complaint. (*See* Opp. at 16–23.) This Court should reject this out of hand because "a plaintiff cannot rely on new facts not alleged in their Complaint to defeat a motion to dismiss." *SEC v. Gentile*, 2020 WL 5793699, at *11–12 (D.N.J. Sept. 29, 2020) ("declin[ing] to take judicial notice of the new facts alleged in the SEC's opposition brief") (collecting cases); *see also Ellis v. Pub. Serv. Elec. & Gas*, 2021 WL 2201967, at *1 n.1 (D.N.J. June 1, 2021) (Martini, J.) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). In any event, these new arguments are meritless.

***First***, Plaintiff argues that "a plaintiff may plead control under § 20(a) by alleging that an individual director signed SEC filings." (Opp. at 17.) But the individual directors are not defendants in this action. All of Plaintiff's authority, including *Palladin*, holds only that an individual "officer or director who has signed" "SEC filings at issue in this case" may face "'control person' liability at the pleading stage." (Opp. at 17 & n.8 (collecting cases).) As discussed above, CCMP did not sign anything, and Plaintiff does not allege any basis to "impute[]" the signatures of the individual directors—who signed certain SEC filings in their capacity as directors, not on behalf of CCMP—"to CCMP." (*Id.* at 18 n.9 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 238 (3d Cir. 2021)).)[4]

***Second***, Plaintiff claims that CCMP somehow "controlled Hayward's entire business and management" because one Fund-appointed director served on Hayward's "three-person" "Nominating and Corporate Governance Committee, which nominated directors to the Board"; another Fund-appointed director served on Hayward's "three-person" "Compensation Committee, which was responsible for recommending and approving compensation plans"; and, before the Class Period began, Hayward's Board of Directors appointed a CEO and CFO. (Opp. at 8, 19–

---

[4] Plaintiff's arguments regarding directors signing SEC filings necessarily cannot establish CCMP's control over any challenged statements outside of SEC filings, such as oral statements and presentations by Hayward management and Hayward's press releases. (*See* CCMP's Br. at 9.)

20.)  But a minority shareholder's appointment of a minority of directors does not make it liable as a control person.  (*See* CCMP's Br. at 16.)  In any event, mere "membership on the [Board] Committee" is "insufficient to show control."  *Skeway v. China Nat. Gas, Inc.*, 2012 WL 2877645, at *1 (D. Del. July 6, 2012) (dismissing control person claim).  Nor does the Board appointing a CEO and CFO before the Class Period support any inference of control.  (*See* CCMP's Br. at 15–16 (collecting cases).)  Plaintiff's authority (*see* Opp. at 20–21) is irrelevant because it addresses only whether *individual* "director defendants" can be "control persons" based, in part, on committee membership, but there are no individual director defendants in this action.

*Finally*, Plaintiff misreads and selectively quotes from Hayward's, CCMP's, and MSD's SEC filings (*see* Opp. at 9–11, 19–20, 22, 25), which, contrary to Plaintiff's assertion, do not state that CCMP or MSD "have control of the Company."  Hayward's SEC's filings in fact state that because "certain affiliates of CCMP, MSD Partners and AIMCo . . . will be parties to a stockholders agreement and will beneficially own approximately 78.8% of the combined voting power of our common stock," Hayward "will be a 'controlled company' within the meaning of the New York Stock Exchange's corporate governance standards."  (IPO Prospectus (ECF No. 68-7) at 1, 51.)  This routine corporate governance disclosure

- 12 -

in no way establishes that CCMP actually exercised a "significant level of control and involvement over Hayward's business and management." (Opp. at 3.)

Hayward's SEC filings also contain risk disclosures that because funds affiliated with CCMP, MSD, and AIMCo "beneficially own a substantial percentage of the voting power" of Hayward's "outstanding common stock," together they may "be able to strongly influence or effectively control" certain Hayward "business and affairs," such as "mergers or other business combinations," which "*may* have the effect of deterring, delaying, or preventing a change of control of the Company, *could* deprive our stockholders of an opportunity to receive a premium for their common stock as part of a sale of the Company and *might* ultimately affect the market price of our common stock." (IPO Prospectus at 45–46; 2021 Form 10-K (ECF No. 68-21) at 36; IPO Prospect Supp. (ECF No. 68-29) at S-15.) Under Plaintiff's own authority (*see* Opp. at 22), "this statement suggests only a possible intention to exercise control at some point in the future," and therefore "does not show that [CCMP] controlled [Hayward] at the time the company allegedly made misrepresentations." *Am. Apparel*, 2013 WL 10914316, at *35.

Similarly, CCMP's and MSD's SEC filings state only that they "*may* be deemed to be members of a group for the purposes of 13(d) of the Securities Exchange Act of 1934" (Opp. at 9, 25), which requires disclosure when "two or more persons agree to act together" for "disposing of equity securities of an issuer"

- 13 -

(*id.* at 24 (quoting 17 C.F.R. § 240.13d–5(b)(1))).  As discussed above, this language reflects CCMP's and MSD's agreement to coordinate regarding the sale of Hayward stock and says nothing about any other coordination or control regarding Hayward.[5]

**CONCLUSION**

For the foregoing reasons, and the reasons set forth in CCMP's opening brief and Hayward's motion to dismiss, the Amended Complaint should be dismissed in its entirety with prejudice.  Plaintiff had over two months to file its Amended Complaint and is not entitled to "a second opportunity to amend the complaint," which would be futile in any event.  *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 683, 687 (3d Cir. 2023) (affirming denial of leave to amend in securities action) (collecting cases).  Under Plaintiff's own authority (*see* Opp. at 29), Plaintiff has "already been given ample opportunity" in two complaints "to state a cognizable cause of action and continuing to require defendants to defend the action, and to ultimately incur the effort and expense of" another motion to dismiss, "would clearly constitute undue prejudice to the defendants." *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 163 (3d Cir. 2004) (affirming denial of leave to amend in securities action).

---

[5] Should this Court consider "culpable participation" at the pleading stage, the control person claims against CCMP must be dismissed because Plaintiff failed to allege that CCMP "reviewed and approved all [allegedly] misleading financial disclosures filed by Hayward."  (Opp. at 29–30.)

- 14 -

Dated:  August 8, 2024

*/s/ Scott W. Parker*

Scott W. Parker
Marissa Edwards
**PARKER IBRAHIM & BERG LLP**
270 Davidson Avenue, 5th Floor
Somerset, New Jersey 08873
(267) 908-9809

**WILLKIE FARR & GALLAGHER LLP**
Tariq Mundiya (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000

*Attorneys for Defendant CCMP Capital Advisors, LP*

- 15 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FULTON COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, and MSD PARTNERS, L.P., <br><br> Defendants. | Civil Action No. 2:23-cv-04146 |

## CERTIFICATE OF SERVICE

I, Scott W. Parker, hereby certify that on this date, I caused a true and correct copy of the foregoing Reply To Plaintiff's Consolidated Opposition To CCMP's Motion To Dismiss And MSD's Motion To Dismiss and this Certificate Of Service to be served on all counsel of record electronically via the Court's CM/ECF system, where this document is available for downloading and viewing.


Dated:  August 8, 2024

/s/ Scott W. Parker
Scott W. Parker

- 16 -