Amanda L. Genovese
Vincent A. Sama (*pro hac vice*)
Catherine B. Schumacher (*pro hac vice*)
Daphne Morduchowitz (*pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

*Attorneys for Defendant*
*MSD Partners, L.P.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF SOUTHFIELD FIRE AND POLICE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, and MSD PARTNERS, L.P.,<br><br>　　　　　Defendants. | Civil Action No.:<br><br>2:23-CV-04146-WJM-ESK<br><br>**Oral Argument Requested**<br><br>**Motion Day: August 19, 2024** |

## REPLY OF DEFENDANT MSD PARTNERS, L.P.
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ....................................................................................................................4

    A.    Plaintiff's 10(b)/10b-5 Claim (Count I) Should Be Dismissed ............4

        1.    The Opposition Fails to Identify Any Statement Attributable to MSD ...................................................................4

        2.    The Opposition Fails to Identify Any Allegation of MSD's Scienter ...................................................................8

    B.    Plaintiff's Section 20(a) Allegations (Count II) Should Be Dismissed ...................................................................................9

        1.    Allegations that MSD Appointed, or is Affiliated with, Certain Hayward Officers or Directors is Insufficient to Establish Section 20(a) Control ...............................................10

        2.    MSD's Shareholder Status Does Not Support Control Person Liability ........................................................................12

CONCLUSION.................................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) .............................................................11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..........................................................................5, 6

*Dudley v. Haub*,
    No. 2:11-CV-05196 WJM, 2013 WL 1845519 (D.N.J. Apr. 30,
    2013) ................................................................................................................6

*Ellis v. Pub. Serv. Elec. & Gas*,
    No. 2:20-CV-17893 (WJM), 2021 WL 2201967 (D.N.J. June 1,
    2021) (Martini, J.) .........................................................................................12

*Fouad v. Isilon Sys., Inc.*,
    No. C07-1764 MJP, 2008 WL 5412397 (W.D. Wash. Dec. 29,
    2008) .........................................................................................................10, 11

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011).................................................................................*passim*

*Laven v. Flanagan*,
    695 F. Supp. 800 (D.N.J. 1988)........................................................................10

*No. 84 Employer Teamster Joint Council Pension Trust Fund v.
    America West Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ...........................................................................13

*Palladin Partners v. Gaon*,
    No. 05 CV 3305 WJM, 2006 WL 2460650 (D.N.J. Aug. 22, 2006)
    (Martini, J.) ...............................................................................................8, 11

*Ret. Sys. v. Energy Transfer LP*,
    532 F. Supp. 3d 189 (E.D. Pa. 2021)...............................................................5, 6

*Steamfitters Loc. 449 Pension Fund v. Alter*,
    No. CIV.A. 09-4730, 2011 WL 4528385 (E.D. Pa. Sept. 30, 2011)...................6

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022) ...................................................................7

*U.S. Sec. & Exch. Comm'n v. Place*,
   No. CV 16-4291, 2019 WL 634638 (E.D. Pa. Feb. 14, 2019) ...............................6

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
   176 F. Supp. 3d 387 (D. Del. 2016).......................................................................6

**Statutes**

Securities Exchange Act of 1934
   Section 10(b)........................................................................................*passim*
   Section 13(d)..............................................................................................13, 14
   Section 13(g)..................................................................................................14
   Section 20(a) .......................................................................................*passim*

**Other Authorities**

SEC Rules and Regulations Under the Securities Exchange Act of
   1934
   Rule 13d-5.................................................................................................13,14
   Rule 10b-5.....................................................................................................1, 4

Defendant MSD[1] respectfully submits this Reply in Further Support of its Motion to Dismiss the Consolidated Complaint.

## PRELIMINARY STATEMENT

Plaintiff's eighty (80) combined pages of opposition briefing cannot cure the fundamental deficiencies in its Consolidated Complaint. Plaintiff does not identify any allegations to support viable claims, whether under Section 10(b) or 20(a), against MSD or, for that matter, any other defendant. MSD incorporates by reference both CCMP and Hayward Defendants' reply briefs, and writes separately to address the erroneous arguments raised in the Opposition[2] regarding MSD.

The Opposition confuses the facts, misstates the law and conflates the various actors in an effort to elide its inability to allege viable claims against MSD (or any of the other defendants).

