# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CITY OF SOUTHFIELD FIRE AND POLICE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, CCMP CAPITAL INVESTORS III, L.P., CCMP CAPITAL INVESTORS III (EMPLOYEE), L.P., CCMP CAPITAL ASSOCIATES III, L.P., CCMP CAPITAL ASSOCIATES III GP, LLC, CCMP CAPITAL, LP, AND CCMP CAPITAL GP, LLC, MSD AQUA PARTNERS, LLC, MSD PARTNERS, L.P., MSD PARTNERS (GP), LLC, MARK MCFADDEN, GREG BRENNEMAN, TIMOTHY WALSH, CHRISTOPHER BERTRAND, and KEVIN BROWN,<br><br>Defendants. | Civil Action No. 2:23-cv-04146-WJM-SDA<br><br>Hon. William J. Martini<br>Magistrate Judge Stacey D. Adams<br><br>Oral Argument Requested<br><br>**MOTION DAY**: March 17, 2025 |

**DEFENDANTS CCMP CAPITAL ADVISORS, LP, CCMP CAPITAL INVESTORS III, L.P., CCMP CAPITAL INVESTORS III (EMPLOYEE), L.P., CCMP CAPITAL ASSOCIATES III, L.P., CCMP CAPITAL ASSOCIATES III GP, LLC, CCMP CAPITAL, LP, CCMP CAPITAL GP, LLC, MARK MCFADDEN, TIMOTHY WALSH, AND GREG BRENNEMAN'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS <u>ACTION COMPLAINT</u>**

PARKER IBRAHIM & BERG LLP
Scott W. Parker
Marissa Edwards
270 Davidson Avenue, 5th Floor
Somerset, New Jersey 08873
(908) 333-6220

WILLKIE FARR & GALLAGHER LLP
Tariq Mundiya (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000

*Attorneys for Defendants CCMP Capital Advisors, LP, CCMP Capital Investors III, L.P., CCMP Capital Investors III (Employee), L.P., CCMP Capital Associates III, L.P., CCMP Capital Associates III GP, LLC, CCMP Capital, LP, CCMP Capital GP, LLC, Greg Brenneman, Mark McFadden, and Timothy Walsh*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................1

RELEVANT BACKGROUND ...........................................................................5

      A.    Factual Background ......................................................................5

      B.    Procedural History ......................................................................8

LEGAL STANDARD.........................................................................................9

ARGUMENT ...................................................................................................11

      I.     The SAC Fails To Adequately Plead Secondary Control Person Liability Because It Fails To Adequately Plead Any Primary Violation. ................................................................................11

      II.    The SAC Fails To Adequately Plead That The CCMP Entities Or The CCMP Individual Defendants Are Control Persons Under Section 20(a).........................................................................................11

            A.    The CCMP Entities Are Not Control Persons. .........................12

            B.    The CCMP Individual Defendants Are Not Control Persons. ..................................................................................21

      III.   CCMP Advisors Must Be Dismissed Because It Is An Improper Party....................................................................................26

CONCLUSION................................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                       *Page(s)*

*In re Advance Auto Parts, Inc. Sec. Litig.*,
   2020 WL 599543 (D. Del. Feb. 7, 2020)..............................................................16

*In re Am. Apparel, Inc. S'holder Litig.*,
   2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ....................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................9, 10, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................9, 24

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013) ...............................................................................12

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ...............................................................................28

*In re Digital Island Sec. Litig.*,
   257 F.3d 322 (3d Cir. 2004) ...............................................................................16

*In re DVI, Inc. Sec. Litig.*,
   2005 WL 1307959 (E.D. Pa. May 31, 2005).......................................................16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   308 F. Supp. 2d 259 (S.D.N.Y. 2004) ................................................................14

*Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*,
   859 F. Supp. 2d 706 (D.N.J. 2012).....................................................................10

*Li v. Eqonex Ltd.*,
   2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024) .......................................22, 24, 26

*LLDVF L.P. v. Dinicola*,
   2010 WL 3210613 (D.N.J. Aug. 12, 2010) ...............................................*passim*

*Luminent Mortg. Cap., Inc. v. Merrill Lynch & Co.*,
   652 F. Supp. 2d 576 (E.D. Pa. 2009)...................................................................19

*Palladin Partners v. Gaon,*
  2006 WL 2460650 (D.N.J. Aug. 22, 2006) ..............................................12, 23, 26

*Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.,*
  998 F.2d 1192 (3d Cir. 1993) ..................................................................................5

*In re Rockefeller Center Props., Inc. Sec. Litig.,*
  311 F.3d 198 (3d Cir. 2002) .................................................................................10

*Shapiro v. UJB Fin. Corp.,*
  964 F.2d 272 (3d Cir. 1992) .................................................................................11

*Skeway v. China Nat. Gas, Inc.,*
  2012 WL 2877645 (D. Del. July 6, 2012) ............................................................23

*Univ. Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.,*
  176 F. Supp. 3d 387 (D. Del. 2016).................................................................22, 24

*In re Weight Watchers Int'l Inc. Sec. Litig.,*
  504 F. Supp. 3d 224 (S.D.N.Y. 2020) ..................................................................20

*WM High Yield Fund v. O'Hanlon,*
  964 F. Supp. 2d 368 (E.D. Pa. 2013)....................................................................23

