# EXHIBIT 33

# Form 4
# Model Form 123: Broker-Assisted Cashless Exercise (Exercise and Immediate Sale Through Broker)

(http://www.adobe.com/products/acrobat/readstep.html)   Model Form 123 (../forms/123.pdf)

**Illustrative Facts**: Millicent M. Merriweather, a vice president of MNO Corporation, held a ten-year option to purchase 5,000 shares of MNO common stock which was granted to her on August 15, 2017, in a transaction that satisfied the approval requirements of Rule 16b3(d)(1). The option was granted to Merriweather at an exercise price of $10 per share, became exercisable in three annual installments beginning one year after the grant date, and was timely reported by Merriweather on Form 4. In September 2020, MNO's common stock was trading at prices in excess of the $10 per share exercise price of Merriweather's option, and Merriweather wished to realize her option profits by exercising the option and selling the underlying stock. Merriweather did not, however, have sufficient funds available to pay the exercise price of the option and the related tax withholding. To address the problem, Merriweather decided to exercise her option by utilizing a broker-assisted cashless exercise program that had been established by MNO through a registered broker-dealer. The broker-dealer served as administrator of and record-keeper for MNO's equity plans, and MNO and the broker-dealer had agreed to broker interface procedures pursuant to which the broker-dealer provided same-day trade information to MNO's Section 16 compliance officer when any Section 16 insider effected a reportable transaction. To utilize MNO's cashless exercise program, an optionee must deliver to the broker an irrevocable notice of exercise of an option directing the broker to sell, immediately and in the open market, either all of the shares underlying the option or a number of shares sufficient to pay the exercise price and applicable withholding taxes. Upon receiving a notice of exercise, the broker effects the sale of the shares and then, on the date of settlement (T+2), pays the applicable exercise price and tax withholding amount to MNO, obtains the option stock from MNO electronically through a pre-established account holding shares that are accessible to the broker by DWAC, and delivers the shares in settlement of the sale. On September 14, 2020, Merriweather delivered to the broker an irrevocable notice of exercise of her option and a direction to the broker to sell all 5,000 of the underlying shares. That same day, the broker sold 5,000 shares of MNO common stock at the prevailing market price of $25 per share, for a total of $125,000. On September 16, the settlement date, the broker received the purchase price of the shares from the purchaser and obtained from MNO for delivery to the purchaser 5,000 shares of MNO common stock. The broker retained $625 of the sale proceeds as its commission, paid $77,675 to MNO (representing the exercise price of $50,000 and tax withholding of $27,675), and remitted the remaining $47,325 to Merriweather.

**Reporting Principles**:

(1) Exercise Of At- Or In-The-Money Option Exempt From Section 16(b). The exercise of an at- or in-the-money option involves both the disposition of the option and the acquisition of the underlying stock, both of which are exempt from Section 16(b) by virtue of Rule 16b6(b), regardless of whether the grant of the option was exempt under Rule 16b3 and regardless of how long the option has been held. If the option was granted in accordance with Rule 16b3(d), the acquisition of underlying stock resulting from the exercise of the option also is exempt from Section 16(b) under Rule 16b3(d) (whether or not the option is at- or in-the-money), and the disposition of the option is exempt under Rule 16b3(e). The grant of Merriweather's option was exempt under Rule 16b3(d), and the option was in the money when she exercised it. Accordingly, her exercise of the option was exempt from Section 16(b), and therefore the resulting purchase could not be matched under Section 16(b) with the same-day sale of the underlying shares.

(2) <u>Exercise Of Option Reportable On Form 4</u>. Whether or not the exercise of an option is exempt from Section 16(b), the exercise is reportable on Form 4. See Rule 16(a)-3(f)(1)(i)(A) and Rule 16a3(g)(1). Accordingly, Merriweather's exercise of her option was reportable on Form 4 by the end of the second business day following its exercise. For a discussion of the date on which an option should be deemed exercised, see Reporting Principle (6) below.

(3) <u>Cashless Exercise Of Rule 16b3 Option Reportable In Same Manner As Any Other Exercise</u>. An insider's cashless exercise of a Rule 16b3 option is reportable in the same manner as any other exercise of a Rule 16b3 option for which the exercise price is paid in cash. The fact that the exercise price is transmitted to the issuer by a broker rather than by the insider does not affect the reporting of the exercise of the option, nor is the fact that the option was exercised pursuant to an issuer-sponsored cashless exercise program disclosable in the Form 4 filed to report the exercise. For a discussion of Reporting Principles applicable to the cash exercise of a Rule 16b3 option, see Model Form 114.

(4) <u>Open Market Sale Reportable On Form 4</u>. An open market sale of stock is reportable on Form 4, by the end of the second business day following the date of "execution" of the sale. The date of execution of an open market sale is the trade date, not the settlement date. See Model Form 64. Because the trade date for Merriweather's sale of her option stock was September 14, she must report the sale on Form 4 by September 16.

