Matthew F. Gately
**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Park 80 West-Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: 201-845-9600
mfg@njlawfirm.com

*Counsel for Lead Plaintiff*
*Fulton County Employees' Retirement System*
*[Additional Counsel Appear on Signature Page]*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF SOUTHFIELD FIRE AND POLICE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, CCMP CAPITAL INVESTORS III, L.P., CCMP CAPITAL INVESTORS III (EMPLOYEE), L.P., CCMP CAPITAL ASSOCIATES III, L.P., CCMP CAPITAL ASSOCIATES III GP, LLC, CCMP CAPITAL, LP, CCMP CAPITAL GP, LLC, MSD AQUA PARTNERS, LLC, MSD PARTNERS, L.P., MSD PARTNERS (GP), LLC, MARK MCFADDEN, GREG BRENNEMAN, TIMOTHY WALSH, CHRISTOPHER BERTRAND, and KEVIN BROWN<br><br>Defendants. | Civil Action No. 2:23-cv-04146<br><br>Hon. William J. Martini<br><br>**PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS FILED BY (1) CCMP CAPITAL ADVISORS, LP, CCMP CAPITAL INVESTORS III, L.P., CCMP CAPITAL INVESTORS III (EMPLOYEE), L.P., CCMP CAPITAL ASSOCIATES III, L.P., CCMP CAPITAL ASSOCIATES III GP, LLC, CCMP CAPITAL, LP, CCMP CAPITAL GP, LLC, MARK MCFADDEN, TIMOTHY WALSH, GREG BRENNEMAN, AND (2) MSD AQUA PARTNERS, LLC, MSD PARTNERS, L.P., MSD PARTNERS (GP), LLC, CHRISTOPHER BERTRAND, AND KEVIN BROWN** |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF THE FACTS ..................................................................................4

    A.    CCMP and MSD Controlled Hayward for CCMP's and MSD's Mutual Profit from the Outset ..............................................................4

    B.    CCMP and MSD Exerted Their Control Through Hayward's Board and Key Officers..........................................................................6

    C.    CCMP, MSD, and Hayward Have All Admitted that CCMP and MSD Control Hayward as a Group.......................................................8

    D.    CCMP and MSD Profited from the Misleading Statements Made by the Hayward Defendants.......................................................10

PROCEDURAL BACKGROUND...............................................................................12

LEGAL STANDARD..................................................................................................12

    A.    Motion to Dismiss .................................................................................12

    B.    Control Liability ....................................................................................13

ARGUMENT ..............................................................................................................15

I.    PLAINTIFF HAS ADEQUATELY PLED A PRIMARY VIOLATION BY THE HAYWARD DEFENDANTS......................................................15

II.    PLAINTIFF HAS ADEQUATELY PLED CONTROL PERSON LIABILITY AGAINST THE CCMP AND MSD ENTITIES.....................15

    A.    Hayward Admitted in SEC Filings That It Is a "Controlled Company" and That CCMP and MSD Have "Significant Influence and "Effective[] Control" Over It .......................................15

    B.    The CCMP and MSD Director Defendants Signed Misleading SEC Filings on Behalf of CCMP and MSD, Which Also Dispositively Establishes Control Liability Under Governing Law .......................................................................................................17

i

C.   CCMP and MSD Were Hayward's Majority Shareholders and Hayward Was Accordingly a "Controlled Company"........................19

D.   CCMP and MSD Controlled Hayward's Board of Directors .............22

E.   Culpable Participation Is Not Required on a Motion to Dismiss, but Plaintiff Has Satisfied That Requirement in Any Event...............24

F.   Defendants' Remaining Challenges to CCMP's and MSD's Liability Fail ..................................................................................26

III.   PLAINTIFF HAS ADEQUATELY PLED CONTROL PERSON LIABILITY AGAINST THE CCMP AND MSD DIRECTORS .................27

A.   The CCMP and MSD Director Defendants Signed Misleading SEC Filings in This Case, Which Establishes Control .......................27

B.   Defendants' Remaining Arguments Fail............................................27

IV.   CCMP ADVISORS IS A PROPER PARTY ...............................................30

CONCLUSION...................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*,
   496 F. Supp. 3d 952 (E.D. Va. 2020) ...................................................24

*Dudley v. Haub*,
   2013 WL 1845519 (D.N.J. Apr. 30, 2013) (Martini, J.) .............................13, 25

*Fouad v. Isilon Sys., Inc.*,
   2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) .........................................23, 28

*Harriman v. E.I. DuPont De Nemours & Co.*,
   372 F. Supp. 101 (D. Del. 1974)..........................................................24

*In re Able Labs. Sec. Litig.*,
   2008 WL 1967509 (D.N.J. Mar. 24, 2008) ................................................14, 25

*In re Advanced Auto Parts, Inc. Sec. Litig.*,
   2020 WL 599543 (D. Del. Feb. 7, 2020) (CCMP Br. )....................................22

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) ....................................................30

*In re Am. Apparel, Inc. S'holder Litig.*,
   2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ............................................16, 23

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
   2007 WL 81937 (E.D. Pa. Jan. 9, 2007)..................................................14

*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal. 2008) ..................................................17

*In re BioScrip, Inc. Sec. Litig.*,
   95 F. Supp. 3d 711 (S.D.N.Y. 2015) .....................................................25

*In re Cambrex Corp. Sec. Litig.*,
   2005 WL 2840336 (D.N.J. Oct. 27, 2005) (Martini, J.)...............................13, 24

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .............................................................18

iii

*In re Leslie Fay Cos. Sec. Litig.*,
   918 F. Supp. 749 (S.D.N.Y. 1996) ...................................................................17

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..............................................................28

*In re MicroStrategy, Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000) ...............................................................14

*In re Nat'l Media Sec. Litig.*,
   1994 WL 397398 (E.D. Pa. July 27, 1994) .......................................................14

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
   838 F. Supp. 2d 1148 (D. Colo. 2012)...............................................................17

*In re Parmalat Sec. Litig.*,
   414 F. Supp. 2d 428 (S.D.N.Y. 2006) ..............................................................14

*In re Philip Servs. Corp. Sec. Litig.*,
   383 F. Supp. 2d 463 (S.D.N.Y. 2004) ..............................................................17

*In re Reliance Sec. Litig.*,
   135 F. Supp. 2d 480 (D. Del. 2001)..............................................................23, 29

*In re Royal Dutch/Shell Transport Sec. Litig.*,
   380 F. Supp. 2d 509 (D.N.J. 2005)....................................................................14

*In re Toronto-Dominion Bank Sec. Litig.*,
   2018 WL 6381882 (D.N.J. Dec. 6, 2018)..........................................................25

