Amanda L. Genovese
Vincent A. Sama (*pro hac vice*)
Catherine B. Schumacher (*pro hac vice*)
Daphne Morduchowitz (*pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

*Attorneys for MSD Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CITY OF SOUTHFIELD FIRE AND POLICE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, CCMP CAPITAL INVESTORS III, L.P., CCMP CAPITAL INVESTORS III (EMPLOYEE), L.P., CCMP CAPITAL ASSOCIATES III, L.P., CCMP CAPITAL ASSOCIATES III GP, LLC, CCMP CAPITAL, LP, AND CCMP CAPITAL GP, LLC, MSD AQUA PARTNERS, LLC, MSD PARTNERS, L.P., MSD PARTNERS (GP), LLC, MARK MCFADDEN, GREG BRENNEMAN, TIMOTHY WALSH, CHRISTOPHER BERTRAND, and KEVIN BROWN,<br><br>　　　　Defendants. | Civil Action No.:<br><br>2:23-CV-04146-WJM-ESK<br><br>**Oral Argument Requested**<br><br>**Motion Day: March 17, 2025**<br><br>**REPLY OF DEFENDANTS MSD AQUA PARTNERS, LLC, MSD PARTNERS, L.P., MSD PARTNERS (GP), LLC, CHRISTOPHER BERTRAND, AND KEVIN BROWN IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S <u>AMENDED COMPLAINT</u>** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT ....................................................................................................4

I.    The Section 20(A) Claim, The Only Remaining Claim Against The MSD Defendants, Fails.....................................................................................4

    A.    Plaintiff's 20(a) Claim Against MSD Defendants Must Be Dismissed Because The Second Amended Complaint Fails To Allege A Primary Violation ................................................................4

    B.    The Second Amended Complaint Fails To Allege Control By The MSD Entities..................................................................................5

        1.    The MSD Entities' Shareholder Status Does Not Support Control-Person Liability ............................................................5

        2.    Allegations That MSD Entities Appointed, Or Are Affiliated With, Certain Hayward Officers Or Directors Are Insufficient To Establish Section 20(a) Control ..................8

        3.    The Second Amended Complaint Fails To State A Section 20(a) Claim Against The MSD Individuals.................10

CONCLUSION ..............................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*,
No. 2:23-CV-04146 (WJM), 2024 WL 4370833 (D.N.J. Oct. 2,
2024) (Martini, J.) ..................................................................................................9

*Laven v. Flanagan*,
695 F. Supp. 800 (D.N.J. 1988) ..........................................................................8

*LLDVF, L.P. v. Dinicola*,
No. 09–1280, 2010 WL 3210613 (D.N.J. Aug. 12, 2010) ...................................9

**Statutes**

15 U.S.C. § 78j(b) (Exchange Act Section 10(b)) ......................................2, 5, 8, 10

15 U.S.C. § 78t(a) (Exchange Act Section 20(a)) ............................................*passim*

17 C.F.R. § 240.10b-5 (SEC R. 10b-5)................................................................5, 10

17 C.F.R. § 240.13d-5 ................................................................................................7

MSD Defendants[1] respectfully submit this Reply in Further Support of their Motion to Dismiss the Consolidated Amended Complaint (ECF No. 91, the "Second Amended Complaint" or "SAC").

## PRELIMINARY STATEMENT

After the Court's dismissal of the primary claims against MSD, L.P. with prejudice, Plaintiff's Second Amended Complaint includes only a secondary claim against the MSD Defendants for control-person liability under Section 20(a). This claim should be dismissed as against the MSD Defendants with prejudice. Despite being afforded the opportunity to again amend its Complaint, Plaintiff's Second Amended Complaint contains no adequate allegation that any of the MSD Defendants—either the MSD Entities or the MSD Individuals—actually controlled the Hayward Defendants, and Plaintiff's Opposition Brief (ECF No. 100, the "Opposition" or "Opp") does not cure this fatal deficiency.

The Court has already ruled that MSD was not responsible for the at-issue statements and that as a result no primary liability could attach. There is similarly no basis for the 20(a) claims against the MSD Defendants.

---

[1] Capitalized terms not defined have their meaning in MSD Defendants' Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint, ECF No. 95-1 (the "Moving Brief").

