**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
Andrew B. Clubok (*pro hac vice*)
Corey A. Calabrese (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
Email: andrew.clubok@lw.com
Email: corey.calabrese@lw.com

*Counsel for Hayward Defendants Hayward Holdings, Inc.,*
*Kevin Holleran, and Eifion Jones*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF SOUTHFIELD FIRE AND POLICE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HAYWARD HOLDINGS, INC., *et al.*,<br><br>Hayward Defendants. | Civil Action No. 2:23-cv-04146-WJM-JBC<br><br>Hon. William J. Martini<br>Magistrate Judge James B. Clark<br><br>Document Electronically Filed<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**MOTION DAY:** March 17, 2025 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE HAYWARD DEFENDANTS' MOTION TO DISMISS <u>THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>

# **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     PLAINTIFF'S FALSITY ARGUMENTS FAIL .............................................2

     A.      Plaintiff Cannot Avoid Application Of The PSLRA Safe
        Harbor..................................................................................................2

     B.      Plaintiff's Cursory Puffery Argument Fails...........................................4

     C.      Plaintiff's Opinion Arguments Fail........................................................4

     D.      No Was Statement Materially False When Made ...................................6

III.    PLAINTIFF'S SCIENTER ARGUMENTS FAIL............................................9

     A.      Plaintiff Fails To Allege A Cognizable Motive ....................................9

     B.      Plaintiff's Knowledge And Recklessness Arguments Fail .................12

     C.      The Non-Fraudulent Inference Is More Compelling ...........................15

IV.     CONCLUSION.............................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anderson v. StoneMor Partners, L.P.*,
    296 F. Supp. 3d 693 (E.D. Pa. 2017), *aff'd*, 927 F.3d 710 (3d Cir.
    2019) ..................................................................................................................9

*City of Birmingham v. Ryaniar Holdings PLC*,
    2020 WL 2834857 (S.D.N.Y. June 1, 2020) ....................................................13

*City of Hialeah Emps.' Ret. Sys. v. Toll Bros. Inc.*,
    2008 WL 4058690 (E.D. Pa. Aug. 29, 2008) .....................................................4

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin. Inc.*,
    70 F.4th 668 (3d Cir. 2023) ...............................................................................5

*City of Warwick Ret. Sys. v. Catalent, Inc.*,
    2024 WL 3219616 (D.N.J. June 28, 2024)..........................................................7

*Franchi v. SmileDirectClub, Inc.*,
    633 F. Supp. 3d 1046 (M.D. Tenn. 2022) .........................................................12

*In re Cambrex Corp. Sec. Litig.*,
    2005 WL 2840336 (D.N.J. Oct. 27, 2005) ..........................................................4

*In re Coinbase Glob. Inc. Sec. Litig.*,
    2024 WL 4053009 (D.N.J. Sept. 5, 2024)............................................................6

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) .............................................................11

*In re Finistar Corp. Sec. Litig.*,
    646 F. App'x 506 (9th Cir. 2016) .......................................................................7

*In re Henry Schein, Inc. Sec. Litig.*,
    2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ....................................................5

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007)......................................................................7

*In re Nortel Networks Corp. Sec. Litig.*,
    238 F. Supp. 2d 613 (S.D.N.Y. 2003) .................................................................7

*In re PayPal Holdings Inc. Sec. Litig.*,
   2025 WL 325603 (D.N.J. Jan. 29, 2025)...................................................9, 13, 14

*In re Petco Animal Supplies Inc. Sec. Litig.*,
   2006 WL 6829623 (S.D. Cal. Aug. 1, 2006)..............................................10

*In re Philip Morris Int'l Inc.*,
   89 F.4th 408 (2d Cir. 2023) ....................................................................5

*In re Synchronoss Techs. Sec. Litig.*,
   2020 WL 2786936 (D.N.J. May 29, 2020)...............................................11

*In re Toronto-Dominion Bank Sec. Litig.*,
   2018 WL 6381882 (D.N.J. Dec. 6, 2018)..................................................14

*In re Upstart Holdings, Inc. Sec. Litig.*,
   2023 WL 6379810 (S.D. Ohio Sept. 29, 2023) ........................................6

