**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CITY OF SOUTHFIELD FIRE AND POLICE RETIREMENT SYSTEM, Individually and on Behalf of Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, MSD PARTNERS, L.P., CCMP CAPITAL INVESTORS III, L.P., CCMP CAPITAL INVESTORS III (EMPLOYEE), CCMP CAPITAL ASSOCIATES III, L.P., CCMP CAPITAL ASSOCIATES III GP, LLC, CCMP CAPITAL, LP, CCMP CAPITAL GP, LLC, MARK MCFADDEN, TIMOTHY WALSH, GREG BRENNEMAN, MSD ACQUA PARTNERS, LLC, MSD PARTNERS (GP), LLC, CHRISOPHER BERTRAND, KEVIN BROWN,**<br><br>**Defendants.** | No. 2:23-cv-04146<br><br>**OPINION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND CASE CONTRIBUTION** |

**<u>WILLIAM J. MARTINI, U.S.D.J.:</u>**

Before the Court in this preliminarily approved securities fraud class action is Lead Plaintiff Fulton County Employees' Retirement System's ("Fulton" or "Plaintiff") unopposed motion for: 1) final approval of a class action settlement, ECF No. 132, and 2) an award of attorneys' fees and expenses and compensatory awards for the Lead Plaintiff, ECF No. 133. Plaintiff's application is unopposed. A final approval hearing was held on July 28, 2026. For the reasons stated below, the motion for final approval is **GRANTED** and the settlement is finally **APPROVED**. The motion for fees is **GRANTED IN PART**.

# I. BACKGROUND

## A. Facts and Procedural History

Plaintiff, on behalf of purchasers of Hayward Holdings, Inc., ("Hayward") common stock between October 27, 2021 and July 28, 2022, inclusive ("Class Period"), alleged that during the Class Period, Defendants, in violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 promulgated thereunder, as well as § 20(a) of the Exchange Act, made materially false or misleading statements and omissions in multiple public filings and earnings calls related to the inventory of Hayward's "channel" (distributor) partners and demand for Hayward's products. Plaintiff alleged that the Settlement Class suffered damages by acquiring stock during the Class Period at artificially inflated prices and that Defendants sold stock at artificially inflated prices.

On December 19, 2023, Fulton was appointed Lead Plaintiff and two separately instituted suits (*Erie County Employees Retirement Systems v. Hayward Holdings, Inc.*, 23-04146 and *City of Southfield Fire and Police Retirement System v. Hayward Holdings, Inc.*, 23-20764) were consolidated. Defendants filed a motion to dismiss, which was granted on October 2, 2024. ECF Nos. 89, 90. Plaintiff thereafter filed a Consolidated Amended Class Action Complaint ("CAC"), ECF No. 91, which Defendants also moved to dismiss. That motion was granted in part and denied in part on June 4, 2025. ECF Nos. 107, 108. The suit was stayed pending mediation and after two full days of mediation, the parties executed a Stipulation of Settlement ("SS") on January 23, 2026. SS attached to Decl. of Max R. Schwartz in Support of Mot. for Preliminary Approval of Class ("Schwarz Dec. I") at Ex. 1, ECF No. 128-2.

## B. The Proposed Settlement

Pursuant to the Stipulation of Settlement,[1] Defendants will pay a Settlement Amount of $19.85 million inclusive of Court-awarded Plaintiff's Counsel fees, a service award to Lead Plaintiff, administration costs, expenses, taxes, and payment to Authorized Claimants. *See* SS ¶¶ 1.31, 2.4, 2.8. The Settlement would dismiss with prejudice claims in this litigation by Plaintiffs and all Settlement Class Members who have not opted out. *Id.*, 1-2. The Settlement Class is defined as:

> All persons or entities that purchased or otherwise acquired Hayward Holdings, Inc. ("Hayward") common stock between October 27, 2021 and July 28, 2022, inclusive. Excluded from the Settlement Class are Defendants; their respective successors and assigns; the past and current executive officers and directors of Defendants; the Immediate Family Members of the Individual Defendants; and the -8- legal representatives,

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as defined in the Stipulation of Settlement.

> heirs, successors, or assigns of any excluded person, and any entity in which any of the above excluded persons have or had a direct or controlling ownership interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded persons or entities. Also excluded will be any person or entity that validly requests exclusion from the Settlement Class.

SS ¶ 1.32.

On March 2, 2026, this Court granted preliminary approval of the Settlement, ("Preliminary Approval Order") "as fair, reasonable, and adequate" satisfying the requirements under Fed. R. Civ. P. 23 and due process. Preliminary Approval Order ¶ 1, ECF No. 129. The Court also preliminarily certified the Class for settlement purposes only and approved the proposed Settlement notice documents and notice plan. *Id.* ¶¶ 1, 4.