*First*, the Opposition does not, and cannot, point to any statement for which MSD was the "maker" so as to be liable under Section 10(b) or Rule 10b-5. Recognizing this, Plaintiff devotes large portions of its Opposition to the uncontroversial notion that a defendant who signed a statement can be considered the maker of that statement, and the basic principle of agency law that the actions

---

[1] Capitalized terms not defined have their meaning in MSD's Memorandum of Law in Support of its Motion to Dismiss, ECF No. 66-1 (the "Moving Brief" or "Mov. Br.").

[2] Opposition or Opp. refers to Plaintiff's consolidated opposition to CCMP and MSD's motions to dismiss (ECF No. 81).

of a company's executives may be imputed to that company where the executive is acting within the scope of his or her responsibilities for *that* company. Plaintiff ignores the key fact here, however, that neither MSD, nor any executive acting on *MSD's* behalf, signed any public filing or made any of the statements at issue.

Throughout its Opposition, Plaintiff improperly characterizes allegations regarding actions of Hayward directors (some of whom were appointed by MSD) or officers (some of whom were affiliated with MSD) as allegations regarding MSD. The ability to appoint executives or directors of a company does not cause the appointer to be the "maker" of statements by those executives or directors in their capacities as representatives of *another* company. Moreover, it is well-settled under agency theory that the actions of an officer can be imputed to the corporation *only* where the officer's actions were in the course of his or her employment for *that* corporation. The Opposition does not identify a single action taken by Hayward executives or directors that can be imputed to MSD. As a result, the Section 10 claim fails.

*Second*, the Opposition does not, and cannot, allege facts sufficient to support MSD's scienter. The Opposition argues that motive and opportunity are enough to support an inference of scienter. Even if that were a correct statement of the law—which it is not—there are no facts suggesting any motive by MSD, which remains a large shareholder of the Company and is not alleged to have sold any

2

stock during the putative class period. Plaintiff's unsupported supposition that MSD had "control" or "access to information" is also insufficient. For this reason also, the Section 10 claim fails.

*Finally*, the Opposition fails to identify any support for the claim that MSD, a Company shareholder, "controlled" the Company for purposes of Section 20(a). The Opposition makes much of the unremarkable fact that MSD, CCMP, and non-party AIMCo, *combined*, beneficially own a majority of Hayward's common stock and cherry picks portions of certain SEC disclosures and filings to incorrectly suggest that they agreed to coordinate voting. The Court need not accept as true, at the motion to dismiss stage, allegations such as these that are contradicted by the public documents they purport to describe. The filings reflect that MSD did not and does not own a majority of Hayward shares and the agreement, incorporated by reference in the Complaint and annexed to the Declaration of Scott Parker filed with CCMP's moving brief as Exhibit 8 (ECF No. 67-10, the "Stockholders' Agreement") on its face addresses only coordination with respect to the "timing and manner of disposition" of Hayward's shares, not voting. The Consolidated Complaint is also devoid of any allegations that MSD was involved in Company management or operations. As a result, the Section 20(a) claim against MSD rests entirely on the allegation that MSD, a 30% shareholder, had the ability to appoint certain board members of the Company, which is insufficient on its own to

establish control person liability. As a result, the Section 20(a) claim against MSD also fails.

## ARGUMENT

### A.    Plaintiff's 10(b)/10b-5 Claim (Count I) Should Be Dismissed

For the reasons set forth in Hayward Defendants' moving brief and reply, the Consolidated Complaint fails to allege any statement or omission that is actionable under Section 10(b) or Rule 10b-5, and should be dismissed in its entirety. But even if the Court finds otherwise, it should still dismiss Plaintiff's 10(b)/10b-5 cause of action as to MSD.[3] As set forth in MSD's Moving Brief, and not meaningfully countered in the Opposition, the Consolidated Complaint does not identify any statement for which MSD was the "maker" under *Janus*, nor does it allege any facts suggesting that MSD (or any defendant) acted with scienter, much less facts giving rise to a strong inference of scienter. Each of these failings on its own is fatal to Plaintiff's 10(b) claim against MSD.