**Statutes and Regulations**

15 U.S.C. § 78m(d)(3) ...............................................................................................18

15 U.S.C. § 78t(a) .............................................................................................2, 8, 11

15 U.S.C. § 78u-4(b)(2) ............................................................................................10

17 C.F.R. § 230.405 .............................................................................................3, 12

17 C.F.R. § 240.13d–1 ..............................................................................................18

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act, Defendants CCMP Capital Advisors, LP ("CCMP Advisors"); CCMP Capital Investors III, L.P. and CCMP Capital Investors III (Employee), L.P. (together, the "CCMP Funds"); CCMP Capital Associates III, L.P., CCMP Capital Associates III GP, LLC, CCMP Capital, LP, and CCMP Capital GP, LLC (collectively, the "CCMP Beneficial Owners"; together with the CCMP Funds, the "CCMP Fund Entities"; and the CCMP Fund Entities together with CCMP Advisors, the "CCMP Entities"); and Greg Brenneman ("Brenneman"), Mark McFadden ("McFadden"), and Timothy Walsh ("Walsh"; collectively, the "CCMP Individual Defendants") respectfully submit this Brief In Support Of Their Motion To Dismiss The Consolidated Amended Class Action Complaint ("Second Amended Complaint" or "SAC"; ECF No. 91) filed by Plaintiff Fulton County Employees' Retirement System ("Plaintiff").[1]

## PRELIMINARY STATEMENT

On October 2, 2024, this Court dismissed Plaintiff's Consolidated Class Action Complaint ("First Amended Complaint" or "FAC"; ECF No. 41) in its

---

[1] The CCMP Entities and the CCMP Individual Defendants join Defendant Hayward Holdings, Inc.'s ("Hayward" or the "Company"; together with Defendants Kevin Holleran and Eifion Jones, the "Hayward Defendants") motion to dismiss, which is incorporated by reference as if set forth herein.

entirety. Plaintiff's Second Amended Complaint, despite running 114 pages, fails to cure the deficiencies in its claims and this Court should again dismiss this case.

In June 2017, several investment funds, including the CCMP Funds, invested in Hayward, a privately held designer and manufacturer of pool equipment. In March 2021, Hayward went public and the CCMP Funds began selling Hayward stock. After the initial public offering ("IPO"), the CCMP Funds owned approximately 31% of Hayward's outstanding stock and, before the IPO, had appointed the three CCMP Individual Defendants to Hayward's 12-member Board of Directors. Because this Court dismissed with prejudice Plaintiff's claims that CCMP Advisors (the only CCMP Entity defendants in the First Amended Complaint) committed securities fraud in connection with Hayward stock, Plaintiff in its Second Amended Complaint now alleges again that CCMP Advisors, together with the other CCMP Entities and the CCMP Individual Defendants, are "control persons" who can be held secondarily liable for Hayward's purported conduct under Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78t(a). Plaintiff's control person claims again fail as a matter of law.

For starters, any secondary control person liability claims must be dismissed because Plaintiff has not adequately pleaded a primary violation of the securities laws for the reasons set forth in the Hayward Defendants' motion to dismiss. Plaintiff also fails to adequately plead that the CCMP Entities or the CCMP

2

Individual Defendants are control persons subject to secondary liability, or that CCMP Advisors is a proper party to this action.

**The CCMP Entities Are Not Control Persons.**  Under Section 20(a), a "control person" must have "the power to direct or cause the direction of the management and policies" of the controlled company.  17 C.F.R. § 230.405.  But Plaintiff does not allege that any of the CCMP Entities participated in Hayward's day-to-day management or operations.  Plaintiff does not allege that any of the CCMP Entities prepared, drafted, or otherwise controlled any of Hayward's challenged statements.  And Plaintiff admits that, at most, the CCMP Funds owned an approximately 31% stake in Hayward and appointed 25% of its Board.  Such minority stock ownership and minority Board appointments are insufficient to allege control person liability as a matter of law.  (*See infra* Section II.A (collecting cases).)

To try to end-run this settled law, Plaintiff seeks to conflate the CCMP Funds with other investors to invent a nonexistent controlling shareholder.  Plaintiff first tries to treat the CCMP Funds and an entirely separate investor, MSD Partners, L.P. and its affiliated funds ("MSD"), as one entity that controlled the majority of Hayward's stock and Board seats.  But Plaintiff admits that the CCMP Funds and MSD agreed only to coordinate regarding the sale of Hayward stock to ensure an orderly sale process.  Plaintiff also tries to treat the CCMP Funds and non-party Alberta Investment Management Corporation and its affiliated funds ("AIMCo") as

3

one entity because AIMCo has invested with CCMP Advisors before in *other* companies. That is irrelevant to whether AIMCo is a separate investor in *this* Company. At bottom, none of these generic allegations support Plaintiff's sweeping assertions that the CCMP Entities, MSD, and AIMCo, or that the CCMP Entities and AIMCo (without MSD), acted as a single shareholder that controlled Hayward.

**The CCMP Individual Defendants Are Not Control Persons.** Plaintiff fails to adequately allege that CCMP Individual Defendants are control persons because Plaintiff does not allege anything the CCMP Individual Defendants did to participate in Hayward's day-to-day management, to control Hayward's purported conduct, or to control any of Hayward's challenged statements. The bare facts that the CCMP Individual Defendants were directors and two such Defendants (McFadden and Walsh) served on Board committees on which they had minority votes is insufficient to allege control person liability as a matter of law. (*See infra* Section II.B (collecting cases).)

**CCMP Advisors Is An Improper Party.** This Court dismissed securities fraud claims against CCMP Advisors because "Plaintiff does not dispute that CCMP [Advisors] never bought, sold, or owned any Hayward stock." (Oct. 2, 2024 Opinion ("MTD Opinion" or "MTD Op."; ECF No. 89) at 12.) This Court should likewise dismiss the control person claims against CCMP Advisors because it never owned

4

any Hayward stock or appointed any Hayward directors; CCMP Advisors only provided investment advice to the CCMP Funds.

Accordingly, this Court should dismiss all claims against the CCMP Entities and the CCMP Individual Defendants with prejudice.

## RELEVANT BACKGROUND

### A. Factual Background

CCMP Advisors is a registered investment adviser that does not and has never owned any Hayward stock. (Exs. 1–9.)[2] CCMP Advisors advises investment funds, including its affiliated CCMP Funds. (Ex. 2 ("IPO Prospectus") at 18, 110.)