(5) <u>When Reporting Multiple Transactions In Table I, Column 5 Of Each Line On Which A Transaction Is Reported Should Reflect Running Tally Of Securities Owned</u>. Column 5 of Table I of Form 4 (and Column 9 of Table II) calls for the amount of securities beneficially owned "following the reported transaction(s)." When reporting multiple transactions in securities of the same class and held in the same form of ownership (e.g., direct), Column 5 should reflect a running tally of the shares beneficially owned by the insider (meaning the insider should complete Column 5 of each line by indicating the number of securities beneficially owned after the transaction reported on that line). Ultimately, Column 5 of the last line will report the number of securities owned after taking into account all of the reported transactions. The total shown in the last completed line of Column 5 should reflect the insider's beneficial ownership as of the time of the latest transaction reported in the form, as Merriweather's Form 4 does.

(6) <u>Open Market Sale Of Stock In Connection With Cashless Exercise Of Employee Stock Option Reportable In Same Manner As Any Other Open Market Sale</u>. An insider's open market sale of the stock underlying an employee stock option, in connection with a cashless exercise of the option, is reportable in the same manner as any other open market sale of issuer securities. The fact that the sale involved option stock or occurred in connection with a cashless exercise program does not affect the manner in which the sale is reported and is not required to be disclosed in the Form 4 filed to report the sale. For a discussion of Reporting Principles applicable to open-market sales of issuer securities, see Model Forms 64 (single sale) and 65 (multiple sales).

(7) <u>Use Trade Date Of Stock Sale To Report Date Of Exercise Of Option</u>. In a typical broker-assisted cashless exercise, the exercise price of the option is not paid to the issuer until the date of settlement of the broker's related sale of the underlying stock. (Under some cashless exercise programs, the broker may advance the exercise price and related tax withholding to the issuer on the trade date, and repay itself on the settlement date.) Some stock option plans provide that options granted under the plan will not be deemed exercised until the optionee has delivered to the issuer both an effective notice of exercise and payment of the exercise price of the option. Regardless of what the option plan says, and regardless of the date on which the broker transmits the exercise price to the issuer, the option should be deemed, for Section 16 reporting purposes, to be effectively exercised as of the date on which the insider delivers to the broker an irrevocable notice of exercise of the option. On that date, the rights and obligations of the insider and the issuer become fixed. In addition, the issuer generally treats the option as having been exercised on that date for purposes of determining the applicable tax withholding. Treating the option as having been exercised on the date of delivery of the notice of exercise more accurately reflects the nature of the cashless exercise as

a simultaneous purchase and sale, and also may help avoid the appearance that the insider engaged in a short sale of the option stock. Merriweather has reported on her Form 4 that she exercised her option on September 14, even though the broker did not transmit the exercise price to MNO until September 16. Treating Merriweather's option exercise as having occurred on September 14 means that the deadline for filing a Form 4 to report the transaction is September 16, and therefore the exercise should be included in the same Form 4 filed to report the open market sale of the underlying stock.

(8) <u>Compliance With Regulation T Required To Avoid Unlawful Short Sale By Insider</u>. Section 16(c) prohibits insiders from engaging in short sales of the issuer's equity securities. A cashless exercise by an insider who, like Merriweather, owns no securities of the issuer other than the option being exercised, might be viewed as a sale of securities that will not be owned by the insider until the proceeds of sale are transmitted to the issuer. Accordingly, the broker's sale could be deemed to involve a short sale by the insider. The SEC staff takes the position, however, that cashless exercises will not be deemed to violate Section 16(c) so long as the requirements of Regulation T (12 C.F.R. § 220.3(e)(4)) are satisfied and settlement occurs no later than regular way (i.e., T+2). See Dean Witter Reynolds Inc. (April 29, 1991).

(9) <u>Cashless Exercise Should Not Be Deemed To Involve A "Personal Loan" Under Section 402 Of Sarbanes-Oxley Act Of 2002</u>. Section 402 of the Sarbanes-Oxley Act of 2002 prohibits issuers from making or arranging extensions of credit to directors or executive officers in the form of a "personal loan." While a cashless exercise might be deemed to involve an extension of credit by the issuer, or an extension of credit by the broker which was arranged by the issuer, it is highly doubtful that a cashless exercise could be deemed to involve a personal loan prohibited by Section 402.

(10) <u>Sale Of Option Stock On Behalf Of Charitable Donee Not Reportable</u>. Where an insider, prior to exercising an option in a broker-assisted cashless exercise in which all of the underlying shares will be sold, donates to a charitable institution the shares in excess of those sold to pay the exercise price of the option, the transaction should be reported by the insider as (i) the exercise of the option, (ii) a gift to the charitable institution of the number of shares donated, and (iii) a sale by the insider of the remaining shares subject to the option. The insider need not report the sale of the shares sold on behalf of the charitable institution. See Dean Witter Reynolds, Inc. (January 3, 1992) and Model Form 79.

[back to top]

Terms and Conditions/Privacy Policy (/SupportFiles/MemberTerms.htm)

© 2001 - 2024, Executive Press, Inc.

CCRcorp, 8911 N Capital of TX Hwy Suite 4200-110, Austin, TX 78759 info@ccrcorp.com (mailto:info@ccrcorp.com)