*In re U.S. Interactive, Inc.*,
   2002 WL 1971252 (E.D. Pa. Aug. 23, 2022) ...................................................14

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009)...............................................................16

*In re Xerox Corp. Sec. Litig.*,
   165 F. Supp. 2d 208 (D. Conn. 2001)...........................................................25, 29

*Li v. Eqonex Ltd.*,
   2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024) .................................................28

iv

*LLDVF v. Dinicola*,
2010 WL 3210613 (D.N.J. Aug. 12, 2010) ............................................21, 26, 29

*Masterson v. Commonwealth Bankshares, Inc.*,
2 F. Supp. 3d 824 (E.D. Va. 2014) ......................................................18, 23, 28

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W.
Holding Corp.*, 320 F.3d 920 (9th Cir. 2003)......................................................24

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
142 F. Supp. 2d 589 (D.N.J. 2001)...................................................................14

*Palladin Partners v. Gaon*,
2006 WL 2460650 (D.N.J. Aug. 22, 2006) (Martini, J.)...........................*passim*

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .............................................................................13

*Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021)................................................................18

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*,
2005 WL 1365465 (D.N.J. June 7, 2005)..........................................................14

*Sheehan v. Little Switzerland, Inc.*,
136 F. Supp. 2d 301 (D. Del. 2001)...................................................................18

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)...........................................................................................13

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016)..............................................................16

*Universal American Corp. v. Partners Healthcare Sols. Holdings,
L.P.*, 176 F. Supp. 3d 387 (D. Del. 2016)....................................................28, 29

**Statutes**

15 U.S.C. §78t(a) ...............................................................................................13

**Other Authorities**

17 C.F.R. §240.12b-2(f)......................................................................................21

17 C.F.R. §230.405 .........................................................................................20

Lead Plaintiff Fulton County Employees' Retirement System ("Plaintiff") respectfully submits this Consolidated Opposition to the Motions to Dismiss and accompanying briefs in support thereof filed by: (1) CCMP Capital Advisors, LP, CCMP Capital Investors III, L.P., CCMP Capital Investors III (Employee), L.P., CCMP Capital Associates III, L.P., CCMP Capital Associates III GP, LLC, CCMP Capital, LP, CCMP Capital GP, LLC, Mark McFadden, Timothy Walsh, Greg Brenneman (ECF No. 96-1) ("CCMP Br.");[1] and (2) MSD Aqua Partners, LLC, MSD Partners, L.P., MSD Partners (GP), LLC, Christopher Bertrand, and Kevin Brown (ECF No. 95-1) ("MSD Br.").

## PRELIMINARY STATEMENT

The CCMP and MSD Entities are investment management firms that acquired Hayward Holdings, Inc. ("Hayward") together in order to cash out later at an enormous profit of hundreds of millions of dollars.

CCMP and MSD were Hayward's controlling shareholders during the Class

---

[1]    CCMP Capital Advisors, LP, CCMP Capital Investors III, L.P., CCMP Capital Investors III (Employee), L.P., CCMP Capital Associates III, L.P., CCMP Capital Associates III GP, LLC, CCMP Capital, LP, and CCMP Capital GP, LLC collectively referred to herein as the "CCMP Entities." Together with Mr. McFadden, Mr. Walsh, Mr. Brenneman ("the CCMP Directors"), they are collectively referred to herein as "CCMP."  MSD Aqua Partners, LLC, MSD Partners, L.P., and MSD Partners (GP), LLC are collectively referred to herein as the "MSD Entities," and, together with Mr. Bertrand and Mr. Brown ("the MSD Directors"), they are collectively referred to herein as "MSD."  The CCMP Directors and MSD Directors are collectively referred to as the "Director Defendants."

Period and wielded extraordinary power over every aspect of Hayward's business. After acquiring the Company, CCMP and MSD replaced Hayward's CEO and CFO with Kevin Holleran and Eifion Jones, their hand-picked officers. Not only did CCMP and MSD have a majority of the seats on Hayward's Board of Directors ("Board"), but their unchecked ability to influence director nominations and elections also gave them control over the entire membership of Hayward's Board. The five Director Defendants from CCMP and MSD—Mr. McFadden, Mr. Brenneman, Mr. Walsh, Mr. Brown, and Mr. Betrand—each sat on Hayward's Board during the Class Period, oversaw the company's business and affairs, and reviewed and approved Hayward's SEC filings containing allegedly false and misleading statements. Four of the five Director Defendants also chaired or sat on key committees that reviewed Hayward's annual and quarterly financial statements, oversaw compensation for its executive officers, and decided director nominations. CCMP and MSD also used their control to direct Hayward to conduct a self-interested repurchase program and secondary offering, enabling CCMP to dump its shares and receive hundreds of millions of dollars.

Given these facts, there is no real dispute that CCMP and MSD controlled Hayward. Indeed, Hayward has admitted in multiple SEC filings that CCMP and MSD together had "significant influence" and "control of the Company."

Plaintiff alleges "control person" claims against CCMP and MSD under

2

Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78a, *et seq*., for the misstatements made by the Hayward Defendants while under CCMP and MSD's control.  The allegations overwhelmingly establish a "reasonable inference" that CCMP and MSD had "the potential to influence and direct the activities" of Hayward, which is sufficient.  *Palladin Partners v. Gaon*, 2006 WL 2460650, at *16 (D.N.J. Aug. 22, 2006) (Martini, J.).  *First*, the Director Defendants, acting as agents of CCMP and MSD, signed misleading SEC filings, which is all that is required by this Court to find control liability against all CCMP and MSD Defendants.  *Second*, Hayward itself has admitted that CCMP and MSD had "significant influence" and "control" over the company and its business and affairs during the Class Period.  *Third*, CCMP and MSD exercised control over Hayward through their majority share ownership, which made Hayward a "controlled company" under the New York Stock Exchange regulations.  *Finally*, CCMP and MSD held a majority of seats on Hayward's Board, were on key Board Committees, and controlled the membership of Hayward's Board.

In their motions, CCMP and MSD make the same handful of arguments as to why the control claims against them should be dismissed.  All of these arguments are based on improper legal foundations.  They also oversimplify and deliberately ignore the detailed control allegations in the SAC, which describe how CCMP and MSD controlled all aspects of Hayward, while attempting to inflate Plaintiff's

3

burden at the motion to dismiss stage.

When Plaintiff's allegations are viewed together and considered under the applicable law, they easily plead §20(a) claims against CCMP and MSD, and Defendants have not cited to a single case in which such claims were dismissed under similar circumstances as here. Thus, CCMP and MSD's Motions to Dismiss should be denied in full.