*First*, the Opposition does not dispute the black-letter legal principle that Section 20(a) liability does not lie absent a viable Section 10(b) claim. As set forth in the Hayward Defendants' moving and reply briefing, incorporated herein by reference, Plaintiff fails to state a Section 10(b) claim against any defendant. Plaintiff's Section 20(a) claim thus fails at the threshold and should be dismissed.

*Second*, Plaintiff's (now well-worn) arguments that the MSD Entities somehow "controlled" the Hayward Defendants do not adequately state a Section 20(a) claim. In apparent recognition that the MSD Entities alone are a minority shareholder not liable under Section 20(a), the Opposition makes much of the unremarkable fact that the MSD Entities and the CCMP Entities *combined*, own a majority of Hayward's common stock. Indeed, the Opposition uses the phrase "CCMP and MSD" 113 times. Plaintiff does not and cannot credibly allege that that these separate entities acted jointly. While the Second Amended Complaint and Opposition insinuate, incorrectly and without support, that the two were contractually bound to vote their shares together, the Opposition does not meaningfully dispute that the plain language of the contract Plaintiff incorporates by reference in the Second Amended Complaint, the AARSA, says no such thing and instead only relates to coordination as to the sale of shares.[2]

---

[2] In fact, the parties did not coordinate on sales. MSD did not sell any shares during the Class Period, and Plaintiff cannot credibly allege otherwise.

Similarly, the Opposition's reliance on purported "admissions" in public filings reflects Plaintiff's lack of understanding of the referenced regulation, Section 13(d) of the Securities Exchange Act, which requires disclosure of a "group" even when such group, as here, is limited to the sale of shares rather than control of a company. Finally, as the Opposition appears to concede, MSD had no involvement in the day-to-day operations or management of the Company. Instead, the Opposition argues control based on the MSD Entities' appointment of or affiliation with board members (i.e., the MSD Individuals) or officers.  This is insufficient to assert a Section 20(a) claim. The actions of the MSD Individuals acting in their capacities as Hayward fiduciaries cannot be imputed to the MSD Entities, and simply appointing a minority of board members or certain officers does not equate with control.

*Third*, the claims against the MSD Individuals also fail. The MSD Individuals did not make (or sign) the vast majority of the challenged statements in the Second Amended Complaint, and the Opposition does not meaningfully dispute that the MSD Defendants had no control over such statements. And with respect to the only two documents any MSD Individual is alleged to have signed, the challenged statements in those documents are not actionable, a threshold prerequisite to Section 20(a) liability.

3

*Finally*, Plaintiff's entire theory of the case is premised on the patently false notion that MSD "cash[ed] out" of its investment in Hayward "at an enormous profit" and that defendants were collectively motivated to boost the Hayward stock price during the Class Period in order to sell shares. In fact, it is undisputed that MSD did not sell any Hayward stock during the Class Period. As a result, Plaintiff's theory of the case does not pass muster.

Plaintiff has had numerous opportunities to cure deficiencies in the various complaints in this action, and MSD Defendants' lack of control over Hayward cannot be overcome with further amended pleading. Plaintiff's 20(a) claim as to MSD Defendants should be dismissed with prejudice.

## ARGUMENT

I.    **The Section 20(a) Claim, The Only Remaining Claim Against The MSD Defendants, Fails**

    A.    <u>Plaintiff's 20(a) Claim Against MSD Defendants Must Be Dismissed Because The Second Amended Complaint Fails To Allege A Primary Violation</u>

The Parties are in agreement that Plaintiff's sole claim against MSD Defendants—violation of Section 20(a)—is contingent on the survival of Plaintiff's 10(b) claim. *See* Moving Br. at 10–11; Opp. at 15. As set forth in Hayward Defendants' moving and reply briefing, incorporated by reference herein, Plaintiff fails to state an underlying claim for violation of Section 10(b) and Rule 10b-5. As a result, the 20(a) claim against MSD Defendants fails.

4

B.    The Second Amended Complaint Fails To Allege Control By The MSD Entities

In any event, the allegations in the Second Amended Complaint fail to state a Section 20(a) claim against either the MSD Entities or the MSD Individuals.