*In re Urban Outfitters Inc. Sec. Litig.*,
   103 F. Supp. 3d 635 (E.D. Pa. 2015)........................................................7

*In re Veritas Software Corp. Sec. Litig.*,
   2006 WL 1431209 (D. Del. May 23, 2006) ..............................................4

*Local 731 I.B. of T. Excavators v. Swanson*,
   2011 WL 2444675 (D. Del. June 14, 2011) .............................................13

*Lozada v. TaskUs, Inc.*,
   710 F. Supp. 3d 283 (S.D.N.Y. 2024) .....................................................14

*Okla. Firefighters Pension & Ret. Sys v. Lexmark Int'l, Inc.*,
   367 F. Supp. 3d 16 (S.D.N.Y. 2019) .......................................................7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension
   Fund*,
   575 U.S. 194 (2015)........................................................................4, 5, 6

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) .............................................................13, 14

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
   351 F. Supp. 3d 874 (E.D. Pa. 2018)........................................................6

iii

*Stevelman v. Alias Rsch. Inc.*,
174 F.3d 79 (3d Cir. 1999) ...............................................................................12

*Stumpf v. Garvey*,
2005 WL 2127674 (D.N.H. Sept. 2, 2005)..........................................................7

*Tanaskovic v. Realogy Holdings Corp.*,
2021 WL 211049 (D.N.J. Jan. 21, 2021).............................................................7

*Van Dongen v. CNinsure Inc.*,
951 F. Supp. 2d 457 (S.D.N.Y. 2013) ...............................................................12

*Watkins v. Protective Life Ins. Co.*,
2017 WL 2426863 (D.N.J. June 5, 2017) (Martini, J.) ......................................14

*Winer Fam. Tr. v. Queen*,
503 F.3d 319 (3d Cir. 2007) ..............................................................................10

*Wu v.GSX Techedu Inc.*,
738 F. Supp 3d 527 (D.N.J. 2024).....................................................................14

## I.  **PRELIMINARY STATEMENT**

The scattershot Opposition confirms Plaintiff has no coherent theory of fraud. It is undisputed that Hayward met or exceeded its sales projections in every single quarter during the Class Period.  Mot. at 5-10.  In the midst of that success, Holleran and Jones did not hype Hayward's business or its stock.  Instead, according to *Plaintiff itself*, they repeatedly made comments the market viewed as pessimistic, evidenced by multiple declines in Hayward's stock price during the Class Period. ¶¶ 240-50.  All the while, the Hayward Defendants did not cash out: the Company embarked on a massive stock repurchase, Jones more than doubled his holdings, and Holleran held more than 400,000 shares (plus millions of options) at the end of the Class Period.  Mot. at 31-34.  And the news Plaintiff holds out as revealing a fraud is not a whistleblower complaint, accounting scandal, government investigation, or the like.  It is a voluntary, proactive disclosure *by the Hayward Defendants* reducing 2022 sales guidance, notwithstanding the success of the first two quarters of 2022. ¶¶ 252, 254.  That is the story told in the SAC, and it is the exact opposite of fraud.

In the Opposition, Plaintiff resorts to embellishing and distorting the SAC's deficient allegations in a cynical effort to transform industry-wide setbacks—which Hayward candidly disclosed—into fraud.  But none of that satisfies the PSLRA or Rule 9(b).  Those stringent standards require Plaintiff to plead *particularized facts* establishing falsity and scienter for each statement and defendant, and it has not remotely done so.  The SAC should be dismissed with prejudice.

## II.    PLAINTIFF'S FALSITY ARGUMENTS FAIL

Plaintiff remarkably does not dispute that the SAC tries to create false "statements" by stitching together words and clauses from different sentences separated by multiple pages in Hayward's earnings call transcripts.  *See* Opp. at 9-11.  Nor does Plaintiff dispute that the SAC omits words from the challenged statements.[1]  *Id.*  These and other improper pleading tactics render the SAC just as deficient as Plaintiff's prior pleading.  Mot. at 13-16; Dismissal Or. at 9-10.  In any event, the Opposition fails meaningfully to refute that the vast majority of challenged statements are inactionable forward-looking statements, puffery, and opinions.  *Compare* Mot. at 16-25 *with* Opp. at 26-27 & n.8.  For the subset of statements that Plaintiff tries to salvage, it relies on mischaracterizations of the SAC's allegations and incorporated documents.  That gambit fails.  Plaintiff cannot argue what it wishes the SAC said as a substitute for pleading particularized allegations that contradict the challenged statements.  Mot. at 13-15, 25-29.