### C. Notice

The Court-approved Notice of Proposed Class Action Settlement (the "Notice") informs Settlement Class Members of the nature of the Action, the reasons for settling the Action, and the maximum attorneys' fees and expenses that would be sought. *See generally*, Notice and Proof of Claim, attached to Decl. of Ann Cavanaugh ("Cavanaugh Decl.") as Ex. A, ECF No. 134-1. Further, the Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit a valid and timely Proof of Claim and Release Form (the "Proof of Claim"), pursuant to the proposed Plan of Allocation included in the Notice and subject to Court approval. *Id.* It also details: (i) the procedure and deadline for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; (ii) the procedure and deadline for requesting exclusion from the Settlement Class; and (iii) the date, time, and location of the Settlement Fairness Hearing. *Id.*

To provide additional information and to accommodate potential Settlement Class Member inquiries relating to this case, the Notice and Proof of Claim, (jointly the "Claim Package") and Summary Notice include a toll-free telephone helpline, 1-866-302-5581, and a Settlement Website, www.HAYWSecuritiesLitigation.com, established and maintained by the Settlement Administrator, A.B. Data, Ltd. ("A.B. Data"). *Id.* ¶ 24; Cavanaugh Decl. ¶¶ 13, 14; Summary Notice attached to Cavanaugh Decl. as Ex. B. The Settlement Website includes information regarding the Action and the Settlement, including the objection, opt-out, and claim-filing deadlines, and the date and time of the Court's Final Approval Hearing, as well as access to downloadable copies of the Notice, Proof of Claim, Stipulation, Preliminary Approval Order, and other important case documents. *See id.* at ¶ 14. Settlement Class Members can also complete and submit a Proof of Claim through the website.

In accordance with the Preliminary Approval Order, A.B. Data also published the Summary Notice in PR Newswire. Suppl. Cavanaugh Decl. ¶ 5, ECF No. 138-1. As of July 20, 2026, A.B. Data mailed or emailed a total of 19,156 Claim Packages to potential Settlement Class Members and their nominees. *Id.* ¶ 4. Any objections or requests for exclusion from the Settlement were to be postmarked no later than May 20, 2026. Notice, 2. The deadline for Settlement Class Members to submit a Proof of Claim was June 19, 2026. *Id.* As of July 20, 2026, A.B. Data has not received any requests for exclusion or objections to the Settlement. Suppl. Cavanaugh Decl. ¶¶ 16, 17. As of July 20, 2026, A.B. Data received approximately 32,208 claims. *Id.* ¶ 11. The number of claims filed exceeds the number of Claim Packages mailed because many of those packages were sent to banks, brokers, and other nominees holding shares in street name on behalf of numerous beneficial owners, each of whom was entitled to submit an individual claim. *Id.* A.B. Data has not yet reviewed these claims for eligibility, deficiencies, or duplicates, nor has A.B. Data calculated any distribution amounts pursuant to the Plan of Allocation so these figures are subject to change. *Id.*

### D. <u>Plan of Allocation</u>

The Plan of Allocation provides for the distribution of the $19.85 million Settlement Fund less all taxes and Court-approved costs, fees and expenses (the "Net Settlement Fund") among Authorized Claimants. The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on their respective alleged economic losses. *See* Notice ¶¶ 17-18. The calculation of an Authorized Claimant's "Recognized Loss Amount" will depend on, among other things, when they purchased and/or sold Hayward common stock during the Class Period in relation to the disclosure dates alleged in the Action, whether and how long they held or sold Hayward common stock, and the value of the Hayward common stock when the shares were held or sold. Schwartz Decl. in Support of Mot. for Final Approval ("Schwartz Decl. II") ¶¶ 53, 54, ECF No. 134.

## II. DISCUSSION

Plaintiff moves for final approval of the Settlement, Notice, and Plan of Allocation, certification of the Class, an award of attorneys' fees for 1/3 of the Net Settlement Fund, reimbursement of litigation expenses and settlement administration costs, and a $10,000 Service Award to Lead Plaintiff distributed from the Settlement Fund. Each issue is addressed in turn.

### A. <u>Motion to Approve Settlement</u>

#### 1. Adequacy of Notice

Before approving the settlement of a class action, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires notice of: "(i) the nature of the action; (ii) the

definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." In addition, notice of the settlement must be the best that is "practicable under the circumstances," and "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2). The form and manner of the notice must satisfy the requirements of due process. *Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at *7 (D.N.J. June 28, 2018).

Here, the notice provided to Class Members satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The notices were provided to Class Members by a third-party claims administration and describe: (1) the nature of the action and the bases for the claims, 2) the definition of the certified class, (3) the key terms of the Settlement, including the Settlement Amount, the process for each Class Member to submit a Claim for payment, and the release of claims against Defendants, (4) the binding nature of the Settlement on each Class Member, and (5) the rights of each Class Member to retain separate legal counsel, object to the Settlement, opt-out of the Class, or appear at the Final Approval Hearing, as well as the deadlines by which to do so. *See* Settlement Agreement and attached Exhibits, Settlement website. Such notice "contain[ed] sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("*Baby Prods.*").

Likewise, the manner in which Members were notified was the best practicable under the circumstances and also satisfies the requirements of Rule 23 and due process. Potential Class Members were notified in accordance with the Court's Preliminary Approval Order.

**2. *Girsh* and *Prudential* Considerations of Settlement**

Fed. R. Civ. P. Rule 23(e) requires court approval of any proposed settlement of a class action. A court may, in its discretion, approve a proposed class action settlement "only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
  (i) the costs, risks, and delay of trial and appeal;
  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* ("*Prudential*"), 148 F.3d 283, 299, 316 (3d Cir.1998). These factors do not displace, but rather, augment those identified by the Third Circuit for evaluating a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975).[2]

Beyond these nine *Girsh* factors, additional factors the Court may consider when appropriate and relevant, include: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Prudential*, 148 F.3d at 323. An additional inquiry to test the reasonableness of a settlement is whether the settlement provides a "direct benefit" to members of the class. *See Baby Prods*, 708 F.3d at 174. "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Am. Family Enters.,* 256 B.R. 377, 418 (D.N.J. 2000) (quotations omitted). Instead, the Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh.*" *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-07658, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) ("*Valeant*"). The Court addresses each *Girsh* factor, and, where appropriate, *Prudential* factor, in turn.