### 1.    The Opposition Fails to Identify Any Statement Attributable to MSD

Plaintiff does not and cannot dispute that to be liable under Section 10(b) or Rule 10b-5, MSD must be the maker of the statement at issue. *Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 141-42 (2011). The Consolidated

---

[3] Remarkably, the Opposition leads with arguments regarding Plaintiff's Section 20(a) cause of action, which is derivative of a Section 10(b) claim, in recognition of the weakness and specious nature of its 10(b) claims.

Complaint focuses on statements in Company SEC filings, Company-issued press releases, Company earnings calls and presentations. None of these statements were made by MSD.

In an attempt to confuse the issue, the Opposition argues misleadingly that "[t]he risk disclosures contained in the 2021 Form 10K and Form S-3 are attributable to MSD and CCMP because their designees signed those forms." Opp. at 30. The 2021 Form 10K, attached to the Declaration of Kevin McDonough submitted with Hayward Defendants' moving papers ("McDonough Decl.") as Exhibit 16 (ECF No. 68-21) and the Form S-3, attached to the McDonough Declaration as Exhibit 22 (ECF No. 68-27), include the signatures of Hayward's CEO, CFO, and Hayward directors along with their Hayward titles. *None* of these signatures were by executives acting on behalf of MSD and *none* are attributable to MSD. In fact, the string of case law cited in the Opposition, purportedly in support of the argument that the signatures on the 10K of Hayward executives and directors are attributable to MSD, stand only for the uncontroversial proposition that the signer of a statement can be considered its "maker." [4] Opp. at 18, 30. Not

---

[4] *See* Opp. at 18. n. 9, 30-31, 30 n.14 *citing In re Cendant Corp. Litig.*, 264 F.3d 201, 238 (3d Cir. 2001) (pre-*Janus* decision, concluding, *inter alia*, that "it would not seem difficult for the plaintiffs to establish that the high-ranking [company] officers who published the false financial statements in [company]'s name were acting within the scope of their authority and were transacting corporate business…"); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 228-234 (E.D. Pa. 2021) (allegations sufficient with respect to

one of the cases cited in the Opposition supports Plaintiff's attempted imputation of responsibility from the signature on a filing by an officer or director of one company to another company.

This is for good reason: it is not the law.[5] This Court need look no further than *Janus* itself, which makes this clear. In *Janus*, all officers of Janus Investment Fund were also officers of Janus Capital Management ("JCM"), and a member of Janus Investment Fund's board was associated with JCM, but the Supreme Court decisively found that "JCM did not 'make' any of the statements in the Janus Investment Fund prospectuses; Janus Investment Fund did," going on to explain

---

certain high level executives who signed the alleged misstatements and were alleged to have been personally involved in activities alleged to be fraudulent; but rejecting claims with respect to other senior executives who signed the disclosures but were not alleged to have been personally involved in fraudulent areas, concluding "[t]itles alone will not suffice"); *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 394–95 (D. Del. 2016) ("a corporate insider may 'make' a statement – for purposes of Section 10 (b) – 'pursuant to his responsibility and authority to act as an agent' of the corporation"; *see also U.S. Sec. & Exch. Comm'n v. Place*, No. CV 16-4291, 2019 WL 634638, at *6 (E.D. Pa. Feb. 14, 2019) (individual defendants were "makers" of statements they signed); *Steamfitters Loc. 449 Pension Fund v. Alter*, No. CIV.A. 09-4730, 2011 WL 4528385, at *9 (E.D. Pa. Sept. 30, 2011) (same); *Dudley v. Haub*, No. 2:11-CV-05196 WJM, 2013 WL 1845519, at *16, n.3 (D.N.J. Apr. 30, 2013) (same).

[5] Indeed, the very cases the Opposition relies upon for imputation principles, *Cendant* and *Allegheny*, are both clear, and it is black-letter agency law, that an agent's actions can only be imputed to a company when acting "within his actual or apparent scope of authority and while transacting corporate business." *Cendant*, 264 F.3d at 238; *see also Allegheny,* 532 F. Supp. 3d at 234.