In June 2017, the CCMP Funds, MSD, and AIMCo (collectively, the "Stockholders") invested in Hayward, a "designer and manufacturer of pool equipment." (SAC ¶ 23.) In March 2021, Hayward completed an IPO. (SAC ¶¶ 3–4, 57; IPO Prospectus at 1.) After the IPO, the CCMP Funds owned approximately 30.9% of Hayward's stock and had appointed three members of Hayward's Board: McFadden, Walsh, and Brenneman. (SAC ¶¶ 35–37, 58–59; Ex. 4; Ex. 11 at 9.) McFadden served on "Hayward's three-person Compensation Committee," Walsh

---

[2] Citations to "Ex." refer to exhibits to the accompanying Declaration of Scott W. Parker, dated December 18, 2024. This "Court may consider" "SEC filings and other public documents" that "'a defendant attaches as an exhibit to a motion to dismiss," because "'the plaintiff's claims are based on the document[s].'" (MTD Op. at 8 (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).) All alterations, citations, internal quotations, and capitalization are omitted and all emphasis is added, unless otherwise indicated.

served on "Hayward's three-person Nominating and Corporate Governance Committee," and Brenneman is not alleged to have served on any Board committee. (*Id.* ¶¶ 35–37.)

Also in March 2021, the Stockholders entered into an Amended and Restated Stockholders Agreement ("Agreement"; Ex. 10).  (SAC ¶¶ 3–4, 57.)  Under the Agreement, the Stockholders agreed to "use commercially reasonable efforts to coordinate with respect to the timing and manner of disposition" of "any Stockholder Shares" to "facilitate an orderly process for the [Stockholders] to sell their shares." (SAC ¶ 323; Agreement § 2.2(f).)  AIMCo also agreed not to sell Hayward stock (with certain exceptions) before the CCMP Funds "have consummated a secondary sale after the Company IPO," after which they could sell Hayward stock whenever they chose to do so.  (SAC ¶ 324; Agreement § 2.2(e).)  The Stockholders did not agree to coordinate voting under the Agreement; after the IPO, the Stockholder-appointed directors voted independently.   (*See* Agreement.)   Because the Stockholders agreed "to act together with respect to" the sale of "their Stockholder Shares," Hayward and the CCMP Funds disclosed in SEC filings that the Stockholders "may be deemed to be a group for purposes of Section 13(d) of the Exchange Act" and a "controlled company" within "the meaning of the corporate governance standards of the New York Stock Exchange."  (SAC ¶¶ 323, 325, 328;

6

Agreement § 2.2(g); IPO Prospectus at 1, 51; Ex. 12 (CCMP Schedule 13G (Feb. 8, 2022)); Ex. 13 ("2021 Form 10-K") at 36.)

During the October 27, 2021 to July 28, 2022 class period ("Class Period"), the CCMP Funds never owned more than 30.9% of Hayward's outstanding stock and never appointed more than 25% of Hayward's Board of Directors. (SAC ¶¶ 58, 287–92, 311; IPO Prospectus at 110; Exs. 4–9; Ex. 11 at 9.) During the Class Period, Hayward's Board ranged from 12 to 13 directors, including independent directors, a management director, two directors allegedly affiliated with MSD, a director allegedly affiliated with AIMCo, and three directors allegedly affiliated with the CCMP Funds. (IPO Prospectus at 110; Ex. 11 at 9; SAC ¶ 332.) Thus, Plaintiff alleges that 23–25% of Hayward's Board was affiliated with the CCMP Funds, five of 12 or 13 directors were affiliated with MSD or the CCMP Funds, and, at most, half the directors (six of 12 or 13) were affiliated with the Stockholders. (*Id.*)

The CCMP Funds owned and sold Hayward stock during the Class Period. (SAC ¶¶ 287–92, 311; Exs. 2–9.) Among other sales, the CCMP Funds participated in Hayward's "stock repurchase program" in March 2022 and in a "secondary public offering" in May 2022. (*Id.*)[3] Before the May 2022 offering, the CCMP Funds owned 28.6% of Hayward's outstanding stock and, after the offering, owned 22.5%.

---

[3] The CCMP Funds also sold Hayward stock in January 2022, which Plaintiff incorrectly conflates with the "repurchase program" in March 2022. (SAC ¶¶ 288–89.)

(*Id.*)  AIMCo also sold Hayward stock in Hayward's May 2022 secondary public offering.  (SAC ¶¶ 287–92; Ex. 3 at S-23 to S-24.)  Before the May 2022 offering, AIMCo owned 15.6% of Hayward's outstanding stock and, after the offering, owned 12.3%.  (*Id.*)  MSD did not sell stock in Hayward's March 2022 stock or May 2022 secondary public offering.  (*Id.*)

### B.    Procedural History

This action was initially filed on August 2, 2023.  (ECF No. 1.)   On September 28, 2023, Plaintiff filed a second, similar action.  On December 19, 2023, this Court consolidated the two actions and appointed Plaintiff as Lead Plaintiff. (ECF No. 11.)  On March 4, 2024, Plaintiff filed its First Amended Complaint.  (ECF No. 41.)  On May 4, 2024, the Hayward Defendants, CCMP Advisors, and MSD each moved to dismiss the First Amended Complaint.  (ECF Nos. 66–68.)  On October 2, 2024, this Court granted the motions to dismiss.  (Oct. 2, 2024 Order ("Order"; ECF No. 90) ¶ 1.)  This Court dismissed without prejudice Plaintiff's claims against the Hayward Defendants.  (*Id.* ¶ 2.)  This Court dismissed with prejudice the direct liability claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, against CCMP Advisors (the only CCMP Entity defendant in the First Amended Complaint) and MSD; dismissed without prejudice the secondary control person liability claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against CCMP

Advisors and MSD; and gave Plaintiff leave to amend "to add the proper CCMP affiliated parties." (*Id.* ¶¶ 3–5; MTD Op. at 11–13.) On November 1, 2024, Plaintiff filed its Second Amended Complaint, which added the CCMP Fund Entities and the CCMP Individual Defendants as defendants (among others). (ECF No. 91.)