## STATEMENT OF THE FACTS

**A.    CCMP and MSD Controlled Hayward for CCMP's and MSD's Mutual Profit from the Outset**

The CCMP and MSD Entities are investment management firms that acquire private companies and sell them later when they can get a mark-up. ¶51.[2] In 2017, CCMP and MSD formed a consortium that also included Alberta Investment Management ("AIMCo"), CCMP's client and minority partner here,[3] to buy Hayward Industries, Inc. Led by CCMP and MSD, the consortium formed a holding

---

[2]    Citations to "¶_" are to paragraphs of the Consolidated Amended Class Action Complaint ("SAC") (ECF No. 91). Unless otherwise stated, all emphases in quoted materials are added; and internal quotations and citations are omitted. Citations to "Parker Ex. _" refer to exhibits attached to the Declaration of Scott W. Parker in Support of CCMP's Motion to Dismiss (ECF No. 96-2). Citations to "McDonough Ex. _" refer to exhibits attached to the Declaration of Kevin M. McDonough in Support of the Hayward Defendants' Motion to Dismiss (ECF No. 97-5).

[3]    AIMCo is an institutional investor that manages Canadian public pension funds. AIMCo hires investment advisors like CCMP to manage certain of its investments. ¶38.

company, Defendant Hayward Holdings, Inc. ("Hayward") expressly for the acquisition. *Id*.; *see* Hayward Holdings, Inc. Amended and Restated Stockholders' Agreement ("AARSA"), Parker Ex. 10 (ECF No. 96-12) at 1 ("[T]he Company [Hayward] was formed by the Investors for the purpose of acquiring Hayward Industries, Inc. . . .").

From the day of the acquisition, CCMP and MSD controlled Hayward. The consortium owned ***95.8% of the Company's shares***, with CCMP and MSD each owning 38.1% of the Company, or approximately 80 million shares. AIMCo, CCMP's client, owned 19.6%, or approximately 41 million shares. ¶59.

In March of 2021, after Hayward's revenue growth surged due to a bubble of demand for pool supplies at the start of Covid, CCMP and MSD took advantage by arranging for Hayward to go public. ¶¶55-57. CCMP, MSD, and AIMCo each sold 10.4% of their holdings in the IPO, with CCMP and MSD each selling over 8.3 million shares and AIMCo selling nearly 4.3 million shares. ¶¶58-59, 309. Together, CCMP and MSD made over $267 million while AIMCo made over $72.6 million. ¶¶57, 309. The shares sold by CCMP and MSD accounted for nearly 40% of the total amount of Hayward stock sold in the IPO. ¶57. After the IPO, the consortium continued to hold a 78% stake in Hayward. ¶59. CCMP and MSD each held a 31% interest in the Company with 71.5 million shares each, while AIMCo held a 15.9% interest with 36.7 million shares. *Id.* After the IPO, CCMP and MSD

together held a majority 62% ownership stake in Hayward and agreed to coordinate their actions.  ¶¶59, 323.

As part of that coordination, certain of the CCMP and MSD Entities entered into the AARSA, discussed in more detail below in SoF.C, in which they and AIMCo "agreed" to "act together with respect to their Stockholder shares."  ¶323; AARSA, Parker Ex. 10 at 15 (quoting §2.2(g)).  In addition, the AARSA directed that CCMP and MSD would provide each other with "reasonable advance notice and consult with the other Investors prior to" any share sales.  ¶323; AARSA, Parker Ex. 10 at 14 (quoting §2.2(f)).

## B.    **CCMP and MSD Exerted Their Control Through Hayward's Board and Key Officers**

CCMP and MSD exercised near-total control over Hayward during the Class Period.  To begin with, to ensure their control, CCMP and MSD replaced Hayward's CEO and CFO with their own hand-picked agents, Kevin Holleran ("Holleran") and Eifion Jones ("Jones").  ¶54.  Then, CCMP and MSD installed their own employees on Hayward's Board of Directors and key Board committees, thus securing their control over the Company's management and its decisions.  ¶¶53, 331-35.

The Board consisted of 12 to 13 directors, and the consortium led by CCMP and MSD maintained a seven-person majority at all relevant times, giving them control.  ¶332.  By Hayward's own admission, its Board did not have a majority of independent directors.  *Id.*  In total, CCMP and MSD placed nine of their high-

ranking executives or affiliates on Hayward's Board, seven of whom served through the May 2022 Secondary Public Offering "SPO").[4]  Further, CCMP and MSD also controlled the composition of the entire Board because the President and CEO of Defendant CCMP Capital Advisors, LP ("CCMP Advisors"), Timothy Walsh, chaired Hayward's Nominating and Corporate Governance Committee, which selected director candidates, *see* ¶¶36, 333-34, and CCMP and MSD controlled the votes for director elections through their majority voting power.  *See* ¶328 (admitting "more than 50% of the voting power in the election of our directors" was held by a group, *i.e.* the CCMP and MSD Entities and AIMCo).

Through Hayward's Board, CCMP and MSD oversaw and actively participated in the Company's business and management decisions.  The Board was directly responsible for the "supervision and oversight" of Hayward's "business affairs," and was also responsible for "oversee[ing] management." ¶331.  Executives from CCMP and MSD also served on three Board committees that oversaw many

---

[4]    These nine included: Defendant Greg Brenneman (affiliated with Defendants CCMP Advisors, CCMP Capital, LP, and CCMP Capital GP, LLC); Defendant Timothy Walsh (affiliated with Defendants CCMP Advisors, CCMP Capital, LP, and CCMP Capital GP, LLC); Defendant Mark McFadden (affiliated with Defendants CCMP Advisors and CCMP Capital, LP); Defendant Kevin Brown (affiliated with Defendant MSD Partners, L.P.); and Defendant Christopher Bertrand (Managing Director of Defendant MSD Partners, L.P.).  In addition, Christopher Stevenson, Douglas Londal, Ali Afraz, and Jason Peters were non-independent directors affiliated with one of the Sponsors.  Stevenson and Londal resigned from the Board in March 2021, before the IPO.  ¶¶35-37, 39, 44-45, 332 & n.5.

aspects of Hayward's business.  Again, Defendant CCMP Advisor's President and CEO, Timonthy Walsh, chaired Hayward's Nominating and Corporate Governance Committee.  ¶36.  Hayward's Compensation Committee, which was responsible for recommending and approving compensation plans for Holleran and Jones, was also controlled by Defendants, with CCMP's McFadden and MSD's Brown both serving on the three-person committee, and McFadden serving as chairperson.  ¶¶35, 45, 334.  Furthermore, MSD Managing Director Christopher Bertrand sat on the powerful Audit Committee, which was responsible for "review[ing] and discuss[ing] with management" the Company's audited and unaudited annual and quarterly financial statements, the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," and "any significant financial reporting issues and judgments made in connection with the preparation of [Hayward's] financial statements."  ¶¶44, 335.  CCMP and MSD thus controlled all key aspects of Hayward and its Board during the Class Period.