1.    *The MSD Entities' Shareholder Status Does Not Support Control-Person Liability*

The Second Amended Complaint concedes that, at most, the MSD Entities are alleged to have owned "31% of Hayward's shares" during the Class Period. SAC ¶ 40; *see also id.* ¶ 52. A 31% shareholder is not a Section 20(a) control-person, it is a minority shareholder. *See* Moving Br. at 14 (collecting cases). The Opposition does not attempt to argue otherwise. Instead, the Opposition attempts to overcome the Second Amended Complaint's failure to allege MSD Entities' control by improperly grouping the MSD Entities with the CCMP Entities. Almost every sentence of the Opposition includes the phrase "CCMP and MSD." *See* Opp. at *passim*. But while Plaintiff may wish otherwise, there is no "CCMP and MSD" consortium, even as alleged. *See* Am. Compl. ¶ 366 (During the Class Period, "[t]he CCMP Entities and MSD Entities were Hayward's largest shareholders, with **each** beneficially owning approximately 31% of Hayward Common Stock after the IPO."). (Emphasis added).

Plaintiff's argument that the CCMP Entities and the MSD Entities were contractually obligated to vote together does not withstand scrutiny, and the Opposition's characterization of the AARSA as a "voting agreement" is

5

demonstrably incorrect. Opp. at 22. The AARSA is incorporated by reference in the Second Amended Complaint, SAC ¶¶ 290, 323–324, and is therefore properly before this Court in its entirety. *See* Declaration of Scott Parker Exhibit 10 (ECF 96-12). The plain language of the AARSA obligates certain of the CCMP Entities, MSD, L.P., and certain entities related to non-party AIMCo, to use "commercially reasonable efforts to coordinate with respect to the timing and manner of disposition" of Hayward shares—not coordinated voting. AARSA at Art. II, § 2.2(f).

The Opposition does not deny this plain language and instead emphasizes § 2.2(g)'s statement that the parties to the AARSA had agreed to "act together" and may be deemed a "group" for purposes of Section 13(d). *See* Opp. at 21. But § 2.2(g)'s clause noting that the parties are deemed a group for purposes of Section 13(d) stems directly from §2.2(f)'s clause relating to disposition of shares. In other words, because of the agreement to use "commercially reasonable efforts to coordinate with respect to the timing and manner of disposition" of shares, the parties to the AARSA are deemed a group for purposes of Section 13(d).

This is because an agreement to act together with respect to disposition of shares, while insufficient to establish control for purposes of Section 20(a), is enough to be deemed a "group" for 13(d) purposes.[3] Indeed, for this reason MSD, L.P. and

---

[3] The parties, however, did not coordinate on sales as MSD did not sell any shares during the Class Period.

6

others filed SEC disclosures noting that "certain provisions relating to the timing and manner of *disposition of shares* of the Issuer," mandate treatment as a group for purposes of Section 13(d) of the Securities Exchange Act of 1934. Declaration of Matthew Gately Exhibit 3, MSD, L.P.'s 13G Disclosure (ECF No. 81-4) (emphasis added). The Opposition fundamentally misunderstands, or misconstrues, what is meant by a "group" for purposes of Section 13(d). Opp. at 8–10. Pursuant to SEC regulation, "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting **or** disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the Act" and must be disclosed. 17 C.F.R. § 240.13d-5 (emphasis added). If the contract had required coordinated voting of shares (which it does not), then the 13(d) disclosure filed by MSD, L.P. would have said so expressly. *See supra* (citing ECF No. 81–4). It does not.

Because Plaintiff's allegations regarding voting control are contradicted by the documents, the Court should not accept the allegations as true. *See* Moving Br. at 5, n.5. The AARSA in effect during the Class Period nowhere provides for a requirement to vote together, and Plaintiff does not and cannot assert any well pled allegation that the parties ever agreed to vote together (indeed they did not). The AARSA's plain, unambiguous language is clear, and the Opposition does not, and

7

cannot, overcome it through its out-of-context, conclusory, speculation about agreements not made.

Plaintiff's attempt to treat CCMP and MSD as a single "consortium" is wholly conclusory and without basis. The Second Amended Complaint does not allege that the MSD Entities, who own a minority of shares, "control" Hayward, and the Section 20(a) claim against the MSD Entities should be dismissed.