### A.    Plaintiff Cannot Avoid Application Of The PSLRA Safe Harbor

The Motion identified 16 forward-looking statements that are protected by the PSLRA safe harbor.  Mot. at 16-22, 30; Def. App'x A (ECF No. 97-2).  Plaintiff's

---

[1] Plaintiff oddly takes credit for selectively excerpting Defendants' statements, as if its only options were to (1) use block quotes without specifying the portion(s) claimed to be false, or (2) cherry-pick a few words from a sentence, conceal the rest, and declare the curated excerpt a false "statement."  Opp. at 10-11.  The Court did not invite Plaintiff to edit Defendants' statements (or combine distinct statements), and Plaintiff's creative editing only underscores its inability to plead falsity.

2

faint response, Opp. at 26-27 & n.8, offers *no* safe harbor argument *at all* as to 12 of those statements (Def. App'x A Nos. 1, 5, 11, 13-14, 17, 21-22, 29-30, 34-35). And indeed all 12 are immune from liability. Mot. at 16-22, 30. The remaining four statements—about 2022 sales guidance (¶¶ 174, 180-81, 215; Def. App'x A Nos. 12, 16, 26, 28)—admittedly are forward-looking. Opp. at 26-27. And they too find shelter in the safe harbor, as the unrebutted cases cited in the Motion demonstrate. *Compare* Mot. 20-22 (citing cases) *with* Opp. 26-27.

*First*, as to the cautionary language prong of the PSLRA, Plaintiff nowhere disputes that Hayward repeatedly cautioned investors about its forward-looking statements with robust warnings that exceeded what the PSLRA requires. *Compare* Mot. 16-20 *with* Opp. 26-27. And Plaintiff identifies no particularized allegations of fact that the risks disclosed to investors had actually materialized prior to any of the challenged statements in ¶¶ 174, 180-81, 215. Opp. at 27. Hayward's cautionary language thus triggers the safe harbor as a matter of law. Mot. at 19-20.

*Second*, Plaintiff also does not point to any particularized allegation that Holleran or Jones had "actual knowledge" that their 2022 sales projections (or other forward-looking statements) were false when made. *See* Opp. at 26-27; Mot. at 16-22. Plaintiff merely points to Holleran's July 2022 statements when Hayward proactively disclosed a downward revision to its sales projections, Opp. at 26 (citing ¶¶ 175, 258, 270), which in no way establishes that Holleran and Jones knew, in March and April, that their projections would not come true, Mot. at 21-22.

3

Moreover, the July 2022 statement merely confirms what Holleran had already told the market about declining demand. *Id.*; *see infra*, II.D.  Lastly, Plaintiff's reliance on bald assertions that "Holleran and Jones knew" their statements were false and "long expected a lower volume of orders," Opp. at 26, fails to establish actual knowledge of falsity, even under Plaintiff's cases.[2]  Mot. 16-22.  Plaintiff has no real answer to the safe harbor, and it protects all challenged forward-looking statements.

### B.    Plaintiff's Cursory Puffery Argument Fails

Plaintiff does not meaningfully dispute that the vague statements of optimism challenged in the SAC are inactionable puffery as a matter of law.  Mot. at 22-23. Indeed, Plaintiff does not cite any case supporting its conclusory footnote argument that some statements "are not puffery," Opp. at 27 n.8, and makes no attempt to distinguish the cases cited in the Motion (at 22-23).  The only puffery statement that Plaintiff actually addresses is Holleran's "very credible" order file comment (¶ 164). Opp. at 18.  But Plaintiff's entire support for the bare assertion that Holleran's comment is actionable is two out-of-circuit cases concerning statements that do not remotely resemble Holleran's vague and subjective remark.  *Id.*