In doing so, the Court is mindful that the law encourages and favors the settlement of civil actions in federal court, particularly in complex class actions where the settlement is the result of arm's-length negotiations between experienced counsel after meaningful discovery. *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* ("*General Motors*"), 55 F.3d 768, 784 (3d Cir.1995); *see also In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*"). However, notwithstanding the general presumption in favor of a settlement in the class action context, the Court also

[2] Rule 23(e)(2) was amended in 2018 to include the list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019).

"acts as a fiduciary who must serve as a guardian of the rights of absent class members." *General Motors*, 55 F.3d at 785 (citations and quotations omitted).

### i. The complexity, expense and likely duration of the litigation

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) ("*NFL Players Litig.*"). Here, the costs, complexity and likely duration of this case strongly favor settlement. This class action is complex as it involves thorny issues regarding securities fraud liability. *See In re ViroPharma,* No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016) (noting that all securities fraud trials are long and complex). While the parties exchanged some limited discovery prior to mediation, *see* Pl. Br. at 8, the litigation is still at an early stage and significant expenses and discovery remain. Lead Plaintiff would still need to survive class certification and summary judgment before even reaching trial. The risks of proceeding to trial would have been considerable as proving scienter, causation, and damages would have been challenging. Plaintiff would have to prove that Defendants made materially false or misleading statements about channel inventory levels and demand for Hayward's products with scienter, and that those statements, rather than other factors such as inflationary headwinds, the Ukraine war's impact on European sales, or poor weather, caused the alleged stock price inflation and resulting damages. Class issues involving damages would likely generate competing expert testimony leading to a "battle of the experts." *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 539 (D.N.J. 1997), *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998). Even if the case were to proceed to judgment on the merits, the time and expense of a securities class action trial is substantial and would very likely lead to post-trial motions and subsequent appeals that could extend this case for several more years. Although Plaintiff believes it would ultimately prevail, litigation of this matter through trial would be complex, costly, and time-consuming. The Settlement eliminates the costs and risks associated with further litigation. The Settlement Class would also receive prompt compensation. For all of these reasons, this factor weighs strongly in favor of final approval.

### ii. The reaction of the class to the settlement

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement.'" *Warfarin,* 391 F.3d at 536 (quoting *Prudential,* 148 F.3d at 318). The absence of any objections or exclusions by Class Members strongly weigh in favor of approval of the Settlement. *See e.g.*, *NFL Players Litig.*,821 F.3d at 438; *Little-King*, 2013 WL 4874349, at *21 (collecting cases). This demonstrates that the Settlement Class has reacted overwhelmingly positively to the Settlement. *See e.g., Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (finding 29 objectors out of a class of 281 "strongly favors settlement").

**iii. The stage of the proceedings and the amount of discovery completed**

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to the settlement. Through this lens, courts can determine whether class counsel had an adequate appreciation of the merits of this case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (quotations omitted). "The fact that a case has not proceeded through discovery does not necessarily weigh against settlement approval." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012).

In addition to Plaintiff's extensive pre-suit investigation, the parties went through motion practice, exchanged core discovery in advance of mediation, and participated in two full days of mediation. Thus, the parties had an adequate appreciation of the merits of the case. Accordingly, this factor weighs in favor of approval of the Settlement. *Cf. Weiss v. Mercedes–Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving a settlement even though case was still in the early stages of discovery).

**iv. The risks of establishing liability and damages**

Together, the fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement." *Warfarin*, 391 F.3d at 537. In other words, the Court must consider "what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors*, 55 F.3d at 814. The Court weighs the value of an immediate guaranteed settlement against the challenges that remain in proceeding with litigation. Even if the class is certified and Plaintiff survives any future dispositive motions, there is no guarantee that Plaintiff would be successful in proving liability and damages. In addition, proving loss causation and damages would likely hinge on a "battle of the experts," which would be both time consuming and expensive. While Plaintiff certainly may ultimately succeed in establishing liability and damages at trial, there is no reasonable certainty that such a result is likely. *See* Rule 23(e)(2)(C)(i). Even assuming a favorable trial outcome, Defendants might appeal, further delaying any benefit to the Class. Accordingly, given the real and extensive risks involved in Plaintiff's case, these two factors weigh in favor of approving the Settlement.

**v. The risks of maintaining the class action through the trial**

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537 (citations

omitted). Plaintiff anticipates that surviving class certification could present significant challenges and even if the Court were to certify a litigation class, the certification would not be set in stone. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Prudential*, 148 F.3d at 321 ("Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable."). Hence, this factor favors approving the Settlement.

**vi. The ability of the defendants to withstand a greater judgment**

Even if Defendants could withstand a much greater judgment, this fact has marginal relevance unless the ability of a defendant to survive a judgment is central to the negotiation process. *See McLellan v. LG Elec. USA, Inc.*, No. 10-3604, 2012 WL 686020, at *7 (D.N.J. March 2, 2012); *Warfarin*, 391 F.3d at 538 ("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached"). Defendants' resources do not affect the Court's determination to approve the Settlement. Thus, this factor is neutral.