6

that "Janus Investment Fund filed the prospectuses" rather than JCM, "[n]or did anything on the face of the prospectuses indicate that any statements therein came from JCM rather than Janus Investment Fund—a legally independent entity with its own board of trustees." *Janus Cap. Grp., Inc.*, 564 U.S. at 146–47; *see also In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 205 (S.D.N.Y. 2022) ("Ownership might confer generally the right of the parent to control a subsidiary by, for example, selecting members of its board of directors and, through the directors, the officers of the corporation. *But it does not establish that it had control over those directors and officers, and the statements they made, once they were appointed*") (emphasis added). So too, here, the at issue statements are signed by Hayward as well as individuals identified solely as officers and directors of Hayward, *not* by MSD or anyone acting on MSD's behalf. *See* ECF No. 68-21 at 41–42 and ECF No. 68-27 at 25–26. That certain Hayward officers or directors are alleged to also be affiliated with MSD, a "legally independent entity," is of no moment and does not render MSD the "maker" of these statements under the law. *Janus*, 564 U.S. at 146–47.

Because no alleged misstatement or omission can be attributed to MSD, Plaintiff's 10(b)/10b-5 claim against MSD must be dismissed.

2.      The Opposition Fails to Identify Any Allegation of MSD's Scienter

The Opposition devotes five (5) pages to the argument that certain shareholder trades demonstrate fraudulent motivation. Opp. at 33–37. Even if motive was sufficient to establish a strong inference of scienter (which, as detailed in the briefing of CCMP and the Hayward Defendants, it is not), MSD, which remains a large shareholder of the Company, is not alleged to have sold any stock during the putative class period. As a result, these arguments are not relevant to MSD.[6]

As an apparent fall back, Plaintiff also argues that scienter can be inferred by virtue of MSD's supposed "control" over Hayward or "knowledge" of its "signific[ant] . . . problems." *Id.* at 38–40. In support of this argument, the Opposition cites cases that stand for the unremarkable proposition that a defendant's personal exposure to information undermining statements he or she signed or active involvement in at issue transactions, in certain circumstances, can evidence scienter. *See* Opp. at 38-40 (collecting cases); s*ee also Palladin Partners v. Gaon*, No. 05 CV 3305 WJM, 2006 WL 2460650, at *11–12 (D.N.J. Aug. 22,

---

[6] Nor does the Opposition provide any other supposed motive for MSD to have fraudulently inflated Hayward's stock price. Indeed, the Opposition only gives MSD a passing mention as having allegedly "received reasonable advance notice" and being "consult[ed]" prior to sales by CCMP and AIMCo. Opp. at 35. Naturally, Plaintiff does not explain why receiving notice of unrelated parties' stock sales has anything to do with scienter as it clearly does not.

2006) (Martini, J.) (allegations detailing director defendants' actual knowledge of facts that contradicted their public statements were sufficient to show an inference of scienter). These cases are irrelevant here as Plaintiff does not identify any allegations in the Consolidated Complaint suggesting that MSD was provided any information that undermined the statements at issue. This is because there is no such evidence. The Opposition also does not identify any support for the claim that MSD was involved in or had control over Hayward operations or public filings.[7] Because the Consolidated Complaint is devoid of any allegations that support an inference of scienter as to MSD, the Section 10(b)/10b-5 claim against MSD must be dismissed.

## B.    Plaintiff's Section 20(a) Allegations (Count II) Should Be Dismissed

For the reasons set forth above, in MSD's Moving Brief, and in Hayward Defendants' moving and reply briefs, the Consolidated Complaint fails to allege any underlying Section 10(b) claim. On this basis alone, the Section 20(a) claim should be dismissed. However, even if the Consolidated Complaint properly pled a primary violation – which it does not – the Section 20(a) claim should be dismissed as it fails entirely to allege MSD's control of the Company.

---

[7] As discussed supra, Plaintiff's argument here is based entirely on an improper attempt to impute the actions of Hayward officers and directors to MSD.

9

  1.  <u>Allegations that MSD Appointed, or is Affiliated with, Certain Hayward Officers or Directors is Insufficient to Establish Section 20(a) Control</u>

As set forth in detail above, the Opposition improperly attempts to attribute to MSD the actions of *Hayward* executives and directors, acting in their Hayward capacities, simply because they were allegedly appointed by, or affiliated with, MSD. *See* Opp. at 18. This is not the law and cannot serve as a basis for Section 20(a) liability any more than it can serve as a basis for Section 10(b) liability. *See supra*.