## LEGAL STANDARD

"Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted." (MTD Op. at 7.) This Court must dismiss where "the plaintiff has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'" (*Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).) "'[A] plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (*Id.* (quoting *Twombly*, 550 U.S. at 555); *see also id.* (rejecting "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).) "Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that the court may 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (*Id.* at 7–8 (quoting *Iqbal*, 556 U.S. at 678); *see also id.* at 8 ("'[T]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.'") (quoting *Iqbal*, 556 U.S. at 678).)

While this Court generally "accept[s] all the facts alleged in the complaint as true" at the pleading stage, "[t]his assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations." (*Id.* at 7.) "When allegations contained in a complaint are contradicted by the document it cites, the document controls." *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012) (collecting cases).

Plaintiff's underlying securities fraud claims under Section 10(b) and Rule 10b–5 must also satisfy the "heightened pleading standards" of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4, *et seq.*, and Federal Rule of Civil Procedure 9(b). (MTD Op. at 8.) "'The particularity described in § 78u–4(b)(l) extends that of Rule 9(b) and requires plaintiffs to set forth the details of allegedly fraudulent statements or omissions, including who was involved, where the events took place, when the events took place, and why any statements were misleading.'" (*Id.* (quoting *In re Rockefeller Center Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).) "Plaintiff[] must also 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" (*Id.* (quoting 15 U.S.C. § 78u–4(b)(2)).)

**ARGUMENT**

**I.     The SAC Fails To Adequately Plead Secondary Control Person Liability Because It Fails To Adequately Plead Any Primary Violation.**

Plaintiff brings claims against the CCMP Entities and the CCMP Individual Defendants exclusively for alleged "[v]iolations of § 20(a) of the Exchange Act." (SAC at 110.)  "'Section 20(a) imposes joint and several liability on any person who "controls a person liable under any provision of" the Securities Exchange Act of 1934.'"  (MTD Op. at 13 (quoting *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992) (quoting 15 U.S.C. § 78t(a))).)  "'The text of the statute plainly requires the plaintiff to prove not only that one person controlled another person, but also that the "controlled person" is liable under the Act.  If no controlled person is liable, there can be no controlling person liability.'"  (*Id.* (quoting *Shapiro*, 964 F.2d at 279).)  For the reasons stated in the Hayward Defendants' motion to dismiss, Plaintiff fails to allege any "predicate § 10(b) claims."  (*Id.* (quoting *Shapiro*, 964 F.2d at 279).)  Accordingly, "there are no allegations upon which § 20(a) liability can be based," and all claims against the CCMP Entities and the CCMP Individual Defendants fail and should be dismissed.  (*Id.* (quoting *Shapiro*, 964 F.2d at 279).)

**II.    The SAC Fails To Adequately Plead That The CCMP Entities Or The CCMP Individual Defendants Are Control Persons Under Section 20(a).**

"Control under § 20 is defined as the power to direct or cause the direction of the management and policies" of the controlled company.  *LLDVF, L.P. v. Dinicola*,

11

2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010) (collecting cases); *see also* 17 C.F.R. § 230.405.  "Allegations of control under this section must be ***substantial***" and "detail[] the manner in which the defendants ***tightly controlled the business and operations***," or show that a defendant "was ***intimately involved in the drafting and publication of the offering materials at issue***."  *LLDVF*, 2010 WL 3210613, at *12 (collecting cases).  Plaintiff fails to satisfy these requirements for the CCMP Entities or the CCMP Individual Defendants.[4]

### A.    The CCMP Entities Are Not Control Persons.

Plaintiff's Section 20(a) control person claims against the CCMP Entities should be dismissed for at least seven reasons.

***First***, Plaintiff fails to allege any facts showing that any of the CCMP Entities had ***any*** role in Hayward's day-to-day "business and operations."  *LLDVF*, 2010 WL 3210613, at *12.  Plaintiff alleges, without any factual support, that the CCMP Entities "had significant influence and control over Hayward, its business, and its

---

[4] Control person liability also requires that the defendants "were in some meaningful sense culpable participants in the fraud."  *Palladin Partners v. Gaon*, 2006 WL 2460650, at *15 (D.N.J. Aug. 22, 2006) (Martini, J.).  "[T]here is disagreement among the courts as to whether Section 20(a) requires 'culpable conduct' to be plead as an element of the offense," and this Court has held that while "Plaintiff[] will have to prove culpable participation at trial, it does not have to be plead in order to survive a motion to dismiss."  *Id.* at *16 & n.3.  Should this Court consider culpable participation at the pleading stage, this Court should also dismiss Plaintiff's control person claims because Plaintiff fails to allege that the CCMP Entities or the CCMP Individual Defendants participated in any purported fraud.  *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484–85 (3d Cir. 2013).

12

affairs." (SAC ¶ 366; *see also id.* ¶ 329.) Plaintiff also asserts that the CCMP Entities "had the potential to control Hayward and did in fact exercise control over Hayward." (*Id.* ¶ 321; *see also id.* ¶ 366 ("At all relevant times, the CCMP Entities . . . had the power and/or potential power to, and did, either directly or indirectly, control the activities of Hayward.").) Such "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" cannot survive a motion to dismiss. (MTD Op. at 7 (quoting *Iqbal*, 556 U.S. at 678).)