C.    **CCMP, MSD, and Hayward Have All Admitted that CCMP and MSD Control Hayward as a Group**

CCMP, MSD, and Hayward have admitted multiple times in filings with the SEC and in the AARSA that they are coordinating with each other as a stockholder "group."  *See* ¶323; AARSA, Parker Ex. 10 at 15 (stating agreement "to act together with respect to their Stockholder Shares" and that "as such, [they] may be deemed to be a group for purposes of Section 13(d) of the Exchange Act.").  CCMP, MSD,

and Hayward have also all admitted in SEC filings that CCMP and MSD have majority shareholder control over Hayward. For example, on February 8, 2022, CCMP admitted:

> By virtue of the Stockholders' Agreement, the CCMP Investors, MSD and AIMCo *may be deemed to be members of a group* for the purposes of 13(d) of the Securities Exchange Act of 1934. Based in part on information provided by the Issuer [Hayward], *such a "group" would be deemed to beneficially own an aggregate of 179,852,865 shares of Common Stock, representing approximately 76.9% of the Common Stock* of the Issuer outstanding, as of December 31, 2021.

¶325. Likewise, on March 21, 2022, MSD "acknowledge[d] and agree[d]" that it was acting as a single group with CCMP and AIMCo, and controlled a majority of Hayward's shares. ¶326. Similarly, Hayward has admitted that it was a "controlled company" under the New York Stock Exchange because "more than 50% of the voting power in the election of our directors" was held by a group, *i.e.*, CCMP and MSD. ¶328 (explaining that after IPO, CCMP, MSD, and AIMCo *"will collectively control a majority of the voting power of shares eligible to vote in the election of our directors."*).

Hayward has also admitted in three separate SEC filings that CCMP and MSD had "significant influence" and "control of the Company" during the Class Period:

> *For as long as affiliates of our Sponsors continue to beneficially own a substantial percentage of the voting power of our outstanding common stock, they will continue to have significant influence over us. For example, they are able to strongly influence or effectively control the election of all of the members of our Board of Directors and our business and affairs,* including any determinations with

9

respect to mergers or other business combinations, the acquisition or disposition of assets, the incurrence of additional indebtedness, the issuance of any additional shares of common stock or other equity securities, the repurchase or redemption of shares of our common stock and the payment of dividends. ***This concentration of ownership may have the effect of deterring, delaying, or preventing a change of control of the Company,*** could deprive our stockholders of an opportunity to receive a premium for their common stock as part of a sale of the Company and might ultimately affect the market price of our common stock.

¶329; *see also* 2021 Form 10-K, McDonough Ex. 16 (ECF No. 97-21) at 35; ¶330 (quoting Prospectus Supplement); IPO Prospectus, McDonough Ex. 2 (ECF No. 97-7) at 45-46.

### D.    CCMP and MSD Profited from the Misleading Statements Made by the Hayward Defendants

During the Class Period, Hayward faced overwhelming problems due to a massive Channel distributor inventory overhang, which resulted in cratering demand, cancellations that were undercutting sales, and the Company's own stock of unsold products ballooning.[5]  These problems were significant and struck at the core of Hayward's business.  While the Company was experiencing stalling demand and struggling with large order cancellations, Holleran and Jones made a steady drumbeat of misrepresentations to investors that concealed these serious issues.  *See* Opp. to Hayward's MTD.  The five Director Defendants, Messrs. Brenneman,

---

[5]    Plaintiff incorporates by reference its Opposition to the Hayward Defendants' Motion to Dismiss ("Opp. to Hayward's MTD") as if set forth herein.

Walsh, Bertrand, Brown, and McFadden, acting as agents of the CCMP and MSD Entities, each signed two of the misleading statements at issue in this case: Hayward's 2021 Form 10-K and the Form S-3 Registration Statement ("Form S-3") that Hayward filed in connection with its May 2022 SPO.  ¶¶35-37, 44-45, 336-37. As a member of Hayward's Audit Committee, Defendant Bertrand also reviewed and approved Hayward's Form 10-Q for 3Q-2021.  ¶¶44, 335, 337.

And, throughout the Class Period, while the Hayward Defendants propped up the price of the Company's stock with misrepresentations, CCMP sold off more than 34% of its holdings in Hayward stock, with MSD's knowledge and coordination. ¶¶287, 323; AARSA, Parker Ex. 10 at 14, 15.  This occurred as follows:

- In January 2022, six days after CCMP and MSD signed Hayward's 2021 Form 10-K, Hayward repurchased 4.08 million shares from CMMP (2.7 million) and AIMCo (1.4 million), netting CCMP $53.4 million in proceeds and AIMCo $27.4 million.  ¶¶288, 293.

- At the same time, Hayward announced a separate acquisition of 4.08 million shares from its "Sponsors" (CCMP) that did not close until March, allowing CCMP to sell to Hayward at a favorable share price $3 higher than the prevailing market price, which was already artificially inflated, netting CCMP $80.8 million in proceeds.  ¶289.

- In May 2022, CCMP and MSD directed Hayward to conduct an SPO that occurred on May 5 and 17, 2022, enabling CCMP and AIMCo to offload a combined 27.3 million shares at artificially inflated prices. ¶¶290-92, 294.  On just those two days, CCMP dumped 17.6 million shares and made approximately $245.5 million, while AIMCo sold 9.7 million shares and made approximately $134.1

million from its sales. ¶¶291-92, 294.[6]

All told, CCMP made approximately $380 million by selling 25.1 million Hayward shares at prices significantly above the $11.21 share price at the end of the Class Period. ¶287. Through these sales, CCMP made more than $105 million in illicit profits. *Id.*

## PROCEDURAL BACKGROUND

Plaintiff's previous complaint (ECF No. 41) brought §10(b) and §20(a) claims against, as relevant here, two entities identified in multiple SEC filings as Hayward's Sponsors—CCMP Advisors and MSD Partners.

Following the Court's October, 2, 2024, Order (ECF No. 89, "October 2024 Order"), the SAC now only brings §20(a) claims against the entities that controlled Hayward, and agents of those entities who served on Hayward's Board. Thus, along with CCMP Advisors and MSD Partners, the SAC also names as §20(a) Defendants the other CCMP and MSD Entities, and the CCMP and MSD Directors.