> 2.   *Allegations That MSD Entities Appointed, Or Are Affiliated With, Certain Hayward Officers Or Directors Are Insufficient To Establish Section 20(a) Control*

The Opposition improperly attempts to attribute to MSD Entities the actions of certain MSD affiliated individuals, acting in their Hayward capacities, simply because the individuals were allegedly appointed by, or affiliated with, the MSD Entities. Opp. at 2. The Opposition does not meaningfully dispute the many cases MSD identifies in its Moving Brief, which make clear that Section 20(a) liability does not lie from simply having an ability to appoint officers or directors, even when such officers or directors were signatories on public filings that are the subject of Section 10(b) claims. *See* Moving Br. at 12–13 (collecting cases); *see, e.g.*, *Laven v. Flanagan*, 695 F. Supp. 800, 807 (D.N.J. 1988) ("control exercised over [company] . . . as directors cannot be imputed to [second company] . . . merely because a director concurrently serves as an officer of the second company"); *see also* Moving Br. at

8

12 (*citing LLDVF, L.P. v. Dinicola*, No. 09–1280, 2010 WL 3210613, at *13 (D.N.J. Aug. 12, 2010)).

The Opposition also ignores the clear ruling of this Court in dismissing Plaintiff's 10(b) claim against MSD, L.P., that there is no basis to impute alleged knowledge and actions of Hayward executives or directors in the scope of their *Hayward* duties to the MSD Entities. *See City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, No. 2:23-CV-04146 (WJM), 2024 WL 4370833, at *8 (D.N.J. Oct. 2, 2024) (Martini, J.) (". . . no factual allegations suggest that the affiliated Hayward directors signed Hayward's risk disclosures as agents of or on behalf of MSD or CCMP. Nor has Plaintiff identified any authority to support its position that statements made by Hayward's board members in an SEC filing are imputed to MSD or CCMP solely based on the allegation that certain board members are affiliated with MSD or CCMP."). For the same reasons, these arguments fail to form the basis of a Section 20(a) claim.

Plaintiff also improperly argues that MSD is a control person based solely on the ability to appoint certain directors who, because of their title, allegedly had the ability to control Hayward. This is clearly insufficient under the law. *See* Moving Br. at 15-17. In fact, as discussed in further detail below, the fact that an individual sits on a board or a committee is insufficient on its own to trigger control person liability even with respect to that individual. Plaintiff's attempt to impute control to

9

MSD based on its affiliation with individuals who sit on the board or a committee thereof in their capacity as Hayward representatives fares no better. *Id.* at 12-13. For these reasons, the Second Amended Complaint fails to state a claim against the MSD Entities.

> 3.    *The Second Amended Complaint Fails To State A Section 20(a) Claim Against The MSD Individuals*

The Moving Brief detailed numerous cases explaining that director status or membership on Board committees, standing alone, is not sufficient to state a Section 20(a) claim with respect to Company statements. *Id.* at 16–17 (collecting cases). The Opposition does not dispute this.

Plaintiff instead focuses its arguments with respect to the MSD Individuals on the allegation that the MSD Individuals signed two of Hayward's SEC filings. Opp. at 27–29. With respect to the two documents alleged to have been signed by the MSD Individuals (and the one Form 10-Q alleged to have been approved by Bertrand as a member of the audit committee), Opp. at 11, as set forth in the Hayward Defendants' briefing, the challenged statements in those documents are not actionable under Section 10(b) or Rule 10b-5 and therefore cannot form the basis of a Section 20(a) claim. As a result, the Second Amended Complaint fails to state a Section 20(a) claim against the MSD Individuals.

## CONCLUSION

For the foregoing reasons and the reasons set forth in MSD's Moving Brief and all other defendants' moving and reply briefs, MSD respectfully requests that the Court dismiss the Second Amended Complaint in its entirety, with prejudice, and grant it any such and further relief as the Court deems just and proper.

Dated: March 4, 2025

SEYFARTH SHAW LLP

By: */s/ Amanda L. Genovese*
Amanda L. Genovese
Vincent A. Sama *(pro hac vice)*
Catherine B. Schumacher (*pro hac vice*)
Daphne Morduchowitz (*pro hac vice*)
Matthew C. Catalano (*pro hac vice*)
620 Eighth Ave
New York, NY 10018
Phone: (212) 218-5500
Fax: (212) 218-5526
agenovese@seyfarth.com
vsama@seyfarth.com
cschumacher@seyfarth.com
dmorduchowitz@seyfarth.com
mcatalano@seyfarth.com

*Attorneys for MSD Defendants*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 4, 2025, I electronically filed the foregoing

REPLY OF MSD DEFENDANTS IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS,

with the Clerk of the District Court using the CM/ECF system, which sent

notification of such filing to all counsel of record.

*/s/ Amanda L. Genovese*
Amanda L. Genovese