### C.    Plaintiff's Opinion Arguments Fail

Plaintiff ignores the Hayward Defendants' *Omnicare* argument for all of the challenged opinions, Mot. at 23-25, except for two statements from Holleran

---

[2] Plaintiff cites no controlling safe harbor cases, and none of its cases hold that vague assertions (like Plaintiff's) meet the very demanding "actual knowledge" of falsity requirement.  Opp. at 26-27 (citing *Toll Bros.*, *Veritas Software*, and *Cambrex*).

regarding his perception of inventory levels and demand at Hayward's distributors. Opp. at 15-18.  And Plaintiff's arguments fail as to both.

*First*, Plaintiff argues that a portion of Holleran's October 27, 2021 statement offering his subjective view about channel inventories (*i.e.*, the "color" an analyst requested), Def. App'x A No. 3, is not opinion because that portion did not include the words "I think" and Holleran's "statement that Channel inventory had not increased materially is a verifiable fact."  Opp. at 15-16.  But *Omnicare* has no magic word requirement, and Holleran *did not* say that "channel inventory had not increased materially."  *See PMI Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) ("'we believe' or 'we think' is *sufficient* – not *necessary* – to render a statement one of opinion rather than fact").[3]  Instead, he said that in terms of the "industry as a whole," inventories were in a "healthier position" than in recent quarters.  Def. App'x A No. 3.  Plaintiff cannot use the Opposition to revise Holleran's statement or transform subjective assertions into facts.  The "color" Holleran provided is opinion, and Plaintiff's failure even to attempt to satisfy *Omnicare* renders it inactionable.

*Second*, Plaintiff's argument that Holleran's March 2, 2022 opinion is actionable, Opp. at 17-18 (discussing ¶¶ 163-64), fares no better.  Indeed, the March

---

[3] Plaintiff cites *Henry Schein*, but the statements there did "not reflect" the speaker's "judgment" or "expectations."  2019 WL 8638851, at *13 (E.D.N.Y. Sept. 27, 2019). In *Prudential*, the court rejected reliance on CW allegations as to multiple statements, and the SAC's allegations do not remotely resemble those that were credited in *Prudential* (meetings where management discussed information that directly contradicted the challenged statement).  70 F.4th 668, 686-92 (3d Cir. 2023).

2022 statement contains the "think" phrasing that Plaintiff says is the marker of an opinion, and the context reflects that Holleran was expressing subjective views, not facts. The demanding *Omnicare* standard thus applies, and the SAC does not satisfy it. Plaintiff's "embedded fact" argument fails because the SAC has no particularized allegations (from CW3 or anyone else) of slow bookings or cancellations *before* March 2, 2022, let alone allegations that any such cancellations *were greater than negligible*. *Id.* Nor does Plaintiff identify any undisclosed *facts* about inventory that rendered the March 2 opinion misleading to a reasonable investor viewing it in context. *See Omnicare*, 575 U.S. at 194; Def. App'x A No. 15.[4]

### D.    No Statement Was Materially False When Made

Whistling past the legal doctrines that render inactionable most, if not all, of the challenged statements, Plaintiff argues that the SAC nonetheless pleads false statements regarding channel inventory and demand, cancellations, and Hayward's production. *See* Opp. at 11-24. Plaintiff's primary falsity argument for each of those categories of statements is its assertion that the "Channel" had $150 million in excess inventory as of mid-2021. *See, e.g.*, Opp. at 11-15. But that is a blatant distortion of the SAC's allegations. The SAC alleges only that Hayward disclosed in Q3

---

[4] Plaintiff's opinion cases are inapposite. *See Upstart Holding*, 2023 WL 6379810, at *14 (S.D. Ohio Sept. 29, 2023) (no discussion of why plaintiffs' allegations were sufficient to establish falsity); *Coinbase Glob.*, 2024 WL 4053009, at *11 (D.N.J. Sept. 5, 2024) (same); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 911 (E.D. Pa. 2018) (internal documents contradicted statements made at the time).