**vii. The range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation**

The eighth and ninth *Girsh* factors analyze "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin,* 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* Here, the Settlement was the result of arms' length negotiations and the relief that it provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. According to Cornerstone Research, in 2025, the median settlement for class actions involving Rule 10b-5 securities fraud claims was $16 million, so the proposed Settlement here is approximately 20% larger. Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2025 Review and Analysis*, at 6. And in 2025, the median settlement of class actions involving securities fraud claims recovered 6.5% of estimated damages, *id.* 7, whereas Plaintiff represents that the proposed Settlement is approximately 8% of the best-case damages. Further, the Settlement compares favorably with benchmark recoveries in this Circuit and elsewhere. *See, e.g., Schuler v. Medicines Co.*, No. 14-1149, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving settlement representing 4.0% of estimated recoverable damages and noting that the "percentage falls squarely within the range of previous settlement approvals"); *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 169 (3d Cir. 2006) (affirming settlement for 4% of total damages). In light of the risks of proceeding with litigation discussed above, and the certainty of the benefits provided by the Settlement, these factors weigh in favor of approving the Settlement.

**viii. Other Rule 23(e)(2) and *Prudential* Factors**

In considering the other factors set forth in Rule 23(e)(2), the Court finds that Plaintiff's Counsel adequately represented the Class, having conducted a factual investigation of the claims, consulted with their damages and loss causation expert, reviewed discovery from Defendants, and participated in two days of mediation. As to any other agreement that the parties entered into, *see* Fed. R. Civ. P. Rule 23(e)(2)(D), Plaintiff represents that the sole purpose of the parties' Supplemental Agreement is to give Defendants the option to terminate the Settlement if requests for exclusion exceeded certain agreed upon conditions. "Supplemental agreements concerning opt-outs are kept confidential to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to extract an individual settlement, and has no bearing on the fairness of the Settlement." *Hacker v. Elec. Last Mile Sols. Inc.*, No. 22-00545, 2024 WL 5102696, at *9 (D.N.J. Nov. 6, 2024). In any event, the Supplemental Agreement does not apply as there are no opt-outs.

The relevant *Prudential* factors also favor approving the Settlement. As to the *Prudential* factor that relates to the maturity of the underlying issues, although the Parties did not complete formal discovery, Defendants provided Plaintiff with pre-mediation discovery to allow for Plaintiff to determine the circumstances surrounding this litigation. *See, e.g., Weiss*, 899 F. Supp. at 1301 (approving settlement of case still in early stages of discovery). The *Prudential* factors that relate to the existence of other classes and subclasses are irrelevant here as the Settlement Class includes all purchasers of Hayward common stock during the Class Period. Class Members have had ample opportunity to object or opt-out of the Settlement and were provided clear instructions on how to do so. The procedure for processing individual claims under the Settlement is fair and reasonable, providing for Settlement Class Members to be able to submit claims online or via a paper claim form. As explained in more detail below, the attorneys' fees that will be awarded are also fair and reasonable. Finally, the Settlement also offers "direct benefit" to the settlement class given that all Settlement Class Members can submit Proof of Claim. The Court approves the Settlement finding it to be fair, reasonable, and adequate.

**3. Approval of Plan of Allocation**

Upon Court approval of the proposed Settlement and completion of the claims administration process, the Net Settlement Fund will be distributed to Authorized Claimants according to the Plan of Allocation set forth in the Notice. "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable, and adequate." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 126 (D.N.J. 2002) (citing *In re Computron, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998); *see also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 264 (D.N.J. 2000), *aff'd sub nom. In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In*

*re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000). The present plan, which was developed in consultation with a damages consultant, has a rational basis as it is tied to Plaintiff's theories of liability and damages and fairly allocates the Net Settlement Fund among Authorized Claimants. *See* Fed. R. Civ. P. Rule 23(e)(2)(D) (listing as a factor that courts may consider whether the Settlement "treats class members equitably relative to each other"). The allocation plan is fair, reasonable, and adequate.

## B. Class Certification

In order to approve a class settlement agreement as fair under Fed. R. Civ. P. 23(e), the Court must additionally determine that the requirements for class certification under Rules 23(a) and (b) are also met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). Each Rule 23 requirement must be established by a preponderance of the evidence. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," the court considers merits questions only to the extent they are relevant to performing the "rigorous analysis" required to determine whether the Rule 23 prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

### 1. Rule 23(a) Factors

Rule 23(a) provides that the class may be certified if: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(a)). As discussed below, the Rule 23(a) requirements for class certification are satisfied.

#### i. Numerosity

Numerosity is satisfied when joinder of all putative class members is impracticable. Fed. R. Civ. P. 23(a)(1). Where the number of potential plaintiffs exceed forty, the numerosity requirement is generally fulfilled. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, Hayward's common stock was publicly traded on the New York Stock Exchange under the ticker symbol "HAYW" throughout the Class Period, with approximately 216 million shares outstanding and significant daily trading volume. Numerosity is therefore satisfied. *See City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 12–5275, 2015 WL 5097883, at *8 (D.N.J. Aug. 31, 2015) (finding numerosity to be satisfied "as Prudential stock trades on the NYSE with significant daily volume"); *Dartell v. Tibet Pharms., Inc.*, No. 14–3620, 2016 WL 718150, at *3 (D.N.J. Feb. 22, 2016) (concluding numerosity was satisfied where "there were three million shares of stock sold in the IPO").

**ii. Commonality**

Commonality requires that the members of the class must assert a common contention that is capable of classwide resolution such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 489–90 (3d Cir. 2018) (quoting *Dukes*, 564 U.S. at 350); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (noting that the "commonality requirement 'does not require identical claims or facts among class member[s]" (citations omitted)).