The Opposition does not meaningfully dispute the many cases MSD identifies in its Moving Brief which make clear that Section 20(a) liability does not lie from simply having an ability to appoint officers or directors, even when such officers or directors were signatories on public filings that are the subject of Section 10(b) claims. *See* Mov. Br. at 15–16 (collecting cases); *see, e.g.*, *Laven v. Flanagan*, 695 F. Supp. 800, 807 (D.N.J. 1988) ("control exercised over [company] . . . as directors cannot be imputed to [second company] . . . merely because a director concurrently serves as an officer of the second company"); *Fouad v. Isilon Sys., Inc.*, No. C07-1764 MJP, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008) (dismissing control-person claims against minority shareholders who each appointed members of the board which signed public

10

filings).[8] Instead, the Opposition cites to decade old cases that stand for the proposition that a director or officer who personally signed a statement containing an alleged misrepresentation qualifies as a control person with respect to that statement.[9] *See* Opp. at 17 and 17 n.8; *see e.g., In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) (allowing 20(a) claims to proceed against executives who participated in drafting and signed the allegedly misleading statements but dismissing Section 20(a) claims against outside directors and non-speaking defendants). The cases cited by Plaintiff all make clear that a defendant's status as a director standing alone is insufficient to establish control for purposes of Section 20(a). *Id.* Plaintiff's Section 20(a) claim against MSD is based on an even more attenuated argument: Plaintiff argues that MSD is a control person based

---

[8] Though not detailed by the court's opinion, as is made clear in the operative complaint in *Fouad*, each of the appointed directors were partners or officers of the respective investor firms that appointed them, and each of these directors was alleged to have signed public filings at issue in the case. *See Faud* Consolidated Complaint, 2:07-cv-01764-MJP (W.D. Wash.), ECF No. 54 ¶¶ 31, 34, 35, 45–47.

[9] Plaintiff highlights this Court's *Palladin* case, repeatedly accusing MSD of failing to address it. *See* Opp. at 17–18, 23, 27–28, 38. *Palladin* involved Section 20(a) claims against individual directors (*not* the shareholders who appointed them) and found "the [c]omplaint does not simply allege that Director Defendants served as directors, but that they signed the SEC filings at issue in this case. The Court finds that these two factors suffice to establish control so as to survive a motion to dismiss." *Palladin*, 2006 WL 2460650 at *16. *Palladin* does not support Plaintiff's attempt to assert claims against MSD, which did not sign any of the at issue statements. *See supra*.

11

solely on its ability to appoint certain directors who, because of their title, allegedly had the ability to control Hayward.[10] This is clearly insufficient under the law.

### 2.   MSD's Shareholder Status Does Not Support Control Person Liability

As set-forth in the Moving Brief, allegations that a defendant was a large shareholder are insufficient to establish control person liability. *See* Moving Br. at 15–16. Plaintiff does not (and cannot) dispute this. Instead, the Opposition improperly and without any support seeks to treat MSD and CCMP as a single

---

[10] Plaintiff also argues for the first time in its Opposition, that MSD (through Hayward executives with alleged MSD affiliations) sat on certain board committees and that this provided MSD with control. *See* Opp. 19-21. As a preliminary matter, these facts are not alleged in the Consolidated Complaint and therefore should not considered at the motion to dismiss stage. *See Ellis v. Pub. Serv. Elec. & Gas*, No. 2:20-CV-17893 (WJM), 2021 WL 2201967, at *1, n.1 (D.N.J. June 1, 2021) (Martini, J.) ("Plaintiff improperly attempts to use her opposition brief to provide . . . a more definite statement . . . It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. The Court will not consider these allegations extraneous to the pleadings on the motion to dismiss . . . .") (internal quotations and punctuation omitted). Moreover, even if this argument is considered at the motion to dismiss—which it should not be—it suffers from the same fatal flaw as Plaintiff's other arguments: the improper attempt to impute knowledge and actions of *Hayward* executives in the scope of their *Hayward* duties to MSD. This is not the law. In fact, the cases cited in the Opposition do not support Plaintiff's argument and address only whether the individuals themselves who sat on various committees constituted control persons, not the status of shareholders who appointed them. *See* Opp. 20-21 (collecting cases).