Plaintiff relies on Hayward's SEC filings, which, contrary to Plaintiff's assertions, do not "admit that the CCMP and MSD entities had significant influence and control over its business affairs." (SAC at 98.) Hayward's SEC filings in fact contain routine risk disclosures stating that because funds affiliated with CCMP Advisors, MSD, and AIMCo "beneficially own a substantial percentage of the voting power" of Hayward's "outstanding common stock," together they "are able to strongly influence or effectively control" certain of Hayward's "business and affairs," such as "mergers or other business combinations," which "***may*** have the effect of deterring, delaying, or preventing a change of control of the Company, ***could*** deprive our stockholders of an opportunity to receive a premium for their common stock as part of a sale of the Company and ***might*** ultimately affect the market price of our common stock." (*Id.* ¶¶ 329–30 (quoting IPO Prospectus at 45–46; 2021 Form 10-K at 36; Ex. 3 ("SPO Prospectus Supp.") at S-15).) Under

13

Plaintiff's own authority (*see* ECF No. 81 at 22), "this statement suggests only a possible intention to exercise control at some point in the future," and therefore "does not show that [the CCMP Entities] controlled [Hayward] at the time the company allegedly made misrepresentations." *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *35 (C.D. Cal. Aug. 8, 2013).

*Second*, Plaintiff fails to allege that the CCMP Entities "'controlled the content and dissemination of the allegedly false and misleading statements.'" *LLDVF*, 2010 WL 3210613, at *12 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 274 (S.D.N.Y. 2004)).   Plaintiff challenges certain (1) oral statements and presentations by *Hayward's* CEO and CFO during earnings calls, (2) *Hayward* press releases, and (3) *Hayward* SEC filings.  (*See* SAC App'x A, ECF No. 91-1.)  But Plaintiff does not allege that anyone affiliated with the CCMP Entities joined or was present for any of the challenged earnings calls or presentations, let alone helped Hayward's management prepare or draft statements, or otherwise had authority over Hayward's management's responses to questions in real time.  (SAC ¶¶ 321–38.)  Plaintiff does not—and cannot—allege that the CCMP Entities signed any press releases or SEC filings.  (*Id.*)  And Plaintiff does not allege that the CCMP Entities were "intimately involved in the drafting and publication" of the challenged press releases or SEC filings.  *LLDVF*, 2010 WL 3210613, at *12. Plaintiff's conclusory assertion that the CCMP Entities "were able to, and did,

14

control the contents of the various press releases and public filings that Hayward disseminated in the marketplace during the Class Period concerning the Company's business" (SAC ¶ 367) is insufficient to survive a motion to dismiss (*see* MTD Op. at 7).

*Third*, Plaintiff again tries to "disregard[] corporate structure" by impermissibly conflating the CCMP Entities with the CCMP Individual Defendants. (MTD Op. at 11–13.)  Plaintiff makes much of the unremarkable facts that the individual Hayward directors who were appointed by the CCMP Funds as shareholders served on Board committees and signed SEC filings in their capacities as directors.  (SAC ¶¶ 321, 332–38, 366; *see also* MTD Op. at 11 ("Plaintiff seeks to attribute Hayward's statements to MSD and CCMP based on its assumption that affiliated Hayward directors signed the risk disclosures as MSD and CCMP 'designees.'").)  But "no factual allegations suggest that the affiliated Hayward directors signed Hayward's risk disclosures" or served on the Board or its committees "as agents of or on behalf of" the CCMP Entities.  (MTD Op. at 11.)  Plaintiff's SAC is therefore insufficient.  In any event, as discussed below, Plaintiff's allegations based on the CCMP Individual Defendants' status as directors and committee membership cannot establish control person liability as a matter of law. (*See infra* Section II.B.)

15

*Fourth*, Plaintiff's allegations that the CCMP Funds owned a minority of Hayward's stock and appointed a minority of Hayward's Board cannot establish control as a matter of law.  Plaintiff alleges that, during the Class Period, the CCMP Funds owned, at most, "approximately 31% of Hayward's stock."  (SAC ¶ 52; *see also id.* ¶¶ 27, 39, 52, 58–59, 366.)  Plaintiff also alleges that "[d]uring the Class Period, Hayward's Board consisted of 12 to 13 directors," three of whom were "affiliated with" the CCMP Entities.  (*Id.* ¶ 332; *see also id.* ¶¶ 27, 35–37, 321, 333–37.)  Thus, Plaintiff alleges that 23–25% of the Board was affiliated with the CCMP Entities.  (*Id.*)  It is settled law that "allegations of control are insufficient where the plaintiff merely alleges that the defendant owned a minority stock interest and selected a minority number of directors."  *In re Advance Auto Parts, Inc. Sec. Litig.*, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020) (collecting cases).  Courts in this Circuit routinely reject control person liability where, as here, "the plaintiff merely alleged that the defendant owned thirty percent of the voting stock and selected three of [12 or 13] board members."  *LLDVF*, 2010 WL 3210613, at *13 (collecting cases) (dismissing control person claims against "minority shareholders, owning 22% and 8% of the shares").[5]  Plaintiff's allegations are even weaker with respect to

---

[5] *See also Advance*, 2020 WL 599543, at *9 (dismissing control person liability where "Starboard held a minority stock ownership in Advance Auto, appointed four directors, including Smith, to its board, forced the resignation of its former CEO, Jackson, and Smith got his way in pushing for certain cost cuts"); *In re DVI, Inc. Sec. Litig.*, 2005 WL 1307959, at *13 (E.D. Pa. May 31, 2005) ("[S]tatus as a

the CCMP Beneficial Owners, because Plaintiff does not—and cannot—allege that they appointed *any* directors to Hayward's Board.

*Fifth*, Plaintiff again seeks to conflate the CCMP Entities and MSD into a single "controlling shareholder," because *together* the CCMP Funds and MSD owned a majority of Hayward stock and appointed five of 12 or 13 directors.  (SAC ¶¶ 321–33, 366; *see also id.* ¶¶ 51–53, 338.)[6]  But it is settled law that, under Section 20(a), "each defendant's control must be evaluated *separately* unless there is some basis on which to consider their collective action."  *LLDVF*, 2010 WL 3210613, at *12 (collecting cases).