## LEGAL STANDARD

### A.    Motion to Dismiss

On a motion to dismiss, the Court must consider the SAC in its entirety, accept

---

[6]    The May 5th sale occurred just three days after Hayward issued a shelf registration statement signed by certain CCMP and MSD Directors containing actionable statements, and about a week after Hayward confirmed its false and misleading guidance showing growth for FY2022, among other actionable statements. ¶¶214, 229-32, 290-91.

all well-pleaded allegations as true and draw all reasonable inferences in favor of Plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

### B.    Control Liability

Section 20(a) of the Exchange Act imposes liability on those who "directly or indirectly" control a primary violator of the federal securities laws. 15 U.S.C. §78t(a). To state a claim under §20(a), a plaintiff must allege (1) a primary violation by a controlled person or entity, and (2) "circumstances establishing control" over the primary violator. *Dudley v. Haub*, 2013 WL 1845519, at *20 (D.N.J. Apr. 30, 2013) (Martini, J.). This Court does not require the plaintiff to plead culpable participation on a motion to dismiss. *See In re Cambrex Corp. Sec. Litig.*, 2005 WL 2840336, at *16 (D.N.J. Oct. 27, 2005) (Martini, J.) ("[T]there is an 'overwhelming trend' in this Circuit that plaintiffs need only plead simple control," because "the facts establishing culpable participation can only be expected to emerge after discovery," and the evidence "is usually within the defendants' control."); *Palladin Partners v. Gaon*, 2006 WL 2460650, at *16 (D.N.J. Aug. 22, 2006) (Martini, J.) (same). So long as the allegations "support a reasonable inference that [defendants] had the potential to influence and direct the activities of the primary violator,"

13

Plaintiff's §20(a) claim will survive a motion to dismiss. *Palladin*, 2006 WL 2460650, at *16.

Claims under §20(a) are analyzed under Rule 8. *See, e.g.*, *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 440 (S.D.N.Y. 2006) ("Allegations of control are not averments of fraud and therefore need not be pleaded with particularity."); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2007 WL 81937, at *12 (E.D. Pa. Jan. 9, 2007) ("Control person claims are not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) or the Reform Act."); *In re U.S. Interactive, Inc.*, 2002 WL 1971252, at *20 (E.D. Pa. Aug. 23, 2022) ("The heightened pleading requirements of Rule 9(b) do not apply to claims under Section 20(a)).[7] And even if Rule 9(b) did apply, Plaintiff meets that standard here, as shown herein.

Whether defendants are controlling persons is a "question of fact which cannot ordinarily be resolved at the pleading stage," *In re Nat'l Media Sec. Litig.*, 1994 WL 397398, at *5 (E.D. Pa. July 27, 1994), and dismissal is appropriate only when "a plaintiff does not plead *any facts* from which it can be reasonably inferred the defendant was a control person." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 661 (E.D. Va. 2000); *see also P. Schoenfeld Asset Mgmt. LLC v.*

---

[7]    *See also In re Royal Dutch/Shell Transport Sec. Litig.*, 380 F. Supp. 2d 509, 565 (D.N.J. 2005); *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *28 (D.N.J. Mar. 24, 2008); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*, 2005 WL 1365465, at *14 (D.N.J. June 7, 2005).

*Cendant Corp.*, 142 F. Supp. 2d 589, 624 (D.N.J. 2001) ("[T]he ultimate determination of whether defendants were controlling persons involves questions of fact to be resolved by the factfinder.").

## ARGUMENT

### I.   PLAINTIFF HAS ADEQUATELY PLED A PRIMARY VIOLATION BY THE HAYWARD DEFENDANTS

As set forth in Plaintiff's Opp. to Hayward's MTD, Plaintiff has sufficiently alleged a primary violation of Rule 10b-5 by the Hayward Defendants. Accordingly, Plaintiff satisfies the first element of its §20(a) claim.

### II.   PLAINTIFF HAS ADEQUATELY PLED CONTROL PERSON LIABILITY AGAINST THE CCMP AND MSD ENTITIES

#### A.   Hayward Admitted in SEC Filings That It Is a "Controlled Company" and That CCMP and MSD Have "Significant Influence and "Effective[] Control" Over It

Hayward has admitted in multiple SEC filings that it is a "controlled company" because the majority of its shares were held by the CCMP and MSD Entities and AIMCo, ¶328, and that it may be "difficult for stockholders to . . . take other corporate actions, including effecting changes in our management." ¶333. Hayward has also admitted that the CCMP and MSD Entities "are able to strongly influence or effectively control . . . our business and affairs," and "will continue to have significant influence over us" "[f]or as long as" they "continue to beneficially own a substantial percentage" of Hayward's shares. ¶329; *see also* ¶330 (quoting Prospectus Supplement); IPO Prospectus, McDonough Ex. 2, at 45-46; 2021 Form

15

10-K, *id*. Ex. 16 at 36; *see also supra* SoF.C.  These admissions are, by themselves, sufficient to deny the motion to dismiss.  *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 979 (N.D. Cal. 2009) (admission in Form 10-Ks that defendant minority shareholder and related entities "'have significant influence over our management and affairs'" raised "intensely factual questions" rendering dismissal inappropriate); *In re Am. Apparel*, *Inc. S'holder Litig.,* 2013 WL 10914316, at *37 (C.D. Cal. Aug. 8, 2013) (statement in SEC filing that minority shareholder intended to "influence" corporation's "management or the [b]oard with respect to [its] business and affairs" was probative of control); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048-49 (N.D. Cal. 2016) (refusing to dismiss control person claim against minority shareholder where SEC filing stated shareholder "will continue to have significant influence over [Company's] affairs").

CCMP attempts to distract from these admissions by noting the use of words like "might" and "could" in surrounding language, but those conditional words merely illustrate the potential *effects* of Defendants' control, whereas their current control is undisputed.  *See* CCMP Br. at 13 (noting how Defendants' "control" over Hayward "may" delay, deter, or prevent a change of control of the Company, "could" affect stockholders, and "might" affect stock price).  Defendants have no response to Hayward's admission that the CCMP and MSD Entities "*are able to*

16

strongly influence or effectively control" Hayward's business.[8]

## B. The CCMP and MSD Director Defendants Signed Misleading SEC Filings on Behalf of CCMP and MSD, Which Also Dispositively Establishes Control Liability Under Governing Law

Each of the five Director Defendants affiliated with CCMP and MSD signed two of Hayward's false and misleading SEC filings at issue in this case: Hayward's 2021 10-K, and Hayward's Form S-3, filed in connection with the May 2022 SPO. ¶¶35-37; 44-45. In addition, Defendant Bertrand reviewed and approved Hayward's Form 10-Q for 3Q-2021 as part of his role on the Audit Committee.