2022—*three months after the Class Period*—that the potential, *future* inventory correction could reach $150 million. *See* ¶ 265; Mot. at 27-28. There is not a single allegation of fact anywhere in the SAC that the channel had $150 million in excess inventory by mid-2021. Plaintiff's improper hindsight argument only underscores its inability to show falsity. *Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *6 (D.N.J. Jan. 21, 2021) (using information that "became apparent after the fact" is "exact type of fraud by hindsight" the "Third Circuit has long rejected as improper"). The remainder of Plaintiff's falsity arguments are equally deficient.

*Channel inventory and demand*. Plaintiff first criticizes Holleran's October 2021 comment that from a "days-on-hand standpoint," channel inventory was improving "but certainly not by too much by any means." Opp. at 11-12. But Plaintiff fails to identify any alleged facts about inventory from a "days-on-hand standpoint" that contradicted Holleran's statements at the time. Moreover, Plaintiff's self-serving characterization of Holleran's statement as misleading, *Intelligroup*, 527 F. Supp. 2d 262, 335 (D.N.J. 2007), is contradicted by Hayward's impressive sales growth in Q4 2021 and Q1 2022.[5] ¶¶ 240, 243. Plaintiff next attacks Holleran's measured March 2022 comments (*e.g.*, channel inventory was

---

[5] Plaintiff's inventory and demand cases are inapposite. Opp. at 12-14, 20-21, 38-40. Unlike here, *Finisar*, *Lexmark*, *Nortel*, and *Catalent* included particularized allegations that defendants had specific information contradicting their statements *before* making them; in *Urban Outfitters*, the plaintiff alleged the company failed to "disclose the financial performance" of one of its brands; and *Stumpf* included particularized allegations that defendants used false numbers to obfuscate demand.

"getting back to normal levels") and Jones's April 2022 statement (Q1 was "higher" from a "seasonal perspective"). Opp. at 16-20. Here again, Plaintiff identifies no particularized allegations contradicting these anodyne statements.[6] *Id.*

**Order cancellations.** Plaintiff next argues that Holleran's March 2022 opinion that cancellations had been "negligible" and April 2022 statement about an absence of cancellations were false based primarily on allegations from CW3, who alleges no interaction of any kind with Holleran. *See* Opp. at 20-22. CW3 "*believed* cancellations" "began" around March 2022, ¶ 95, but that is a far cry from alleging any significant or unusual cancellations *prior to* Holleran's statements. CW3's vague statement that Hayward was getting "hammered" with cancellations (¶ 96) offers no information regarding what, when, or how many cancellations Hayward experienced, and CW3 *does not place in time* the only specific cancellation he alleges (supposedly totaling $11 million). Moreover, Plaintiff does not explain why describing such a cancellation as negligible would be inaccurate when Hayward's net sales *increased* by 23% in Q1 2022. Ex. 18 at 1. The similarly vague allegations from CW4 and CW6 about supposedly witnessing "orders rejected" in 2020 and 2021 likewise have nothing to do with alleged cancellations in 2022. ¶¶ 86, 110;

---

[6] Plaintiff's challenge to Jones' description of demand as "strong," Opp. at 19-20, runs headlong into the puffery doctrine and in any event ignores that Hayward disclosed the strategies it deployed to increase sales. Mot. at 28 n.14. And for the same reasons discussed here, Plaintiff fails to establish falsity for similar statements about demand and volume in Hayward's 2021 10-K and 10-Q. ¶¶ 194, 226.

*PayPal*, 2025 WL 325603, at \*16-17 (D.N.J. Jan. 29, 2025); Mot. at 27-29.[7]

***Reduced production.*** Plaintiff next argues that statements in October 2021, March 2022, and April 2022 about Hayward's increase in production were false because management purportedly had ordered a decrease. *See* Opp. at 22-24. But Plaintiff's primary support for this theory are allegations from CW5, who worked far away from Hayward's headquarters, alleges no contact with Jones or Holleran, and offers only the vague assertion that "corporate" directed a "slow down in manufacturing," without saying who directed it and why, let alone whether it actually occurred. ¶¶ 106-07. Such allegations do not establish falsity. *PayPal*, 2025 WL 325603, at \*16-17; Mot. at 27-29. Nor do allegations regarding Hayward's $100 million in inventory, which Plaintiff admits was disclosed to investors. Opp. at 24; ¶¶ 115, 213; *see Anderson v. StoneMor Partners, L.P.*, 296 F. Supp. 3d 693, 703 (E.D. Pa. 2017), *aff'd*, 927 F.3d 710 (3d Cir. 2019) (no falsity where defendants "disclosed the very information Plaintiffs allege was concealed").[8]