In this case, the dispute involves common issues of all Settlement Class Members arising from allegedly materially false and misleading statements and omissions made to the investing public concerning the level of distributor channel inventory and the strength of channel demand for Hayward's pool products, the resulting harm to the Class, and the appropriate measure of Class damages. Questions common to the Settlement Class include: (1) whether Defendants violated Sections 10(b) and 20(a) of the Exchange Act; (2) whether public statements made by Defendants during the Class Period misrepresented or omitted material facts regarding channel inventory levels and demand; (3) whether Defendants knew or were deliberately reckless in not knowing that their statements and/or omissions were false and misleading; (4) whether the price of Hayward common stock was artificially inflated; and (5) whether Defendants' conduct caused the members of the Settlement Class to sustain damages. The proposed class is sufficiently cohesive that the Class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. Commonality and predominance requirements in Rules 23(a)(2) and 23(b)(3), respectively, are thus satisfied. *See* discussion *infra.*

**iii. Typicality**

"The concepts of commonality and typicality are broadly defined and tend to merge." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted). "The typicality inquiry centers on whether the interest of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227 (citation omitted). Thus, the typicality requirement ensures "that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Stewart*, 275 F.3d at 227–28 (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)). For the typicality inquiry, a court thus compares "the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598.

Plaintiff's claims here are typical because both Plaintiff and Class Members were injured by the same common course of conduct by Defendants—the alleged misstatements

and omissions concerning channel inventory levels and demand—and plead causes of action common to all Settlement Class Members. Furthermore, Plaintiff is not "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp.*, 589 F.3d at 599. Thus, Plaintiff stands in precisely the same position as the putative Class Members. Plaintiff meets the requirements of typicality.

**iv. Adequacy**

Adequacy "encompasses two distinct inquiries designed to protect the interests of absentee class members." *Prudential*, 148 F.3d at 312. "First, [it] tests the qualifications of the counsel to represent the class." *Id.* "Second, it 'serves to uncover the conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

As this Court has previously noted, both Class Counsel have extensive experience in complex litigation and class action proceedings. *See* ECF No. 29. Class Counsel are very familiar with the applicable legal issues and are qualified to represent the Class. Regarding the second prong, there is no conflict of interest between the named parties and the Class. *Amchem*, 521 U.S. 591, 625–26. Plaintiff, having suffered the same injury as the Class Members, possesses the same interest and will adequately represents the interests of the Class. Accordingly, the adequacy requirement is met.

**2. Rule 23(b)(3) Factors**

Next, in addition to Rule 23(a), class certification requires that a plaintiff also meet one of the requirements set forth in Rule 23(b). Plaintiff here specifically seeks certification of a settlement class under Rule 23(b)(3), which permits certification only if (1) questions of law or fact common to class members predominate over individual questions ("predominance"), and (2) a class action is the superior method for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). Factors relevant to a finding of predominance and superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As set forth below, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

**i. Predominance**

Predominance requires the court to evaluate whether "questions of law or fact common to class members predominate over any questions affecting only individual

members." Fed. R. Civ. P. Rule 23(b)(3). The inquiry, while similar to the considerations under Rule 23(a)'s commonality requirement, is a "far more demanding" standard that requires the Court to determine if the proposed class is sufficiently cohesive that members of the class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("where an action is to proceed under Rule 23(b)(3), the commonality requirement 'is subsumed by the predominance requirement." (internal quotations and citation omitted)). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011); *see also Warfarin*, 391 F.3d at 528 (finding predominance in "broad-based" campaign to deceive providers and patients regarding a generic equivalent).

The Court must examine through the prism of Rule 23(b)(3) the elements of Plaintiff's claim and ask whether proof of the essential elements require individual treatment. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 266 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)); *see also Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370-71 (3d Cir. 2015). The mere existence of individual questions does not preclude a finding of predominance, nor does the possibility that some individualized inquiry as to damages may be required. *Neale*, 794 F.3d at 371. Rather, the Court engages in a qualitative examination of both common and individual issues. *Id.* (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)).

Here, Defendants' alleged misstatements and omissions concerning channel inventory levels and demand provide the basis for liability as to all potential Class Members. Common proofs required to demonstrate this violation predominate over individualized inquiries. No individual inquiry will be necessary regarding Defendants' liability to each Class Member. Predominance is satisfied. Courts have held that the elements of materiality, falsity, and loss causation are all common questions for the Section 10(b) claims at issue here. *See, e.g., Amgen*, 568 U.S. at 467 ("materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)") (citation modified); *id.* at 475 ("this Court has held that loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified").

**ii. Superiority**

Finally, to establish superiority, a plaintiff must demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co.*, 543 F.3d at 149 (citation omitted). Superiority "is easily satisfied in securities fraud cases where there are many individual

plaintiffs who suffer damages too small to justify a suit against a large corporate defendant." *In re Heckmann Corp. Sec. Litig.*, No. 10–378, 2013 WL 2456104, at *8 (D. Del. June 6, 2013) (citation modified). "A class action is certainly the superior method for adjudicating" securities fraud claims because "[g]enerally, as a practical matter, investors defrauded by securities law violations have no recourse other than class relief." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 78 (D.N.J. 2019) (citation modified). Hence, a class action is the superior method of adjudication in this matter.

### C. Motion for Attorneys' Fees, Expenses, and Service Award

Scott+Scott serve as Lead Counsel and Cohn, Lifland, Pearlman, Herrmann & Knopf, LLP as Liaison Counsel (together "Class Counsel"). *See* ECF Nos. 29, 30. Class Counsel requests an attorneys' fees award of $6,478,109.87 (33.33% of $19,434,329.62 (the Settlement Amount after deduction of litigation and settlement administration expenses)) plus interest[3] and a service award of $10,000 to Plaintiff to be paid out of the Settlement Fund. The Court finds that an award of 26% of the recovery, or $5,052,925.70, plus accrued interest, and a service award of $8,500 for Lead Plaintiff appropriately compensate Class Counsel and the Class Representative while also protecting the Class Members' interests. Litigation costs and expenses in the amount of $210,670.38 and settlement administration costs of $205,000 are also granted.