entity in attempt to manufacture majority shareholder status. *See, e.g.*, Opp. at 9–10, 24–25.[11]

Despite Plaintiff's insinuation to the contrary, the public filings incorporated into the Consolidated Complaint and attached to the Opposition do not reference any requirement that MSD and CCMP act together for voting purposes; rather, the Stockholders' Agreement which was publicly filed references using "commercially reasonable efforts to coordinate with respect to the *timing and manner of disposition*" of shares, not coordination with respect to voting. ECF 67-10 at § 2.2(f) (emphasis added). As a result, MSD and others filed SEC disclosures noting that "certain provisions relating to the timing and manner of *disposition of shares* of the Issuer*," mandate treatment as a group for purposes of Section 13(d) of the Securities Exchange Act of 1934. Declaration of Matthew Gately Exhibit 3, MSD 13G Disclosure (ECF No. 81-4) (emphasis added).

The Opposition fundamentally misunderstands, or misconstrues, the beneficial ownership reporting requirements which led to MSD's disclosure that it

---

[11] The Opposition cites a long string of cases analyzing control person liability in the context of majority shareholders. *See* Opp. 19 (collecting cases). These cases are irrelevant to the facts at issue here. Plaintiff's reliance on *No. 84 Employer Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, a two-decade old decision (which pre-dates *Janus*) from outside the jurisdiction involving unique facts not at issue here, including a lock-up provision that ensured "de facto control" through ownership of "supervoting" stock, is also not compelling. 320 F.3d 920, 924-25 (9th Cir. 2003).

13

may be considered part of a "group" for purposes of Section 13(d). Opp. at 9–10.

Pursuant to SEC regulation, "[w]hen two or more persons agree to act together for

the purpose of acquiring, holding, voting or disposing of equity securities of an

issuer, the group formed thereby shall be deemed to have acquired beneficial

ownership, for purposes of sections 13(d) and (g) of the Act" and must be

disclosed. 17 C.F.R. § 240.13d-5 (emphasis added). The language in § 2.2(g) of the

Stockholders' Agreement relied upon by Plaintiff, which states "[t]he Investors

have agreed, pursuant to this Agreement and otherwise, to act together with respect

to their [shares] . . . and, as such, may be deemed to be a group for purposes of

Section 13(d)," Opp. at 25, n.11, is merely an acknowledgement that the

stockholders have met one of the categories that implicates 13(d), coordination as

to disposition of shares, and is not some separate agreement to "vote" shares

together. If the contract had required coordinated voting of shares (which it does

not), the 13(d) disclosure would have said so expressly.

Because Plaintiff's allegations regarding voting control are contradicted by

the documents it cites, the documents control and this Court should not accept the

allegations as true. *See* Moving Brief at n.5.

Plaintiff's attempt to treat CCMP and MSD as a single "consortium" is

wholly conclusory and without basis. The Consolidated Complaint does not allege

14

MSD, a minority shareholder, "controls" Hayward, and the Section 20(a) claim against it should be dismissed.

## CONCLUSION

For the foregoing reasons and the reasons set forth in MSD's Moving Brief and all other defendants' moving and reply briefs, MSD respectfully requests that the Court dismiss the Consolidated Complaint in its entirety, with prejudice, and grant it any such and further relief as the Court deems just and proper.

Dated: August 8, 2024

SEYFARTH SHAW LLP

By:*/s/ Amanda L. Genovese*
Amanda L. Genovese
Vincent A. Sama *(pro hac vice)*
Catherine B. Schumacher (*pro hac vice*)
Daphne Morduchowitz (*pro hac vice*)
Matthew C. Catalano (*pro hac vice*)
620 Eighth Ave
New York, NY 10018
Phone: (212) 218-5500
Fax: (212) 218-5526
agenovese@seyfarth.com
vsama@seyfarth.com
cschumacher@seyfarth.com
dmorduchowitz@seyfarth.com
mcatalano@seyfarth.com

*Attorneys for Defendant MSD Partners, L.P.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2024, I electronically filed the foregoing REPLY OF DEFENDANT MSD PARTNERS, L.P. IN FURTHER SUPPORT OF ITS MOTION TO DISMISS, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Amanda L. Genovese
Amanda L. Genovese