In its First Amended Complaint, Plaintiff argued that this Court should consider CCMP Advisors (as noted, Plaintiff incorrectly named CCMP Advisors while intending to name the CCMP Funds) and MSD together by falsely asserting that CCMP Advisors and MSD "agreed to coordinate the voting of their shares collectively, ensuring them majority voting control over the Company" (FAC ¶ 30), which appears nowhere in the Agreement (*see* ECF No. 67 at 6, 17; ECF No. 86 at 8–9).  In its Second Amended Complaint, Plaintiff pivoted from its prior false

---

minority shareholder and creditor, alone, are not sufficient to demonstrate that the defendant had actual power or influence over the allegedly controlled person under Section 20.").

[6] Plaintiff asserts repeatedly that "the CCMP and MSD Entities installed the majority of Hayward's Board," but identifies only five directors appointed by the CCMP Funds or MSD.  (SAC ¶ 54; *see also id.* ¶¶ 35–37, 44–45, 53, 321, 324, 332.)

allegations and admits that the CCMP Funds and MSD (and AIMCo) agreed only to "use commercially reasonable efforts to coordinate with respect to *the timing and manner of disposition*" of their Hayward stock by providing "reasonable advance notice and consult" before any such sale to "facilitate an orderly process for" the CCMP Funds, MSD, and AIMCo "to sell their shares."  (SAC ¶ 323 (quoting Agreement § 2.2(f)).)  Because the CCMP Funds, MSD, and AIMCo agreed "to act together with respect to" the sale of "their Stockholder Shares," they recognized that they "*may* be deemed to be a group for purposes of Section 13(d) of the Exchange Act."  (*Id.* (quoting Agreement § 2.2(g)); *see id.* ¶ 325 ("By virtue of the Stockholders' Agreement, the CCMP Investors, MSD and AIMCo *may* be deemed to be members of a group for the purposes of Section 13(d) of the Securities Exchange Act of 1934.") (quoting CCMP Schedule 13G (Feb. 8, 2022)); *id.* ¶ 328 (Hayward "was a '"controlled company" within the meaning of the corporate governance standards of the New York Stock Exchange,'" because "the CCMP Entities, MSD Entities, and AIMCo 'collectively control a majority of the voting power of shares'") (quoting IPO Prospectus at 1, 51; 2021 Form 10-K at 36).)  Under Section 13(d), "group" status is based exclusively on "acquiring, holding, or disposing of securities" and has nothing to do with voting or control.  15 U.S.C. § 78m(d)(3); *see also* 17 C.F.R. § 240.13d–1.  Accordingly, these routine corporate

governance disclosures in no way establish that the CCMP Entities and MSD together actually "controlled Hayward throughout the Class Period." (SAC at 97.)

To the contrary, Plaintiff's own allegations directly contradict its attempt to treat the CCMP Entities and MSD as one entity. Plaintiff asserts that "[t]he CCMP and MSD Entities used their control over the Company to, among other things, sell significant amounts of stock" through a March 2022 "share repurchase program" and "May 2022 secondary public offering." (*Id.* ¶ 338.) But Plaintiff admits that MSD did not sell any stock in the share repurchase program or secondary public offering. (*Id.*) Thus, Plaintiff's single-entity theory of control "'makes little economic sense,'" because MSD had no incentive to approve share repurchases or offerings in which it did not participate. *Luminent Mortg. Cap., Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 590 (E.D. Pa. 2009) (quoting *In re Digital Island Sec. Litig.*, 257 F.3d 322, 331 (3d Cir. 2004)) (dismissing securities action).

***Sixth***, Plaintiff asserts, without any factual support, that non-party AIMCo is CCMP Advisors' "client" in the hopes of treating the CCMP Entities, MSD, and AIMCo as a "consortium" and "single shareholder group." (SAC ¶¶ 51–53, 149–51; *see also id.* ¶¶ 2, 248, 278, 290, 293, 307.) But Plaintiff alleges only that "[n]on-party AIMCo is a Canadian institutional investment manager that sometimes works with private equity firms," "AIMCO's website lists CCMP Capital as a Fund Partner," and AIMCo "previously partnered with the entities affiliated with CCMP

19

Capital to back other companies." (*Id.* ¶ 38.) These generic statements do not support Plaintiff's sweeping assertions that the CCMP Entities "had the ability to direct and/or substantially influence the way AIMCo voted its Hayward shares," or "the timing and amount of AIMCo's sales of Hayward stock." (*Id.*)

Even if the CCMP Funds and AIMCo are considered together (which they should not be), they would still be minority investors that owned 46.81% of Hayward's stock (and only 34.8% after the May 2022 offering) and appointed, at most, one-third (four of 12 members) of Hayward's Board. (*See* SAC ¶¶ 58–59.) This is insufficient to establish control person liability as a matter of law. *See In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 263 (S.D.N.Y. 2020) (dismissing control person claims where "agreement only aggregates approximately 46.3% of the total voting shares").

Plaintiff also misreads and selectively quotes the Agreement, which did not "place[] AIMCo under the control of the CCMP Entities and MSD Entities with respect to AIMCo's Hayward investment." (SAC ¶ 324.) The Agreement limits AIMCo's right to sell Hayward stock independently of the CCMP Funds only ***before*** the CCMP Funds "have consummated a secondary sale after the Company IPO." (*Id.* (quoting Agreement § 2.2(e)).) Plaintiff ignores that AIMCo could decide to sell, or not to sell, when the CCMP Funds consummated their first post-IPO sale, and "[f]rom and after the CCMP First Post-IPO Sale," these limitations on AIMCO's

right to sell independently of the CCMP Funds "shall no longer be applicable to []
AIMCo," which could then sell Hayward stock whenever it chooses.  (Agreement
§ 2.2(e).)