This Court and many others hold that the signing of a company's actionable SEC filings demonstrates Defendants' control over the Company. *See Palladin,* 2006 WL 2460650, at *16 (finding control well-pled where plaintiff alleged that defendants served as directors and "signed [] SEC filings at issue in this case."); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) ("[A]n officer or director who has signed financial statements containing materially false or misleading statements qualifies as a control person."); *In re Leslie Fay Cos. Sec. Litig.*, 918 F. Supp. 749, 763-64 (S.D.N.Y. 1996) (signing of fraudulent SEC filings sufficient for "[actual] control"); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1182 (D. Colo. 2012) (same); *In re Philip Servs. Corp.*

---

[8]    Thus, CCMP's argument, that the "possible intention to exercise control at some point in the future" is insufficient to show control, *see* CCMP Br. at 14, is inapposite.

*Sec. Litig.*, 383 F. Supp. 2d 463, 485 (S.D.N.Y. 2004) (same); *Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824, 832-33 (E.D. Va. 2014) (same); *Sheehan v. Little Switzerland, Inc.*, 136 F. Supp. 2d 301, 315 (D. Del. 2001) (same).

There is no merit to CCMP's argument, *see* CCMP Br. at 15, that the CCMP and MSD Directors were not acting as agents of CCMP and MSD when they signed the misleading SEC filings.  Since Hayward acknowledged that the majority of its Board members were affiliated with its Sponsors, ¶332, there can be no real dispute that the CCMP and MSD Director Defendants who sat on Hayward's Board were acting on behalf of CCMP and MSD.  Those Directors, handpicked by CCMP and MSD and installed based on CCMP's and MSD's dominant shareholdings of Hayward, were able to control the actions of the Board.  ¶¶332-33.  Further, it is black letter law that as (high-ranking) employees of CCMP and MSD, the actions of those Directors as CCMP's and MSD's representatives were within the scope of their authority and imputed to CCMP and MSD.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 238 (3d Cir. 2001) ("[A] corporation can speak and act only through its agents and so must be accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business"); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 234 (E.D. Pa. 2021) (statements made by individuals may be imputed to the corporation because "a corporation is liable for statements by employees who have apparent

18

authority to make them.").

CCMP's and MSD's only response is to exaggerate what Plaintiff is required to plead, but their position fails because it ignores and conflicts with the actual pleading standard, as stated in *Palladin* and the abundant authority cited above. *See, e.g.*, CCMP Br. at 12 (allegations of control must "show that a defendant was intimately involved in the drafting and publication of the offering materials at issue"); *id.* at 14 ("Plaintiff does not allege that anyone affiliated with the CCMP Entities joined or was present for any of the challenged earnings calls or presentations, let alone helped Hayward's management prepare or draft statements" or "signed any press releases or SEC filings.").

### C. CCMP and MSD Were Hayward's Majority Shareholders and Hayward Was Accordingly a "Controlled Company"

CCMP and MSD were Hayward's majority shareholders during the Class Period, which more than adequately demonstrates control. The SAC alleges that the CCMP and MSD Entities and AIMCo owned nearly 80% of Hayward's stock and acted as a group with respect to their shares, including by explicit agreement under the AARSA. ¶¶52, 322-323. Indeed, Hayward acknowledged in its 2021 Form 10-K filed during the Class Period that the CCMP and MSD Entities "collectively control a majority of the voting power of shares." ¶328; *see also* McDonough Ex. 16, at 35 (noting percentage share ownership by CCMP, MSD, and AIMCo). Further, CCMP and MSD acknowledged in 13G filings that they beneficially owned

19

the majority of Hayward stock as a single stockholder "group."  ¶¶325-26.

CCMP and MSD make several unpersuasive arguments for why their share ownership should be considered separately.  First, they contend that membership in a group for purposes of stock ownership has nothing to do with voting or control.  *See* CCMP Br. at 17-19; MSD Br. at 14-15.  But that argument is directly undermined by Hayward's own admission in SEC filings that it was a "***controlled company***" because "the CCMP Entities, MSD Entities, and AIMCo ***collectively control a majority of the voting power of shares***"—*i.e.*, because they own the shares as a group.  ¶328.  Further, regulations promulgated by the Securities Exchange Commission ("SEC") reach the same conclusion, that "control" may be shown "through the ownership of voting securities."  *See* 17 C.F.R. §230.405.

Second, CCMP and MSD mischaracterize the SAC's allegations and the AARSA by claiming that the agreement to coordinate is limited solely to the timing and sale of shares and does not include coordinated voting.  CCMP Br. at 18 (stating that Plaintiff "*admits* that the CCMP funds and MSD (and AIMCo) agreed *only* to use 'commercially reasonable efforts to coordinate with respect to the timing and manner of disposition' of their Hayward stock"); *see also* MSD Br. at 15 ("the clear language of the AARSA simply references using 'commercially reasonable efforts to coordinate with respect to the timing and manner of disposition of' shares").  This deliberately ignores Plaintiff's well-pled allegations, which must be taken as true on

a motion to dismiss, that the CCMP and MSD Entities: (1) "maintained and exercised majority shareholder control over Hayward by acting as a group with respect to their shares"; and (2) "'*agreed, pursuant to [the AARSA] and otherwise, to act together with respect to their Stockholder Shares for the duration of the Coordination Period*.'" ¶¶322, 323 (quoting AARSA) (emphasis added); *see also* AARSA, Parker Ex. 10, Section 2.2(g), at 15.

CCMP's and MSD's majority share ownership, and Hayward's own admission that it was a "controlled company" because CCMP and MSD controlled the majority of its shares, demonstrate that CCMP and MSD had the "potential to influence and direct" Hayward—which is all that is required at the pleading stage. *See also* 17 C.F.R. §240.12b-2(f) (defining "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, *whether through the ownership of voting securities*, by contract or otherwise.").

None of the authorities cited by Defendants apply here, because those cases involve *minority* shareholders. *See* CCMP Br. at 16, MSD Br. at 12, 14.[9] Moreover,

---

[9] The cases that CCMP and MSD cite involve groups which owned much lower percentages of the relevant stock and appointed lower percentages of the boards than here. *See, e.g.*, *LLDVF v. Dinicola*, 2010 WL 3210613, at *13 (D.N.J. Aug. 12, 2010) (two minority shareholders who collectively owned only 30% of the company's shares and could only appoint a minority of the company's directors and were expressly precluded by a management services agreement from taking part in

21

CCMP even acknowledges that under its own leading authority, two entities' share positions could be considered collectively if "there is some basis on which to consider their collective action," such as a "voting agreement," which is exactly the case here. CCMP Br. at 17 (quoting *LLDVF*, 2010 WL 3210613, at *12).