## III. PLAINTIFF'S SCIENTER ARGUMENTS FAIL

### A. Plaintiff Fails To Allege A Cognizable Motive

Plaintiff reaches for an inference of scienter by misleadingly lumping together stock sales by different parties and non-parties alike. Opp. at 7-8, 29-31, 40. But

---

[7] Plaintiff criticizes Holleran's description of the "Early Buy" program as "curtailed" at the end of 2021, Opp. at 18-19, but pleads no contrary facts.

[8] Plaintiff's challenge to forward-looking risk disclosures is another attempt to plead falsity by hindsight. Indeed, the SAC has no particularized factual allegations showing the disclosed risks had already materialized. Mot. at 30; Section II.A *supra*.

what matters for Holleran and Jones is their own transactions, not sales by others, because scienter is a defendant-specific inquiry. *See Winer Fam. Tr. v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007). And Plaintiff's facially deficient allegations, Mot. at 32 n.17, do not remotely support a strong inference that either acted with scienter in making challenged statements. Plaintiff does not dispute that Jones *increased* his Hayward holdings during the period, Holleran maintained massive holdings, and Hayward repurchased its own shares—all of which strongly undercuts any inference of scienter. Mot. at 31-34. Plaintiff's arguments to the contrary all fail.

***Jones's Options Exercise***. Although Plaintiff holds tight to its specious mischaracterization of Jones's transaction, Opp. at 33, it does not dispute that Jones more than *doubled* his stockholdings during the Period, and that the net result of his options exercise was a *400% increase* in his stockholdings. *See* Mot. at 32-33.[9] That alone defeats any suggestion of motive to defraud, and moreover, the timing of Jones's options exercise is not remotely suspicious, because it occurred after much of the alleged inflation in Hayward's stock price was already removed by (according to Plaintiff) corrective statements by *Jones himself*. Mot. at 33; Opp. at 35-36.

***Holleran's 10b5-1 Sales.*** It is undisputed that Holleran's sales were made pursuant to 10b5-1 trading plans, and that he sold a mere 10% during the Class Period while continuing to hold over 400,000 shares and 3.7 million options. Mot.

---

[9] Plaintiff's sole options case (*Petco*) is inapposite because the executive's options exercise in that case dramatically *reduced* his holdings.

31-32; App'x B.  Plaintiff's only response to these devastating points is that 10b5-1 trades can be suspicious depending on when the plan is adopted.  Opp. at 34.  But "it is Plaintiff's burden to allege when the Plan was adopted or amended" and show the timing was suspicious.  *Synchronoss Techs.*, 2020 WL 2786936, at *17 (D.N.J. May 29, 2020).  Plaintiff fails to do so, and in any case Holleran's Class Period sales were *less* than his one earlier 10b5-1 sale.  *Compare* Opp. at 31 *with* App'x B.

***Hayward's Repurchase***.    Plaintiff attempts to twist Hayward's stock repurchase into a motive to defraud by arguing it was "part of the massive insider sell off" by CCMP affiliates and AIMCo.  Opp. at 32-33.  But the SAC contains no allegations—from CWs or otherwise—that the Hayward Defendants colluded with CCMP entities and AIMCo to prop up Hayward's stock ahead of their sales.  *See generally* SAC.  And Plaintiff makes no attempt to distinguish the Hayward Defendants' cases holding that a repurchase "negates a finding of scienter."  Mot. at 34.[10]  Plaintiff's theory is fundamentally flawed in any event because it ignores that (i) MSD, whom Plaintiff alleges had influence over Holleran and Jones, sold no shares and *suffered losses as a result of the same conduct Plaintiff alleges was designed to benefit Hayward's largest investors*, *see generally* SAC; (ii) CCMP's affiliates and AIMCo held a majority of their shares through the end of the Class

---

[10] *Countrywide*, (Opp. at 33), which recognized repurchases signal "a company believes its stock is undervalued," turned on the use of outside funds.  588. F. Supp. 2d 1132, 1187-88 (C.D. Cal. 2008).  Nothing of the sort is alleged here.