#### 1. Attorney's Fees for Class Counsel

Pursuant to Rule 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The decision to award attorneys' fees and expenses is within the Court's discretion; the Court must carefully review the negotiated award to ensure that it is fair, reasonable, and adequate. *Little-King*, 2013 WL 4874349, at *18; *see also In re AT & T Corp.*, 455 F.3d 160, 163 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("*Rite Aid*"). "Two considerations must play central roles in the assessment of a fee award under Rule 23(h): 1) how the amount awarded stacks up against the benefit given to the class, using either the amounts paid or the sums promised; and 2) whether side agreements between class counsel and the defendant suggest an unreasonable attorney's fee award." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 718–19 (3d Cir. 2023) (footnote omitted). The requested fee does not involve any side agreements.

In evaluating an award of attorneys' fees, courts typically apply one of two methodologies: (1) the lodestar method in which the number of hours worked by Class Counsel is multiplied by a reasonable hourly billing rate for such services; or (2) the

[3] *See Warfarin*, 391 F.3d at 525, n.9 (3d Cir. 2004) (calculating net settlement fund as settlement amount plus accrued interest less fees and expenses where the settlement amount was already paid into an escrow account and earning interest for the benefit of the class).

percentage-of-recovery method in which Class Counsel is awarded a certain percentage of the Settlement Amount. *In re AT&T Corp., Sec. Litig.*, 455 F.3d at 164. Where, as here, the Settlement provides for a common fund, the percentage-of-recovery methodology is "generally favored." *See Sullivan*, 667 F.3d at 330 (3d Cir. 2011).

#### i. Percentage of Recovery Analysis

The Third Circuit has identified a number of factors for the Court to consider in determining whether a fee award is reasonable under the percentage-of-recovery analysis: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). In addition to these seven factors, a court may evaluate these three additional factors: (8) the value of benefits attributable to efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs (Phentermine/Flenfuramine/Dexflenfuramine) Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

The first factor supports the requested award because the $19.85 million settlement benefits thousands of investors. To date, 32,208 Proof of Claims have been filed by Class Members. *See* Suppl. Cavanaugh Decl. ¶ 11.

The second and fifth factors overlap considerably with those already considered by the Court in approving the Settlement as fair, reasonable, and adequate. The Court has already noted the absence of any objections to the Settlement. Notice of the Settlement and Class Counsel's fee request was provided to Class Members. *See* Settlement Website ¶ 20; *see also Valeant*, 2020 WL 3166456, at *12. Similarly, the Court has already analyzed the risk of nonpayment by noting the various risks, including the risk of an unsuccessful trial or appeal, that would render Plaintiff, and its contingency-fee based counsel unable to recover anything at all. *See supra,* II.A.2.iv.; *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("*Merck*"). Accordingly, as with the Settlement, these factors weigh in favor of approving an award of attorneys' fees.

Likewise, the third factor supports approving the fee award. This factor measures the "quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Valeant*, 2020 WL 3166456, at *12 (quotations omitted). As already noted, the

$19.85 million Settlement is immediate and substantially benefits the Class particularly in light of the relative speed in which settlement was reached in this case, the complex issues involved including the difficulties of establishing scienter, damages and causation, as well as the zealous advocacy of counsel on both sides.

As to the fourth factor, the Court has already recognized the complexity of this case, *see also supra,* II.A.2.i, which supports the proposed fee award. *See Yedlowski v. Roka Bioscience, Inc.*, No. 14-8020, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[S]ecurities class actions are by nature particularly expensive to prosecute, usually requiring expert testimony on, at least questions of damages and loss causation").

The sixth factor considers that Class Counsel spent a combined 6,606[4] hours on this 2 ½ year old case conducting factual investigations, engaging in motion practice, filing pleadings, preparing for and participating in two full days of mediation, exchanging and reviewing pre-mediation discovery, retaining and consulting a damages expert, and negotiating settlement. *See* Decl. of Daryl F. Scott ("Scott Decl.") Ex. 1, ECF No. 134-2; Decl. of Matthew Gately ("Gately Decl.") Ex. 1, ECF No. 134-3. Counsel's breakdown of those hours shows for example, that Scott+Scott spent over 578 hours on drafting and researching the Consolidated Amended Complaint,[5] over 820 hours on preparing for and attending 2 days of mediation, and 598 hours on a relatively small pre-mediation reciprocal discovery exchange that involved Plaintiff's production of 62 pages and Hayward's production of 419 documents totaling 3,758 pages. Schwartz Decl. II ¶ 9; Task Summary submitted *in camera*, Ex A. These hours are excessive. *See e.g., In re Par Pharm. Sec. Litig.*, No. 06-3226, 2013 WL 3930091, at *10 (D.N.J. July 29, 2013) (finding 7003.4 hours of attorney and other professional support time on the matter that had been pending for 7 years, including reviewing "hundreds of thousands" of pages of documents and participating in mediation, favored approving 30% fee request of $8.1 million settlement); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 498 (W.D. Pa. 2003) (awarding 25% of $25 million settlement ($6.25 million) for 7,985 hours of work that included "extensive motions practice" and review of 250,000 discovery documents); *Steiner v. Hercules Inc.*, 835 F. Supp. 771, 776, 791 (D. Del. 1993) (reducing fee request of $5,175,000 (30% of the $17.25 million settlement fund) plus interest for over 14,000 hours of work to $4,228,681.79 (24.5% of the settlement fund) where discovery included defendants' production of over 1 million pages of documents and 100 microfiche cards, as well as over 30 depositions taken by plaintiffs). This factor weighs against approving the requested 33.33% fee award.