*Finally*, Plaintiff alleges that the CCMP Entities "maintained tight control of
Hayward" because Hayward's Board of Directors "appoint[ed] executives,"
including the CEO and CFO in 2019 and 2020, respectively.  (SAC ¶¶ 2, 54; *see
also id.* ¶¶ 249, 321.)  The unremarkable fact that a company's Board appointed a
CEO and CFO ***over a year before the Class Period began*** does "not create the
inference that the defendant could control the company," let alone during the Class
Period.  *LLDVF*, 2010 WL 3210613, at *13 (collecting cases).

Accordingly, for each of the independent reasons set forth above, Plaintiff has
failed to adequately allege that the CCMP Entities are control persons and this Court
should dismiss Plaintiff's control person claims against them.

## B.  The CCMP Individual Defendants Are Not Control Persons.

Plaintiff's Section 20(a) control person claims against the CCMP Individual
Defendants should be dismissed for at least three reasons.

***First***, Plaintiff fails to allege *anything* the CCMP Individual Defendants
actually did.  Plaintiff vaguely alleges that the CCMP Individual Defendants
"participated" in "the operation and management of Hayward and conducted and
participated, directly and indirectly, in the conduct of Hayward's business affairs."

21

(SAC ¶ 374.) Plaintiff also speculates, without providing any factual support, that the CCMP Individual Defendants "were able to, and did, control the contents of the various press releases and public filings that Hayward disseminated in the marketplace during the Class Period concerning the Company's business." (*Id.* ¶ 375.) But Plaintiff cannot point to a single action the CCMP Individual Defendants took that "detail[s] the manner in which the defendants tightly controlled the business and operations," and does not allege that the CCMP Individual Defendants were "intimately involved in the drafting and publication of the offering materials at issue." *LLDVF*, 2010 WL 3210613, at *12. Plaintiff's "[g]eneral allegations pertaining to management responsibilities fail to allege control with the requisite specificity, as the control person must be shown to possess actual control" over the challenged statements. *Univ. Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 399 (D. Del. 2016) (collecting cases).

*Second*, Plaintiff's vague allegations based on the CCMP Individual Defendants' "positions of control and authority as directors of Hayward" (SAC ¶¶ 374–75; *see also id.* ¶¶ 27, 35–37, 321, 332) fail as a matter of law. "[I]t is well-settled that the mere fact that an individual is a director of a firm is not sufficient to show he is a controlling person of the firm." *Univ. Am.*, 176 F. Supp. 3d at 397 (collecting cases); *see also Li v. Eqonex Ltd.*, 2024 WL 4241951, at *17 (S.D.N.Y. Sept. 18, 2024) ("It is well accepted that merely alleging that a particular defendant

22

is a director or an officer of a company is not sufficient to allege control.")
(collecting cases); *Palladin*, 2006 WL 2460650, at *16 ("Status as directors,
standing alone, is insufficient to establish control for purposes of Section 20(a).").
Moreover, each such Defendant was just one of 12 or 13 members of Hayward's
Board during the Class Period.  (SAC ¶ 332.)

Plaintiff's allegations that McFadden and Walsh (but not Brenneman) "served
on key Board committees" (*id.* ¶ 374; *see also id.* ¶¶ 35–37, 321, 333–34) are
likewise "insufficient to show control."  *Skeway v. China Nat. Gas, Inc.*, 2012 WL
2877645, at *1 (D. Del. July 6, 2012) (dismissing control person claim because the
"bare fact" that defendant "was a member of the Board of Directors and on the Audit
Committee" was "insufficient to show control"); *see also WM High Yield Fund v.
O'Hanlon*, 964 F. Supp. 2d 368, 398–99 (E.D. Pa. 2013) (dismissing control person
claim against director who was "a member of the credit committee"); *Palladin*, 2006
WL 2460650, at *13 (dismissing securities claims because "mere membership on an
audit committee is insufficient") (collecting cases).  To the contrary, serving on a
committee does "not amount to anything more than routine tasks" of directors,
*Palladin*, 2006 WL 2460650, at *13, and is therefore insufficient to allege control.

In any event, Plaintiff alleges only that McFadden had ***one vote*** on
"Hayward's ***three-person*** Compensation Committee," and Walsh had ***one vote*** on
"Hayward's ***three-person*** Nominating and Corporate Governance Committee."

23

(SAC ¶¶ 35–36; *see also id.* ¶¶ 333–34, 374.)  Such minority committee voting "does not create power to direct management and policies, and thus does not constitute sufficient control under Section 20(a)." *Li*, 2024 WL 4241951, at *18 (collecting cases).  As discussed above (*see supra* Section II.A), Plaintiff cannot manufacture majority committee voting power by treating the CCMP Individual Defendants as a group or by combining them with the directors appointed by MSD or AIMCo (*see* SAC ¶¶ 35, 334, 374).

Moreover, none of the committees on which the CCMP Individual Defendants served are relevant to this action.  Plaintiff admits that the Compensation Committee "was responsible for recommending and approving compensation plans" and "compensation levels for all executive officers" (SAC ¶ 334), which has nothing to do with Plaintiff's allegations about "inventory" and "channel demand" (*id.* ¶¶ 1–17).  Plaintiff's speculation that Walsh somehow "controlled the composition of Hayward's entire Board" through one vote on "Hayward's Nominating and Corporate Governance Committee" (*id.* ¶ 333) is "a bare assertion of conspiracy" that "will not suffice." *Twombly*, 550 U.S. at 556.