###### D.    CCMP and MSD Controlled Hayward's Board of Directors

CCMP and MSD controlled Hayward's entire business and management through its domination of the Board, which further supports liability under §20(a). Significantly, Hayward itself has admitted that CCMP and MSD were able to "***effectively control the election of all of the members of our Board of Directors and our business and affairs***." ¶329; 2021 Form 10-K, McDonough Ex. 16 at 35. Not only did CCMP and MSD hold a majority of the Board seats, but CCMP's Walsh chaired the Nominating and Corporate Governance Committee, which nominated directors to the Board, and CCMP and MSD controlled the shareholder vote, which voted on those nominations. ¶¶36, 333-34. MSD's Bertrand also sat on the Audit Committee, which reviewed and approved all of Hayward's financial statements. ¶335. Further, CCMP and MSD had particular control over Defendants Holleran and Jones, having installed them and controlled the committee that determined their

---

management of the company); *In re Advanced Auto Parts, Inc. Sec. Litig.*, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020) ("allegations of control are insufficient where the plaintiff alleges that the defendant owned a minority stock interest and selected a minority number of directors.").

compensation, while the Board was directly responsible for overseeing and supervising Hayward's management.  ¶¶54, 331, 334.  *See In re Am. Apparel*, 2013 WL 10914316, at *34 (noting the "crucial role that board membership plays in establishing control person liability").

Where, as here, Defendants actively manage the Company's activities and its officers through participation on the Board and its committees, courts routinely find that they are controlling persons under §20(a).  For example, in *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *12 (W.D. Wash. Dec. 29, 2008), allegations that outside directors were on a nominations and governance committee gave rise to the inference that defendants had "direct engagement in and awareness of the management of the company."  Allegations in that case that other directors were members of the company's audit committee, like here, also gave rise to the inference that defendants "had control over the very mechanisms intended to prevent the alleged fraud," sufficient to plead control.  *See also In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 518 (D. Del. 2001) (whether directors were control persons was "genuine issue of material fact" sufficient to defeat summary judgment because they "served on subcommittees related to the oversight of [the company's] accounting and reporting practices."); *Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp.3d 824, 834 (E.D. Va. 2014) (allegations that director defendants signed two purportedly fraudulent documents, in connection with "membership on the Board and various

23

sub-committees of the Board, particularly those on the audit committee, [were] sufficient to state control").

In sum, the SAC's allegations of majority shareholder control, majority Board membership, control over Board elections, and membership on Board committees, are more than sufficient to plead control.  *See*, *e.g.*, *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945-46 (9th Cir. 2003) ("*America West*") (allegations that two outside entities that together controlled approximately 57.4% of company's total voting power, had the power to elect a majority of company's directors and committees established by the Board, and had some of their own officers seated on the Board were sufficient to show that they were "controlling persons"); *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 973 (E.D. Va. 2020) (allegations that defendant was majority shareholder with two members on company's board were sufficient to plead liability under §20(a)); *Harriman v. E.I. DuPont De Nemours & Co.*, 372 F. Supp. 101, 106 (D. Del. 1974) (refusing to dismiss a §20(a) claim against company that owned over 50% of corporation's common stock).

### E.    Culpable Participation Is Not Required on a Motion to Dismiss, but Plaintiff Has Satisfied That Requirement in Any Event

As Defendants concede, *see* CCMP Br. at 12 n.4, MSD Br. at 10 n.7, this Court does not require plaintiff to plead culpable participation on a motion to dismiss.  *See In re Cambrex*, 2005 WL 2840336, at *16 ("[T]here is an

24

'overwhelming trend' in this Circuit that plaintiffs need only plead simple control," because "the facts establishing culpable participation can only be expected to emerge after discovery," and the evidence "is usually within the defendants' control."); *Palladin*, 2006 WL 2460650, at \*16 (same); *Dudley*, 2013 WL 1845519, at \*20 n.5 ("This Court follows the 'overwhelming trend in this circuit' by holding that 'culpable participation does not have to be pled in order to survive a motion to dismiss.'").[10]

In any event, Plaintiff has sufficiently satisfied that element, because: CCMP and MSD signed SEC filings containing the alleged misstatements; MSD reviewed and approved all misleading financial disclosures filed by Hayward during the Class Period; and CCMP illegally made hundreds of millions of dollars from insider trades. *See In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015) (culpable participation met where plaintiffs alleged that defendants were responsible for reviewing allegedly fraudulent SEC filings); *In re Xerox Corp. Sec. Litig.*, 165 F. Supp. 2d 208, 220 (D. Conn. 2001) (culpable participation met where insiders sold $31.4 million of stock shortly after making false and misleading statements).

---

[10]  *See also In re Able Labs.*, 2008 WL 1967509, at \*29 (noting that the "majority of the judges in the District of New Jersey" agree that "culpable participation need not be pled in order to state a claim for controlling person liability."); *in In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at \*21 (D.N.J. Dec. 6, 2018).

**F.    Defendants' Remaining Challenges to CCMP's and MSD's Liability Fail**

Defendants' contention, that the §20(a) claims should be dismissed because Plaintiff fails to plead how the CCMP and MSD Entities "'tightly controlled [Hayward's] business and operations,'" lacks merit. *See* CCMP Br. at 12 (quoting *LLDVF*, 2010 WL 3210613, at \*12). The single case on which Defendants rely, *LLDVF*, does not support dismissal. In that case, the court found that allegations did not support "tight[] control" by two minority shareholders that did not have a voting agreement to act together, collectively owned only 30% of the company's shares, could only appoint a minority of the company's directors, whose two directors they did appoint were not even their own employees, and were expressly precluded by a management services agreement from taking "part in the management of the" company over which they alleged control under §20(a). *LLDVF*, 2010 WL 3210613, at \*13.

Moreover, under this Court's authority, so long as the allegations "support a reasonable inference that [defendants] had ***the potential to influence and direct the activities of the primary violator***," a §20(a) claim defeats a motion to dismiss. *Palladin*, 2006 WL 2460650, at \*16. As detailed at length above and in the SAC, CCMP and MSD unquestionably had the potential to influence Hayward, and in fact did so for their own benefit during the Class Period. *E.g.* ¶¶288-95.