Period, ¶ 308; and (iii) neither Holleran nor Jones is alleged to have received any concrete, personal benefit from these sales, Mot. at 38-39.

***Sales by Others.*** Plaintiff also points to 10b5-1 stock sales (App'x B) by other Hayward personnel (who made no challenged statements), Opp. at 34, but such sales are irrelevant to the state of mind of *Holleran and Jones*, as Plaintiff's own authority recognizes, *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046 (M.D. Tenn. 2022) ("non-defendant sales are not particularly probative.").[11]

### B.    Plaintiff's Knowledge And Recklessness Arguments Fail

Plaintiff's meritless knowledge and recklessness arguments likewise fail. *First*, Plaintiff argues that Holleran made an admission in July 2022 when he said Hayward "expected to sell less into the channel than sellout" due to the "strategic positions that many of our channel partners took at the end of 2021." Opp. at 35. But the SAC itself defeats Plaintiff's theory. Far from admitting a previously known but undisclosed fact, Holleran merely repeated in July what *Plaintiff admits* he told investors *months earlier*—inventories are "largely replenished," ¶ 207, and therefore Hayward's "guidance assumes that there will be greater sell out than sell into the channel during the 2022 season," ¶ 245. Likewise, the so-called admissions about tracking channel inventory merely stand for the benign point that Hayward employed business processes common to manufacturing companies. Opp. at 35-36.

---

[11] *Alias Rsch*, *CNinsure*, and *Franchi* (Opp. 29-30) found scienter based on factual allegations showing vast and suspiciously timed sales. None are present here.

Plaintiff does not identify any admission by Holleran or Jones that they knew information contradicting their statements.[12] *See id*.

*Second*, Plaintiff's CW allegations fall far short of pleading knowledge or recklessness (or falsity). It is undisputed that CW1, CW2, CW4, and CW5 were far removed from Hayward's headquarters and allege no interactions with Holleran or Jones. Opp. at 36-40. Accordingly, those CWs do not support scienter. Mot. at 35-36; *PayPal*, 2025 WL 325603, at *16 (no scienter where CWs lacked the "seniority" to know "what was being discussed in meetings with [defendants]"). It is also undisputed that neither CW3 nor CW6 alleges that Holleran or Jones knew information contradicting their respective statements. Opp. at 36-38; Mot. at 36-38; *PayPal*, 2025 WL 325603, at *16. Plaintiff alleges that CW3 "built out a system" for viewing cancellation reports and Hayward's (not the channel's) disclosed inventory levels for Jones, ¶ 103; Opp. at 36-37; Mot. at 37-38, but there are no allegations regarding the report's contents or that Jones accessed it (or when). Those glaring defects render CW3's allegations insufficient to support a strong inference of scienter. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245 (3d Cir. 2013).

*Third*, as Plaintiff acknowledges, its remaining CW allegations amount at most to "water cooler talk" and speculation that the Hayward Defendants "must have

---

[12] Plaintiff's citations to *Swanson* ("detailed" facts contradicting defendants' statements) and *Ryanair* (concealment that company expected unionization contrary to public statements) only underscore the deficiencies in Plaintiff's CW allegations.