The seventh factor requires the Court to compare the requested award to those approved in similar cases. As a starting point, many courts in the Third Circuit "have

---

[4] In Plaintiff's July 15, 2026 *in camera* "Task Summary" submission, Scott+Scott reduced its time by 40.4 from an initial 6,646.40 hours.

[5] The 578 hours is suspect given that this task presumably involved integrating two already investigated and researched pleadings, yet the resulting pleading was still not sufficiently pled to survive a motion to dismiss.

considered 25% to be the 'benchmark' figure for attorney fee awards in class action lawsuits, with adjustments up or down for significant case-specific factors." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 262 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004). In class action settlements of securities fraud cases, attorney fee awards have generally been between 20% to 33.33% of the settlement. *See e.g., Rite Aid*, 396 F.3d at 303 (approving district court's reliance on a study that showed that in securities class action settlements over $10 million, average percentage fee recovery was 31%, a second study that found a median percentage recovery range of 27–30% in class actions resolved or settled over a four-year period, and a third study that found that in class action settlements between $100 million and $200 million recoveries in the 25–30% range were "fairly standard."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d at 514 (citing cases that recognize fee award range between 20-33.33%); *Pozzi v. Smith*, 952 F. Supp. 218, 225 (E.D. Pa. 1997) ("[O]rdinarily attorneys' fees in a securities common fund case should be 25% of the amount of the fund."). "These varying ranges of attorneys' fees confirm that a district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001).

In securities fraud actions with settlements between $18.6 to $22.175 million, courts have approved awards between 20-27%. *See Steiner*, 835 F. Supp. at 791 (citing cases); *see e.g., In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998) (approving 25% of a $15 million settlement fund as reasonable attorneys' fee award in two-year old securities litigation case where counsel interviewed witnesses and retained a private investigator, document discovery was nearly complete, depositions were about to begin, and the parties participated in two full days of mediation). Comparing this case to those approved in similar cases, the Court concludes that a 26% award is appropriate.

As for the eighth factor, the claims in this case were independent of any investigative reports or enforcement actions by any governmental entity. Thus, the value of the Settlement achieved is directly attributable to the efforts of Class Counsel and supports granting a reasonable fee award. *See Valeant*, 2020 WL 3166456, at *14.

Next, the requested award of fees and expenses relative to the size of the recovery is in line with contingent fees that are routinely negotiated in the private marketplace. *Merck*, 2010 WL 547613, at *12 (citing cases recognizing attorneys routinely contract for contingent fees between 30-40%). As such, the ninth factor also supports approval of a fee award.

As to the last factor, the settlement provides for each Class Members' recovery to be distributed on a pro rata basis in accordance with a carefully crafted formula to determine "Recognized Loss Amount." *See* Notice ¶ 18. This factor weighs in favor of awarding Class Counsel reasonable attorneys' fees.

Considering that not every factor discussed above weighs in favor of approving a 33.33% award, the Court finds that a reduced fee of 26% sufficiently compensates Class Counsel for their services and is appropriate given that attorneys' fees are distributed from the Net Settlement Fund and reduces the benefit to the Authorized Claimants. The fee award will be calculated after deducting litigation expenses of $210,670.38 and the maximum settlement administration cost estimate of $205,000. Therefore, the total attorneys' fees awarded shall be $5,052,925.70 (26% of $19,434,329.62).

**ii. Lodestar Cross-Check**

Courts in this District are encouraged to "cross-check" the reasonableness of percentage fee awards against the lodestar method, bearing in mind that lodestar multipliers do not "trump the primary reliance on the percentage of common fund method." *See Rite Aid*, 396 F.3d at 305-07. The lodestar is calculated by multiplying the number of hours *reasonably* worked by a "reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *See id.* at 305. Based on 6,606 hours of work, the lodestar is $6,401,322 for Scott+Scott and $121,642 for Cohn Lifland with a total combined lodestar total for Class Counsel of $6,522,964. *See* Task Summary, Ex. A.

First, Scott+Scott's hourly rates are $910 to $3,000/hour for partners, $775 to $1135 for associates and Of Counsel, and $435 to $450/hour for litigation support and paralegals. *See* Scott Decl. Ex. 1, ECF No. 134-2. Cohn Lifland's rates are $750/hour for partners, $900/hour for senior counsel, and $185/hour for paralegals. *See* Gately Decl. Ex. 1, ECF No. 134-3. However, Class Counsel failed to satisfy their burden to submit "evidence that the charged rate is the community billing rate charged by attorneys of specialized skill and experience performing work of similar complexity." *Pozzi*, 952 F. Supp. at 225–26 (citation modified). The litigation experience for some but not all of the attorneys or paralegals for whom Counsel seek fees are provided. Nor do they compare "their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Interfaith Cmty. Org.*, 426 F.3d at 708. Even in the cases Plaintiff cites, the highest hourly rate approved for Scott+Scott was $1,975/hr. *See* Pl. Reply Mem. For Fees, ECF No. 138. While Cohn Lifland's hourly rates are reasonable, the Court finds that Scott+Scott's rates do not reflect local community billing rates. For example, $3,000/hour is excessive and is quite far afield from the prevailing rate in this region for work of similar complexity by similarly experienced attorneys. *See e.g., Rieger*, 2024 WL 2207439, at *7 (approving $475 per hour for an associate with six years of experience to $950 per hour for a partner with 30 years of experience and $540 to $1,075 for attorneys and $280 to $445 for paralegals and analysts); *cf.* <u>*Attorney Fees - Community Legal Services*</u>; *Arias v. Fam. First Funding, LLC*, No. 23-1226, 2026 WL 472773, at *8 (D.N.J. Feb. 19, 2026) (noting that courts in this District "routinely use the [Community Legal Services] guidelines to determine reasonable hourly rates for attorneys and legal professionals for purposes of fee petitions.").