***Finally***, Plaintiff fails to allege that the CCMP Individual Defendants "possess actual control over" nearly all of the "transactions in question." *Univ. Am.*, 176 F. Supp. 3d at 397; *see also Li*, 2024 WL 4241951, at *17 ("[A] Section 20(a) defendant must not only have actual control over the primary violator, but have

24

actual control over the transaction in question.") (collecting cases). Plaintiff does not—and cannot—allege that the CCMP Individual Defendants exercised any control over (1) Hayward's CEO and CFO's oral statements or presentations during earnings calls, (2) Hayward's press releases, or (3) Hayward's quarterly SEC filings on Form 10-Q, which constitute *more than 88%* (46 of 52) of the statements Plaintiff challenges in its Appendix A. (*See* SAC App'x A.)

As discussed above (*see supra* Section II.A), Plaintiff does not allege that the CCMP Individual Defendants had any role in any of the earnings calls or management presentations at issue (*see* SAC ¶¶ 336–37). Plaintiff acknowledges that the CCMP Individual Defendants did *not* sign any of the challenged press releases or quarterly SEC filings. (*Id.* ¶¶ 131, 148, 155, 184, 218, 225.) Instead, Plaintiff speculates, without any factual support, that the CCMP Individual Defendants were "provided with copies of Hayward's SEC filings and press releases," such that they had "control" over them or the "ability and opportunity to prevent their issuance or cause them to be corrected." (*Id.* ¶ 336.) Because Plaintiff "fail[s] to plead facts supporting" the CCMP Individual Defendants' "control over any person involved in producing the [] Press Releases" or quarterly SEC filings,

25

Plaintiff "fail[s] to adequately allege control liability."  *Li*, 2024 WL 4241951, at *17.[7]

Accordingly, for each of the independent reasons set forth above, Plaintiff has failed to adequately allege that the CCMP Individual Defendants are control persons and this Court should dismiss Plaintiff's control person claims against them.[8]

## III.    CCMP Advisors Must Be Dismissed Because It Is An Improper Party.

This Court dismissed with prejudice direct liability claims against CCMP Advisors because "Plaintiff does not dispute that CCMP [Advisors] never bought, sold, or owned any Hayward stock," Plaintiff's allegations "are attributable to the [CCMP] Funds," and Plaintiff cannot "justify disregarding corporate structure and treating all CCMP entities as one."  (MTD Op. at 12–13.)  This Court therefore

---

[7] The remaining six challenged statements are contained in Hayward's 2021 Form 10-K and 2022 Form S-3 Registration Statement (and accompanying Prospectus Supplement), which the CCMP Individual Defendants signed.  (SAC ¶¶ 37–39, 192, 229, 321, 337, 376 & App'x A.)  This Court has held that, at the pleading stage, allegations that defendants "served as directors" and "signed the SEC filings at issue" may "establish control" over the statements in those filings "so as to survive a motion to dismiss."  *Palladin*, 2006 WL 2460650, at *16.  This Court should nonetheless dismiss Plaintiff's control person claims based on the statements in those SEC filings because Plaintiff has not adequately alleged a primary violation of Section 10(b).  (*See supra* Section I.)

[8] The SAC also exceeds the scope of this Court's MTD Opinion and Order, which did ***not*** give Plaintiff leave to add the CCMP Individual Defendants.  This Court's Order stated that "Plaintiff may file an amended complaint curing the deficiencies noted in the Court's accompanying Opinion" (Order ¶ 5), which permitted Plaintiff only "to add the proper CCMP affiliated parties," not any CCMP Individual Defendants (MTD Op. at 13).

granted Plaintiff leave to "amend its 10(b) and 10b–5 claims to add the proper CCMP affiliated parties." (*Id.* at 13.) While Plaintiff amended its claims to add additional CCMP-affiliated parties, Plaintiff failed to remove CCMP Advisors as a defendant in this action. This Court should "dismiss with prejudice" the remaining control person claim against CCMP Advisors "because CCMP [Advisors] is an improper party." (*Id.*) This Court should also dismiss with prejudice the control person claim against CCMP Advisors because it had no role with respect to Hayward; CCMP Advisors only provided investment advice to the CCMP Funds.[9]

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Hayward's motion to dismiss, the Second Amended Complaint should be dismissed in its entirety with prejudice. "Defendants have already been forced to defend against *three* complaints." *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 166 (3d Cir. 2004). This Court should not grant Plaintiff leave to file a fourth and "continu[e] to require defendants to defend this action, and to ultimately incur the effort and expense of a third motion to dismiss," which "would clearly constitute undue prejudice to the defendants" and would be futile in any event. *Id.* at 163 (affirming denial of leave to amend in securities class action).

---

[9] Any amendment regarding CCMP Advisors' role would be futile because the same arguments that warrant dismissal of the CCMP Fund Entities also apply to CCMP Advisors. (*See supra* Section II.A.)

27

Dated:  December 18, 2024          /s/ Scott W. Parker
                                   Scott W. Parker
                                   Marissa Edwards
                                   **PARKER IBRAHIM & BERG LLP**
                                   270 Davidson Avenue, 5th Floor
                                   Somerset, New Jersey 08873
                                   (908) 333-6220

                                   **WILLKIE FARR & GALLAGHER LLP**
                                   Tariq Mundiya (admitted *pro hac vice*)
                                   787 Seventh Avenue
                                   New York, NY 10019-6099
                                   (212) 728-8000

                                   Joshua S. Levy (admitted *pro hac vice*)
                                   1875 K Street, N.W.
                                   Washington, DC 20006-1238
                                   (202) 303-1000

                                   *Attorneys for Defendants CCMP Capital
                                   Advisors, LP, CCMP Capital Investors III,
                                   L.P., CCMP Capital Investors III
                                   (Employee), L.P., CCMP Capital Associates
                                   III, L.P., CCMP Capital Associates III GP,
                                   LLC, CCMP Capital, LP, CCMP Capital
                                   GP, LLC, Greg Brenneman,
                                   Mark McFadden, and Timothy Walsh*

28