CCMP's contention that CCMP and AIMCo should not be treated together is

26

also baseless. CCMP Br. at 20. As detailed above, Plaintiff specifically alleges that CCMP, MSD, and AIMCo formed a consortium to purchase Hayward (¶51), acted as a group (¶322), "agreed . . . to act together with respect to their Stockholder Shares" under the AARSA (¶323), and filed Section 13Gs during the Class Period deeming themselves a single "group" with beneficial ownership over each other's shares (¶¶325-26). These allegations must be taken as true at the motion to dismiss stage. And even without AIMCo, CCMP and MSD were still Hayward's controlling shareholders, with ownership of **nearly 62%** of Hayward's shares. *See* ¶59.

## III. PLAINTIFF HAS ADEQUATELY PLED CONTROL PERSON LIABILITY AGAINST THE CCMP AND MSD DIRECTORS

### A. <u>The CCMP and MSD Director Defendants Signed Misleading SEC Filings in This Case, Which Establishes Control</u>

As explained above, each of the CCMP and MSD Director Defendants signed two of the allegedly misleading SEC filings in this case, which is "suffic[ient] to establish control so as to survive a motion to dismiss." *Palladin Partners*, 2006 WL 2460650, at \*16. Defendants' arguments to the contrary, *see* CCMP Br. at 21-25; MSD Br. at 16, fly in the face of this Court's holding and established law. *See supra* §II.B (listing cases).

### B. <u>Defendants' Remaining Arguments Fail</u>

CCMP and MSD construct various arguments for why their affiliated Directors should not be found liable under §20(a), all of which are baseless.

***First***, they argue that with respect to the CCMP and MSD Directors: (a)

allegations of director status are insufficient to establish their control, and (b) membership on board committees does not do so either.  Not only do cases reject these arguments, but here an additional dispositive factor is that each of the CCMP and MSD Directors signed misleading SEC filings.[11]  *See*, *e.g.*, *Fouad*, 2008 WL 5412397, at *12 (allegations that outside directors were on Nominations and Governance Committee gave rise to inference that defendants had "direct engagement in and awareness of the management of the company" while allegations that other directors were members of company's Audit Committee gave rise to inference defendants "had control over the very mechanisms intended to prevent the alleged fraud" sufficient to overcome dismissal); *Masterson*, 2 F. Supp. 3d at 833 (allegations that director defendants signed two purportedly fraudulent financial statements, in connection with "membership on the Board and various subcommittees of the Board, particularly those on the audit committee, [were] sufficient to state control"); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 437 (S.D.N.Y. 2001) (outside director and audit committee member can be presumed to have "the power to direct or cause the direction of the management and

---

[11]    The cases that Defendants cite for support are inapposite.  Neither *Universal American Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 397 (D. Del. 2016), nor *Li v. Eqonex Ltd.*, 2024 WL 4241951, at *17 (S.D.N.Y. Sept. 18, 2024), examined whether control liability could be found against directors who signed misleading SEC filings.  *See*, *e.g.*, CCMP Br. at 22.

28

policies of" the corporation"); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d at 518 (finding "genuine issue of material fact" sufficient to defeat summary judgment against directors who "served on subcommittees related to the oversight of [the company's] accounting and reporting practices."); *In re Xerox*, 165 F. Supp. 2d at 220 (allegations that director "control[led] the contents of the various quarterly and annual financial reports" "because of their positions of control and authority as officers and directors of the Company" sufficient to plead liability under §20(a)).

Quoting again from *LLDVF*, CCMP and MSD repeat their argument that the SAC fails to allege the "'manner in which the defendants tightly controlled the business and operations.'" *See* CCMP Br. at 22; MSD Br. at 13. But, in addition to its other distinct facts discussed above (at 25-26), *LLDVF* stated that, with respect to the §20(a) claims against the individual director defendants in the case, "pleading that a defendant signed a[*sic*] SEC filing which is alleged to have been a primary violation by a control person is sufficient" to demonstrate control. *LLDVF*, 2010 WL 3210613, at *14.[12]

---

[12]    Likewise, there is no merit to Defendants' contention that to adequately plead control liability, Plaintiff must allege that the Directors had "actual control over *nearly all* of the transactions in question." *See* CCMP Br. at 24 (emphasis added). The only case that CCMP cites in support does not stand for that proposition, *see Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 399 (D. Del. 2016) (stating only that "the control person must be shown to possess actual control over the transactions in question"), and Plaintiff has already shown "actual control" by pleading that the Directors signed the misleading SEC

## IV.    CCMP ADVISORS IS A PROPER PARTY

CCMP's argument that CCMP Advisors is an improper party, based on the Court's dismissal of CCMP Advisors with prejudice as to §10(b) claims in the October 2024 Order, fails. *See* CCMP Br. at 26-27. That dismissal was specifically in connection with the §10b claims. October 2024 Order, at 13 ("Count 1 [§ 10(b) claim] against CCMP is dismissed with prejudice because CCMP is an improper party."). Moreover, the Court dismissed the §20(a) claim "without prejudice against all Defendants." Therefore, Plaintiff's §20(a) claim against CCMP Advisors is not barred by the Court's Opinion, and CCMP Advisors is a proper party.

Furthermore, Plaintiff alleges that each of the other CCMP entities is affiliated with CCMP Advisors, ¶¶28-34, and Hayward's SEC filings refer to "CCMP Advisors" and not the other CCMP Entities. For example, in its IPO Prospectus filed with the SEC, the only CCMP entity that Hayward identifies by name is CCMP Advisors. *See* IPO Prospectus, McDonough Ex. 2, at 18 ("We were acquired by entities affiliated with CCMP Capital Advisors, LP," MSD, and AIMCo). While additional CCMP entities are named as stockholders in a footnote, correspondence to each of these entities is directed to CCMP Advisors. *See* McDonough Ex. 23, at

---

filings at issue. *See, e.g., In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) ("actual control over the *transaction* in question" satisfied by pleading that officer or director "signed financial statements containing materially false or misleading statements") (emphasis in original).

30

S-23. CCMP Advisors is thus likewise liable for control person claims for the reasons stated herein.

## **CONCLUSION**

For the above reasons, the Court should deny the Motions to Dismiss filed by CCMP and MSD.

Dated: February 6, 2025

**COHN LIFLAND PEARLMAN HERMANN & KNOPF LLP**

/s/Matthew F. Gately
Matthew F. Gately
Park 80 West-Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: 201-845-9600
Facsimile: 201-845-9423
mfg@njlawfirm.com

*Liaison Counsel*

**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**
Max R. Schwartz (*pro hac vice*)
Susan Hu (*pro hac vice*)
Donald A. Broggi
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
mschwartz@scott-scott.com
dbroggi@scott-scott.com

31

**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**
Cornelia Gordon (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
cgordon@scott-scott.com

*Lead Counsel for Lead Plaintiff and the Class*

32