known" the channel was "stuffed" even though the channel continued placing steady orders. Opp. at 3-4, 36-40. For example, CW2 and CW6's undated allegations that Holleran and Jones "would have known" distributors were decreasing their inventory, ¶¶ 67, 110, are "riddled with surmise and conjecture," *PayPal*, 2025 WL 325603, at *17 n.17. A "strong" inference of scienter requires much more, *i.e.*, "allegations of specific information conveyed to management and related to fraud." *Rahman*, 736 F.3d at 247; Mot. at 34-39.[13] Unable to meet that standard, Plaintiff improperly revises the CW allegations and even invents new ones. Plaintiff asserts that "management" used Cognos to "generate reports on what products were not selling to the Channel." Opp. at 37 (citing ¶¶ 76-78). Yet the SAC alleges the reports were generated by the "product management team" to track "Hayward inventory" to identify products for "sales blitzes," ¶ 78, and says nothing about the data in the alleged reports or whether Holleran or Jones received them. The SAC also does *not* say that Hayward tracked "missed sales targets." Opp. at 39. CW2 alleges only that *he* "was not hitting [his] sales targets." ¶ 89. Plaintiff cannot revise its allegations to establish scienter, and even those revised allegations fail. *Watkins v. Protective*

---

[13] Unlike here, the CWs in Plaintiff's cases, Opp. 36-39, made specific allegations that executives "were directly aware of" reports showing overstated revenue (*GSX Techedu*); company officer emails indicated "aware[ness]" of what CWs alleged (*T-D Bank*); defendants "actually possessed" data contradicting their statements (*Lozada*); and that were supported by other scienter allegations (*Urb. Outfitters*).

*Life Ins. Co.*, 2017 WL 2426863, at *2 (D.N.J. June 5, 2017) (Martini, J.).[14]

## C.     The Non-Fraudulent Inference Is More Compelling

When the inferences are compared under a holistic analysis, there is no contest.  The SAC makes clear that Holleran and Jones did the *opposite* of hyping Hayward's stock and cashing out while investors remained in the dark.  Holleran and Jones repeatedly disclosed "bad news" throughout the Class Period, leading to multiple stock price declines; Holleran held onto the majority of his stockholdings and Jones *increased* his—while the stock price was declining; and they proactively lowered full-year 2022 sales guidance even though Hayward exceeded its original guidance through the first two quarters.  The only logical inference is that the Hayward Defendants made good faith projections and disclosures about sales and inventory during unprecedented, pandemic-related market conditions and the onset of interest rate hikes; and when those headwinds and unforeseen factors began to impact Hayward's business, the Hayward Defendants appropriately revised their 2022 outlook (consistent with or earlier than Hayward's distributors and competitors, Mot. at 11 n.5), even though it negatively impacted Defendants as holders of Hayward stock.  *See* Mot. at 39-40.  That is not securities fraud.

## IV.    CONCLUSION

The SAC should be dismissed with prejudice.

---

[14] Plaintiff cites no cases for the proposition that a non-defendant's "planned retirement" is indicative of Holleran or Jones's scienter.  Mot. at 39; Opp. at 40.

Dated:  March 4, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ Kevin M. McDonough

Kevin M. McDonough (N.J. Bar No. 41892005)
Andrew B. Clubok (*pro hac vice*)
Corey A. Calabrese (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
Email: andrew.clubok@lw.com
Email: corey.calabrese@lw.com

*Counsel for Hayward Defendants Hayward
Holdings, Inc., Kevin Holleran, and Eifion Jones*

16

**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
Andrew B. Clubok (*pro hac vice*)
Corey A. Calabrese (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
Email: andrew.clubok@lw.com
Email: corey.calabrese@lw.com

*Counsel for Defendants Hayward Holdings, Inc.,*
*Kevin Holleran, and Eifion Jones*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF SOUTHFIELD FIRE AND POLICE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, and MSD PARTNERS, L.P.,<br><br>Defendants. | Civil Action No. 2:23-cv-04146-WJM-JBC<br><br>Hon. William J. Martini<br>Magistrate Judge James B. Clark<br><br>Document Electronically Filed<br><br>**CERTIFICATE OF SERVICE** |

On behalf of Defendants Hayward Holdings, Inc., Kevin Holleran, and Eifion

Jones (collectively, "Hayward Defendants"), I hereby certify that on March 4, 2025,

I electronically filed a true and correct copy of the Reply Memorandum of Law in

Support of the Hayward Defendants' Motion to Dismiss the Consolidated Class

1

Action Complaint with the Court via the CM/ECF system, thereby effectuating service upon all parties who receive notice of the filing via the Court's CM/ECF system.

Dated: March 4, 2025
      New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ Kevin M. McDonough
Kevin M. McDonough

2