Second, as to hours worked, "a district court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary.'" *Whiteley v. Zynerba Pharms., Inc.*, No. 19-4959, 2021 WL 4206696, at *13 (E.D. Pa. Sept. 16, 2021) (citing *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998)). In their initial fee application, Class Counsel listed a general summary of the total tasks performed for this case but did not break down or detail the hours worked by the two firms to show who completed which task or what tasks were performed during the total hours attributed to each staff. The Court subsequently requested that information to be submitted *in camera*, which as discussed earlier, appears to include inflated time. Scott+Scott's exorbitant hourly rates and excessive hours strongly suggest an effort by Counsel to back into a lodestar figure to reach a 33 1/3% figure. Because the lodestar claimed by Scott+Scott does not reflect *reasonable* number of hours worked and *prevailing* hourly rates, it cannot be used to cross-check the percentage-of-fee award.

Finally, even *if* the lodestar of $6,522,964 reflected reasonable hours multiplied by prevailing hourly rates (it does not), a fee award of $5,052,925.70 (26% of the Net Settlement) results in a lodestar multiplier of .77, which is close to the reasonable range approved by the Third Circuit and is only about two-tenth less than the negative .99 lodestar multiplier requested by Class Counsel. *See Prudential*, 148 F.3d at 341 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quotations omitted)). The fee award of 26% of the Net Settlement Fund is thus reasonable.

**2. Expenses**

Class Counsel request reimbursement of $210,670.38 in out-of-pocket litigation costs and expenses incurred to prosecute this case. *See* Schwartz Decl. ¶ 64. Class Counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). Each Class Counsel firm submitted a declaration in support of its requests for fees and expenses, and included a chart summarizing the expenses incurred by category, which together totaled $210,670.38 for online research, court fees, experts and mediator fees, photocopying, process service fees, and document management/storage. These "are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund." *In re Ocean Power Techs., Inc.*, No. 14-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016). Moreover, no objections have been filed to the expense request. Accordingly, Class Counsel's request for reimbursement of $210,670.38 in expenses and the maximum settlement administration cost estimate of $205,000 are approved.

### 3. Case Contribution to Representative Plaintiff

Class Counsel seek an award of $10,000 for the Lead Plaintiff, to be paid from the Settlement Fund. The PSLRA provides for "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). The purpose of service payments is "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n. 65 (citation modified). While awards that come out of funds allocated for attorneys' fees "need not be subject to intense scrutiny" because the public's interests are not directly affected, in contrast, where, as here, "payments come out of the common fund independent of attorneys' fees, the Court must carefully review the request for fairness to other class members." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (citing *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)). "[I]incentive awards will not be freely distributed without a substantial basis to demonstrate that the individual provided services for the Class and incurred risks during the course of the litigation." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 770 (E.D. Pa. 2016) (citing *Varacallo*, 226 F.R.D. at 258). "A rubber-stamped approval by the Court of an unjustified incentive award is fodder for abuse." *Id.* at 771.

There is no indication that in this matter, the named Plaintiff faced any financial or other risk due to this litigation. In addition, the named Plaintiff was not deposed nor did it attend the mediation. Class representative's time and effort to this case was spent regularly communicating with Lead Counsel by email and telephone regarding the posture and progress of the case, reviewing the pleadings, briefing, and court orders, as well as documents concerning discovery, assisting in document collection efforts in advance of the mediation, and actively participated in settlement discussions. *See* Decl. of Michael Kramer ¶¶ 5, 10, ECF No. 134-4. These appear to be no more than "run-of-the-mill assistance" for which a $8,500 award is sufficient to compensate Plaintiff for the time it spent directly relating to the representation of the Class. *See Alnor*, 197 F. Supp.3d at 771. *See e.g., In re Humanigen, Inc. Sec. Litig.*, No. 22-05258 (WJM), 2024 WL 4182634, at *14 (D.N.J. Sept. 13, 2024) (awarding $7,500 service award where named plaintiffs collectively devoted over 250 hours of work to the litigation); *Alnor,* 197 F. Supp.3d at 754, 772-73 (reducing requested $4,000 per named plaintiff to about $1,400 where named plaintiffs were not deposed, did not attend any court proceedings, faced no specific identified risks, and involvement was general and limited during span of one and one-half years of litigation).

## III. CONCLUSION

In sum, the Settlement, which has no objectors, is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e), notice was adequate, and certification of the proposed Class is

appropriate under Rules 23(a) and (b). Thus, Plaintiffs' unopposed motion to certify the Class and for final approval of the Class Action Settlement is **GRANTED.** Plaintiff's request for attorneys' fees and expenses and a class contribution is **GRANTED IN PART.** Class Counsel shall be awarded attorneys' fees of 26% of the Net Settlement Fund ($5,052,925.70) plus accrued interest, reimbursement of $210,670.38 for litigation expenses and $205,000 for settlement administration costs. Lead Plaintiff is awarded a service fee of $8,500. An appropriate Order follows.

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 28, 2026**